## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 8:20-cv-2428-VMC-TGW |
| ROBERT LEWIN, D.C., 1-800-411-PAIN REFERRAL SERVICE, LLC, PATH MEDICAL, LLC, DAVID CHEESMAN, D.O., CHINTAN DESAI, M.D., RALPH MARINO, M.D., TIE QIAN, M.D., ROGER RAMOS, M.D., DONALD THOMAS III, M.D., NELSON VAZQUEZ, M.D., MICHAEL WILENSKY, M.D., BRITTANY CHONG, D.C., RONALD GOLDEN, D.C., WILLIAM KURZBUCH, D.C., FRANK LASSITER, D.C., ADAM LEWIS, D.C., DHEERAJ MANOCHA, D.C., LISA NERBONNE, D.C., KIERON PARCHMENT, D.C., JOSEPH SEFICK, D.C., and SARAH VLEKO, D.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) | |

## AMENDED COMPLAINT

State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire"), for their Amended Complaint against Robert Lewin, D.C. ("Lewin"), 1-800-411-PAIN Referral Service, LLC ("411-PAIN Referral Service"), Path Medical, LLC ("Path Medical"), David Cheesman, D.O. ("Cheesman"), Chintan Desai, M.D. ("Desai"), Ralph Marino, M.D. ("Marino"), Tie Qian, M.D. ("Qian"), Roger Ramos, M.D. ("Ramos"), Donald Thomas III, M.D. ("Thomas"), Nelson Vazquez, M.D. ("Vazquez"), Michael Wilensky, M.D. ("Wilensky"), Brittany Chong, D.C. ("Chong"), Ronald Golden, D.C. ("Golden"), William Kurzbuch, D.C. ("Kurzbuch"), Frank Lassiter, D.C. ("Lassiter"), Adam Lewis, D.C. ("Lewis"), Dheeraj Manocha, D.C. ("Manocha"), Lisa Nerbonne, D.C. ("Nerbonne"), Kieron Parchment, D.C. ("Parchment"), Joseph Sefick, D.C. ("Sefick"), and Sarah Vleko, D.C. ("Vleko") (collectively, "Defendants"), allege as follows:

## I.     NATURE OF THE CASE

1.     This case involves a widespread fraudulent scheme across the state of Florida in which Defendants act in concert to collect benefits under Personal Injury Protection Coverage ("PIP Benefits") and Medical Payments Coverage ("MPC Benefits") (collectively, "No-Fault Benefits") from State Farm Mutual and State Farm Fire.  Defendants' scheme involves the submission of thousands of bills and supporting documentation for services that were not medically

necessary and not lawfully rendered, but were purportedly provided to patients involved in auto accidents and eligible for No-Fault Benefits under State Farm Mutual and State Farm Fire policies.

2.    Defendants are:

(a)   Path Medical, a Florida limited liability company that from October 2016 through the present has held the health care clinic licenses for every Path Medical clinic.  Path Medical: (1) unlawfully solicits and obtains patients through violations of Florida's Patient Brokering Act (Fla. Stat. § 817.505(1)(a), (b), and (d)), Anti-Kickback Act (Fla. Stat. § 456.054), and rules prohibiting false, deceptive, and misleading advertising (Fla. Stat. § 460.413(1)(d), (f), and (l) and Fla. Admin. Code R. 64B2-15.001(1), (2)(a) and (b), collectively, the "Chiropractic Advertising Laws"); and (2) submits thousands of bills and supporting documentation for treatment and diagnostic imaging services (*e.g.*, magnetic resonance imaging ("MRI"), computerized tomography ("CT"), and x-rays) that were not medically necessary and not lawfully rendered;

(b) The 411-PAIN Referral Service, which was a Florida limited liability company owned and controlled by Lewin from its formation through its voluntary dissolution on April 18, 2019.  The 411-PAIN Referral Service falsely purported to be a legitimate legal and medical referral

3

service for individuals who were in auto accidents, and was used to unlawfully solicit and refer callers to Path Medical, either by referring individuals who called 1-800-411-PAIN (the "411 Hotline") to Path Medical or to personal injury attorneys ("PI Attorneys") who agreed to refer their clients to Path Medical as a *quid pro quo* for referrals from the 411-PAIN Referral Service. At or about the time 411-PAIN Referral Service dissolved, Path Medical assumed the ownership and operations of the 411 Hotline and carried on the unlawful solicitation and referral practices under the trade name "Path" (the "Path Referral Service");

(c) Lewin, who: (i) from at least January 2017 until its dissolution on or about April 18, 2019, owned and controlled the 411-PAIN Referral Service; (ii) from at least January 2017 through at least November 2018, controlled Path Medical, and designed, oversaw, and is responsible for the predetermined treatment protocol (the "Predetermined Protocol") provided to patients of Path Medical; (iii) knowingly directed and profited from the activities of those who have been employed by or associated with Path Medical to provide medically unnecessary and unlawful services to patients pursuant to the Predetermined Protocol; and (iv) hired and employed medical directors at Path Medical who implement and oversee the medically unnecessary and unlawful services;

(d)  Cheesman, Desai, Marino, Qian, Ramos, Thomas, Vazquez, and Wilensky (collectively, the "Medical Directors") who, (i) as Medical Directors at Path Medical, direct, implement, and oversee the Predetermined Protocol provided to patients, which is not medically necessary and not lawfully rendered; and (ii) fail to comply with their statutory duties under Florida's Health Care Clinic Act, Fla. Stat. § 400.9905 *et seq.* ("HCCA"), to review any patient referral contracts or agreements with 411-PAIN Referral Service, which resulted in violations of the Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws; conduct systematic reviews of Path Medical's bills to ensure they are not fraudulent or unlawful; and take immediate, corrective action upon discovery of an unlawful charge at Path Medical; and

(e)  Chong, Golden, Kurzbuch, Lassiter, Lewis, Manocha, Nerbonne, Parchment, Sefick, and Vleko (collectively, the "Chiropractor Defendants"), chiropractors who purport to examine patients of Path Medical, direct, implement, and oversee the Predetermined Protocol provided to patients, and falsely document, among other things, virtually all patients are injured as a result of their auto accident and required the Predetermined Protocol of treatment.

3.     Defendants act in concert to exploit patients' No-Fault Benefits by submitting, or causing to be submitted, to State Farm Mutual and State Farm Fire bills and supporting documentation that are fraudulent because they are for services that are not medically necessary and not lawfully rendered.

4.     One aspect of Defendants' scheme is to solicit and refer individuals involved in auto accidents to Path Medical through a multi-million dollar marketing campaign that urges them to call the 411 Hotline, a number owned and/or licensed by the 411-PAIN Referral Service through April 18, 2019, and since then owned and/or licensed by Path Medical, purportedly for legitimate legal and medical referrals.  In reality, however, the 411 Hotline has been used to unlawfully solicit and refer individuals directly to Path Medical or through *quid pro quo* arrangements with PI Attorneys who agreed to refer their clients to Path Medical for treatment in violation of the Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws, rendering Path Medical's charges for all patients who were the subject of these referrals unlawful and noncompensable. *See* Fla. Stat. §§ 627.732(11), 627.736(5)(b)(1)(b)-(c), and 627.736(17).

5.     To conceal the unlawful solicitation and referrals obtained through the 411 Hotline, Path Medical has submitted Disclosure and Acknowledgement forms to State Farm Mutual and State Farm Fire signed by: (a) the insureds affirming they were "not solicited by any person to seek any services" from Path

6

Medical, and (b) the Medical Directors, the Chiropractor Defendants, or other licensed medical professionals of Path Medical, which falsely affirmed, "I have not solicited or caused the injured person . . . to be solicited to make a claim for [No-Fault Benefits]."  However, such patients were solicited through the 411 Hotline to seek services at Path Medical and make claims for No-Fault Benefits.

6.     Another aspect of Defendants' scheme is to subject patients to services performed pursuant to the Predetermined Protocol, which is designed and carried out to enrich Defendants by exploiting their patients' No-Fault Benefits, not because such services are medically necessary.  (*See generally* Ex. 1.)  The Predetermined Protocol includes: (a) failing to legitimately examine patients to determine the true nature and extent of their injuries; (b) documenting a litany of diagnoses for each patient, most often exceeding ten or more diagnoses per patient, including predetermined findings of sprains and/or strains, to justify a predetermined course of medically unnecessary treatment; (c) falsely documenting patients had sustained an emergency medical condition ("EMC") as a result of their auto accident to maximize Defendants' collection of No-Fault Benefits; (d) routinely providing medically unnecessary durable medical equipment ("DME") (*e.g*., lumbar braces) to patients; (e) providing the predetermined course of treatment to patients, which consists of five or more modalities on virtually every visit; (f) ordering medically unnecessary x-rays and

MRIs to (i) support the purported need for the Predetermined Protocol and the existence of conditions that could support the patients' bodily injury claims ("BI Claims") and uninsured motorist claims ("UM Claims"), and (ii) allow Defendants to submit additional charges when those x-rays, CTs, and MRIs were purportedly performed at Path Medical; (g) performing final examinations falsely documenting nearly every discharged patient reportedly suffers from a permanent impairment, despite receiving the extensive battery of services in the Predetermined Protocol; (h) submitting Disclosure and Acknowledgement forms to State Farm Mutual and State Farm Fire falsely representing patients referred to Path Medical through the 411 Hotline were not solicited to receive services at Path Medical; and (i) submitting documents to State Farm Mutual and State Farm Fire falsely representing the services and DME were medically necessary and lawfully rendered when, in fact, they were not medically necessary and not lawfully rendered. [1]

---

[1] Exhibit 1 identifies for the patients at issue: (a) the claim number; (b) the date State Farm Mutual and State Farm Fire received the first bill; (c) patient's initials; (d) the patient's age on the date of the accident; (e) the date of the accident; (f) the first and last dates of service at Path Medical; (g) the number of total patient visits to Path Medical, which typically includes one or more dates of service in which the patient receives no treatment modalities, that were billed to State Farm Mutual and State Farm Fire; (h) the total number of visits to Path Medical at which patients purportedly received treatment modalities; (i) the Path Medical examining provider(s) and Defendants who purportedly provided services for the patients; (j) the Path Medical clinic location(s) where the patient allegedly received services; (k) noncredible patterns regarding the patient's diagnoses; (l) the medically unnecessary and unlawful services rendered to the patients pursuant to the predetermined course of treatment, including x-rays and MRIs; and (m) the total amount Path Medical billed to State Farm Mutual and State Farm Fire for the patient's services.

7.     As a result of the Predetermined Protocol: (a) patients are not legitimately examined, diagnosed, or treated for conditions they may have; (b) patients are subjected to medically unnecessary and unlawfully rendered services; (c) patients' limited No-Fault Benefits are exhausted or substantially reduced and therefore not available for medically necessary treatment they may need; and (d) PI Attorneys use Defendants' bills and supporting documentation, which are fraudulent, to present inflated BI Claims against at-fault drivers and UM Claims against State Farm Mutual and State Farm Fire.

8.     A third aspect of Defendants' scheme involves the Medical Directors' knowing failure to comply with their statutory duties under Florida law.  Indeed, all the bills Path Medical submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire were unlawful and not compensable because the Medical Directors did not: (a) review any patient referral contracts or agreements between Path Medical and the 411-PAIN Referral Service; (b) conduct systematic reviews of Path Medical's bills to ensure they are not fraudulent or unlawful; and (c) take immediate, corrective action upon discovery of an unlawful charge at Path Medical.  *See* Fla. Stat. § 400.9935(1)(c) and (g).

9.     In addition, because Path Medical knowingly operated in violation of the licensure requirements of the HCCA by providing services that were not medically necessary and not lawfully rendered, employing Medical Directors who

9

failed to comply with their statutory duties,[2] and tendering charges for reimbursement for such services to State Farm Mutual and State Farm Fire, all of the charges Path Medical submitted to State Farm Mutual and State Farm Fire are unlawful, noncompensable, and unenforceable. *See* Fla. Stat. §§ 400.9935(1)(c) and (g) and (3), 627.732(11), 627.736(5)(b)(1)(b)-(c), 627.736(5)(d), 627.736(17), 817.234(1)(a)(2), and Fla. Admin. Code R. 59A-33.008(1).

10. Defendants' fraudulent scheme began at least as early as January 2017, and has continued uninterrupted since that time. Defendants have made material misrepresentations and have taken other affirmative acts to conceal their fraud from State Farm Mutual and State Farm Fire. Each bill and its supporting documentation, when viewed in isolation, do not reveal their fraudulent and unlawful nature. Only when the bills and supporting documentation across the patients at issue in this Amended Complaint are viewed together as a whole do the patterns emerge revealing the fraudulent and unlawful nature of all the bills and supporting documentation. (*See, e.g.*, Exs. 1; 23-25; 32; 41-43.) As a direct and proximate result of the scheme, State Farm

---

[2] The Florida Administrative Code provides the Medical Directors' failure to substantially comply with their statutory duties "shall be grounds for the revocation or suspension of the license and assessment of a fine[.]" Fla. Admin. Code R. 59A-33.008(1).

Mutual and State Farm Fire have incurred actual damages of at least $17 million in No-Fault Benefits paid to Defendants.

11.     This action asserts common law claims for fraud, civil conspiracy, and aiding and abetting fraud, federal RICO claims for violations of 18 U.S.C. § 1962(c) and (d), and a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), to recover actual damages of at least $17 million paid to Defendants, as well as treble damages and costs, including reasonable attorneys' fees, for violations of the federal RICO statute, and any other relief that is just and proper.

12.     Pursuant to 28 U.S.C. § 2201, this action also seeks a declaratory judgment that State Farm Mutual and State Farm Fire are not liable for any unpaid or allegedly underpaid charges Path Medical submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire through the date of this Amended Complaint and the trial of this case, based upon the conduct described above and throughout this Amended Complaint.

## II.     JURISDICTION AND VENUE

13.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims brought under 18 U.S.C. § 1961 *et seq.* because they arise under the laws of the United States.  This Court also has jurisdiction over the state law claims

because they are so related to the RICO claims as to form part of the same case and controversy.

14.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court also has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

15.     Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this district because all Defendants reside in Florida.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.   PARTIES

### A.   Plaintiffs

16.     State Farm Mutual is a citizen of the state of Illinois.  It is incorporated under the laws of the state of Illinois, with its principal place of business in Bloomington, Illinois.  At all relevant times, it has been licensed in Florida to engage in the business of insurance.

17.     State Farm Fire is a citizen of the state of Illinois.  It is incorporated under the laws of the state of Illinois, with its principal place of business in Bloomington, Illinois.  At all relevant times, it has been licensed in Florida to engage in the business of insurance.

### B. Defendants

18.    Lewin resides in and is a citizen of Florida. Lewin has been licensed to practice chiropractic medicine in Florida since 1998. From at least January 2017 until its dissolution in April 2019, Lewin owned and controlled the 411-PAIN Referral Service. Although Lewin appears to have transferred his ownership interest in Path Medical in October 2016 to a newly formed holding company, Path Medical Center Holdings, Inc. ("Path Medical Holdings"), under highly suspicious circumstances (*see* ¶¶ 41-48), he retained control of Path Medical through his positions as a Director and Chief Executive Officer of Path Medical Holdings through at least November 2018 and President of Path Medical during the same period. Accordingly, from at least January 1, 2017 through at least April 2019 when the 411-PAIN Referral Service dissolved, Lewin knowingly and unlawfully solicited and referred patients to Path Medical, and submitted, and caused to be submitted bills from Path Medical to State Farm Mutual and State Farm Fire for services that were not medically necessary and not lawfully rendered.

19.    The 411-PAIN Referral Service is a dissolved Florida limited liability company, organized in 2010, with its principal place of business at 9050 Pines Blvd., Ste. 301, Pembroke Pines, Florida 33024. From at least January 2017 until its dissolution in April 2019, Lewin owned and controlled the 411-PAIN Referral

Service and used it to unlawfully solicit and refer callers to Path Medical.  The 411-PAIN Referral Service unlawfully referred individuals who called the 411 Hotline either directly to Path Medical or to PI Attorneys who agreed to refer their clients to Path Medical as a *quid pro quo* for the referrals from the 411-PAIN Referral Service.  By falsely advertising the 411-PAIN Referral Service as a legitimate medical and legal referral service, Lewin and the 411-PAIN Referral Service violated the Chiropractic Advertising Laws.  Moreover, the arrangement between the 411-PAIN Referral Service, Path Medical, and the PI Attorneys who agreed to refer their clients for treatment at Path Medical in return for the referrals from the 411 Hotline violated the Patient Brokering Act and the Anti-Kickback Act.  Accordingly, from at least January 2017 through April 2019, the 411-PAIN Referral Service enabled Path Medical to submit fraudulent bills to State Farm Mutual and State Farm Fire for services that were not medically necessary and not lawfully rendered to patients who were the subject of the unlawful solicitations and referrals.

20.    Path Medical is an active Florida limited liability company, organized in 2015, with its principal place of business at 2304 W. Oakland Park Blvd., Fort Lauderdale, Florida 33311.  Since October 2016, Path Medical has been a wholly owned subsidiary of Path Medical Holdings.  Path Medical does business at the following Orlando, Tampa, and South Florida locations: (a) Path

Medical-ACI,[3] 3117 W. Columbus Dr., Ste. 209, Tampa, Florida 33607, and 4700 N. Habana Ave., Ste. A102, Tampa, Florida 33614; (b) Path Medical-Apex, 6148 Hanging Moss Rd., Ste. 100, Orlando, Florida 32807; (c) Path Medical-Aventura, 18999 Biscayne Blvd., Ste. 201, Aventura, Florida 33180; (d) Path Medical-Boca MRI and Rehab, 2900 N. Military Trail, Ste. 120, Boca Raton, Florida 33434, and 2300 Glades Rd., Ste. 200E, Boca Raton, FL 33431; (e) Path Medical-Bradenton, 6060 26th St. W. Bradenton, Florida 34207; (f) Path Medical-Broward, 2659 W. Oakland Park Blvd., Fort Lauderdale, Florida 33311; (g) Path Medical-Central Tampa, 4700 N. Habana Ave., Ste. 100, Tampa, Florida 33614; (h) Path Medical-Coral Springs/Margate, 318 S. State Rd. 7, Margate, Florida 33068; (i) Path Medical-Dade, 17560 NW 27th Ave., Ste. 117, Miami Gardens, Florida 33055; (j) Path Medical-Cutler Bay f/k/a Path Medical Deltona, 11285 SW 211 St., Miami, Florida 33189; (k) Path Medical-East, 10967 Lake Underhill Rd., Ste. 120, Orlando, Florida 32825; (l) Path Medical-Haines City, 131 Patterson Rd., Haines City, Florida 33844; (m) Path Medical-Hollywood, 2544 N. State Rd. 7, Hollywood, Florida 33021; (n) Path Medical-Kissimmee, 1040 E. Osceola Pkwy., Kissimmee, Florida 334744; (o) Path Medical-Lakeland, 809 S. Florida Ave.,

---

[3] On August 22, 2016, AHCA issued a Final Order that adopted a Settlement Agreement entered into by Path Medical-ACI f/k/a Absolute Care Imaging, Inc. and AHCA. Pursuant to the Final Order and Settlement Agreement, AHCA levied a $15,000 fine against Path Medical-ACI for "failing to maintain a signed record of monthly systematic review of billing records conducted by [a m]edical [d]irector throughout the period from June 2013 to April 2015, in violation of [Fla Stat. §§] 400.995(1), 400.9905(5), 400.9935(1)(a)-(g), 408.815(1)(c)-(d), and 408.813[]; and [Fla. Admin. Code R.] 59A-33.008 and 59A-33.012[.]" (*See generally* Ex. 2.)

Lakeland, Florida 33801; (p) Path Medical-Longwood, 851 E. State Rd. 434, Ste. 126, Longwood, Florida 32750; (q) Path MRI-Hallandale, 1016 W. Hallandale Beach Blvd., Hallandale Beach, Florida 33009; (r) Path Medical-MRI Tamarac, 4255 W. Commercial Blvd., Tamarac, Florida 33319; (s) Path Medical-New Port Richey, 8813 River Crossing Blvd., New Port Richey, Florida 34655; (t) Path Medical-North Miami/North Miami Beach, 13220 Biscayne Blvd., North Miami, Florida 33181; (u) Path Medical-North Tampa, 14824 N. Florida Ave., Ste. A, Tampa, Florida 33613; (v) Path Medical-OBT, 6220 S. Orange Blossom Tr., Ste. 606, Orlando, Florida 32809; (w) Path Medical-Palm Beach Lakes, 2001 Palm Beach Lakes Blvd., Ste. 100 and 101, West Palm Beach, Florida 33409; (x) Path Medical-Pines, 14818 Pines Blvd., Pembroke Pines, Florida 33027; (y) Path Medical-Port St. Lucie f/k/a Path Medical-Plantation, 549 NW Lake Whitney Pl., Ste. 101, Port Saint Lucie, Florida 34986; (z) Path Medical-Pompano, 601 E. Sample Rd., Ste. 102 and 109, Deerfield Beach, Florida 33064; (aa) Path Medical-South Tampa, 1369 Providence Rd., Brandon, Florida 33511; and (bb) Path Medical-St. Pete, 3140 34th St. N., St. Petersburg, Florida 33713.

21.     At all relevant times, each Path Medical clinic location claimed to operate as an AHCA-licensed health care "clinic" because each clinic purports to provide treatment and related services to patients and submit charges for such services. *See* Fla. Stat. § 400.9905(4). The 411-PAIN Referral Service purported

to cease operations on December 31, 2018, and to be replaced by the Path Referral Service the next day.  (Ex. 3.)  The Path Referral Service assumed ownership and control of the 411 Hotline and continued to solicit and refer individuals to PI attorneys who agreed to refer their clients to Path Medical for treatment in violation of Florida's Patient Brokering Act and the Anti-Kickback Act.[4]  Accordingly, from at least January 2017 through the present Path Medical submitted, and caused to be submitted, bills to State Farm Mutual and State Farm Fire for services that were not medically necessary and not lawfully rendered.  The chart attached hereto as Exhibit 1 summarizes the medically unnecessary and unlawful services provided to Path Medical's patients pursuant to the Predetermined Protocol.

22.    Cheesman resides in and is a citizen of Florida.  Cheesman has been licensed to practice medicine in Florida since 1980.  At all relevant times,

---

[4] Although Lewin purportedly had no ownership interest in the Path Referral Service, which has carried on the operation of the 411 Hotline since January 1, 2019, his niece and nephew appear to have maintained ownership of the 1-800-411-PAIN number and related trademarks (collectively, "411-PAIN") used by the Path Referral Service to unlawfully solicit patients for Path Medical.  Specifically, the 411-PAIN telephone number and related trademarks used by the Path Referral Service are owned by Vanity Number Leasing, LLC ("Vanity Leasing"), which is purportedly managed by Lewin's nephew – Merick Lewin.  (Ex. 4.)  Vanity Leasing operates at the same address as TriSpark Media Group Inc. and TriSpark Media, LLC (collectively, "TriSpark"), which are entities purportedly managed by Diane Keifer and Lewin's niece – Jaymee Shane.  According to its website, TriSpark provides social media, audio, and video production, and other marketing services for legal and healthcare companies, among others. *See generally* www.trisparkmedia.com.  In fact, TriSpark's YouTube channel reflects more than 45 advertising videos for 411-PAIN and The Law Offices of Kanner & Pintaluga, P.A. ("K&P"), *see, e.g.*, https://www.youtube.com/channel/UC_Rwo5PCKSKazQddEwPmV-Q/videos, further evincing the significant relationship between Defendants and K&P, as discussed *infra* ¶¶ 80-87.

Cheesman (a) has been the Medical Director of Path Medical-Bradenton, Path Medical-Haines City, Path Medical-New Port Richey, and Path Medical-Port St. Lucie; and (b) as Medical Director, has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

23.    Desai resides in and is a citizen of Florida.  Desai has been licensed to practice medicine in Florida since 2004.  At all relevant times, Desai (a) has been the Medical Director of Path Medical-ACI and Path Medical-Apex; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered.  (*See* Ex. 1, Path Defendants Column.)

24.    Marino resides in and is a citizen of Florida.  Marino has been licensed to practice medicine in Florida since 1974.  At all relevant times, Marino (a) has been the Medical Director of Path Medical-Cutler Bay f/k/a Path Medical-Deltona, Path Medical-East, Path Medical-Kissimmee, Path Medical-Longwood, and Path Medical-OBT; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

25.     Qian resides in and is a citizen of Florida.  Qian has been licensed to practice medicine in Florida since 2001.[5]  At all relevant times, Qian (a) has been the Medical Director of Path Medical-Broward, Path Medical-Palm Beach Lakes, Path Medical-Pines, Path Medical-Plantation, and Path Medical-Pompano; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

26.     Ramos resides in and is a citizen of Florida.  Ramos has been licensed to practice medicine in Florida since 1999.  At all relevant times, Ramos (a) has been the Medical Director of Path Medical-MRI Boca and Rehab, Path Medical-MRI Hallandale, and Path Medical-MRI Tamarac; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered.  (*See* Ex. 1, Path Defendants Column.)

27.     Thomas resides in and is a citizen of Florida.  Thomas has been licensed to practice medicine in Florida since 2013.  At all relevant times, Thomas (a) has been the Medical Director of Path Medical-Central Tampa, Path Medical-

---

[5] On September 14, 2007, the United States Department of Veterans Affairs, which employed Qian as a physician, revoked Qian's medical staff privileges for, among other things: "serious deviations from the standard of care," "a pattern of misrepresentation of the medical record," "inappropriate copying and pasting of notes in the [c]omputerized [p]atient [r]ecord [s]ystem," and failing to "recognize, document, and treat abnormal lab issues."  *Qian v. Shinseki*, 747 F. Supp. 2d 1362, 1365 (S.D. Fla. 2010), *aff'd sub nom. Qian v. Sec'y, Dep't of Veterans Affairs*, 432 F. App'x 808 (11th Cir. 2011).

Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical St. Pete; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

28. Vazquez resides in and is a citizen of Florida. Vazquez has been licensed to practice medicine in Florida since 1994. From January 2017 through at least December 2019, Vazquez (a) was the Medical Director of Path Medical-Bradenton, Path Medical-Haines City, and Path Medical-New Port Richey; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

29. Wilensky resides in and is a citizen of Florida. Wilensky has been licensed to practice medicine in Florida since 1978. At all relevant times, Wilensky (a) has been the Medical Director of Path Medical-Aventura, Path Medical-Coral Springs/Margate, Path Medical-Dade, Path Medical-Hollywood, and Path Medical-North Miami/North Miami Beach; and (b) has knowingly implemented, overseen, and provided services to patients that is predetermined, not medically necessary, and unlawfully rendered. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

30.    Chong resides in and is a citizen of Florida.  Chong has been licensed to practice chiropractic medicine in Florida since 2013.  At all relevant times, Chong has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Boca MRI and Rehab, Path Medical-Central Tampa, Path Medical-Palm Beach Lakes, and Path Medical-Plantation.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

31.    Golden resides in and is a citizen of Florida.  Golden has been licensed to practice chiropractic medicine in Florida since 2010.  At all relevant times, Golden has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-Hollywood, Path Medical-Kissimmee, and Path Medical-Plantation.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

32.    Kurzbuch resides in and is a citizen of Florida.  Kurzbuch has been licensed to practice chiropractic medicine in Florida since 2016.  At all relevant times, Kurzbuch has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Aventura, Path Medical-Boca MRI and Rehab, Path Medical-Bradenton, Path Medical-Broward, Path Medical-Central Tampa, Path Medical-Dade, Path Medical-Haines City, Path Medical-Hollywood,     Path Medical-Coral

Springs/Margate, Path Medical-North Miami/North Miami Beach, Path Medical-Palm Beach Lakes, Path Medical-Pines, Path Medical-Plantation, and Path Medical-Pompano. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

33.    Lassiter resides in and is a citizen of Florida.  Lassiter has been licensed to practice chiropractic medicine in Florida since 2014.  At all relevant times, Lassiter has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Broward, Path Medical-Central Tampa, Path Medical-Dade, Path Medical-Hollywood, Path Medical-Kissimmee, Path Medical-Coral Springs/Margate, Path Medical-North Miami/North Miami Beach, and Path Medical-Pompano. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

34.    Lewis resides in and is a citizen of Florida.  Lewis has been licensed to practice chiropractic medicine in Florida since 2013.  At all relevant times, Lewis has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-Deltona, Path Medical-East, Path Medical-Haines City, Path Medical-Kissimmee, and Path Medical-OBT. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

35.     Manocha resides in and is a citizen of Florida.  Manocha has been licensed to practice chiropractic medicine in Florida since 2012.  At all relevant times, Manocha has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-East, Path Medical-Haines City, Path Medical-Kissimmee, Path Medical-Lakeland, Path Medical-Longwood, and Path Medical-OBT.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

36.     Nerbonne resides in and is a citizen of Florida.  Nerbonne has been licensed to practice chiropractic medicine in Florida since 2010.  At all relevant times, Nerbonne has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Broward, Path Medical-Central Tampa, and Path Medical-North Miami/North Miami Beach.  (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

37.     Parchment resides in and is a citizen of Florida.  Parchment has been licensed to practice chiropractic medicine in Florida since 2013.  At all relevant times, Parchment has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-Dade, Path Medical-Hollywood, Path Medical-Kissimmee, Path Medical-Coral Springs/Margate, Path Medical North

Miami/North Miami Beach, Path Medical-Palm Beach Lakes, and Path Medical-Plantation. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

38.   Sefick resides in and is a citizen of Florida.  Sefick has been licensed to practice chiropractic medicine in Florida since 2001.  At all relevant times, Sefick has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-East, and Path Medical-Kissimmee. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

39.   Vleko resides in and is a citizen of Florida.  Vleko has been licensed to practice chiropractic medicine in Florida since 2010.  At all relevant times, Vleko has knowingly provided fraudulent and unlawful services pursuant to the Predetermined Protocol to patients of at least Path Medical-Central Tampa, Path Medical-Deltona, Path Medical-East, Path Medical-Haines City, Path Medical-Kissimmee, Path Medical-Longwood, and Path Medical-OBT. (*See* Ex. 1, Path Examining Provider and Path Defendants Columns.)

40.   Defendants acted in concert and have symbiotic relationships with each other in that each one needed and depended upon the participation of the others to accomplish their common purpose of defrauding State Farm Mutual and State Farm Fire through the fraudulent claims described above and throughout this Amended Complaint.  Specifically: (a) Path Medical holds the

AHCA licensee for all the Path Medical clinics and is the entity that knowingly submitted, and caused to be submitted, all the fraudulent bills and supporting documentation for services that were not medically necessary and not lawfully rendered; (b) since at least December 2018, or shortly thereafter, Path Medical has also owned and controlled the 411 Hotline, through which it has unlawfully solicited and referred individuals to PI Attorneys who agreed to refer their clients to Path Medical in return for the referrals from the 411 Hotline; (c) from at least January 2017 through December 2018, the 411-PAIN Referral Service falsely advertised itself as a legitimate medical and legal referral service to unlawfully solicit and refer individuals who called the 411 Hotline to Path Medical or to PI Attorneys who agreed to refer their clients to Path Medical in return for the referrals from the 411 Hotline; (d) from at least January 2017 through December 2018, Lewin owned and controlled the 411-PAIN Referral Service and Path Medical, and designed, oversaw, and is responsible for the Predetermined Protocol to exploit the No-Fault Benefits of patients who treated at Path Medical, as well as enabled Path Medical to circumvent the HCCA's licensure requirements; (e) the Medical Directors knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and fail to comply with their statutory obligations to (i) review patient referral contracts or agreements between Path Medical and the 411-PAIN Referral Service, (ii)

25

conduct systematic reviews of Path Medical's bills to ensure they are not fraudulent or unlawful, and (iii) take immediate, corrective action upon discovery of an unlawful charge at Path Medical, which is necessary to enable Path Medical to circumvent the HCCA requirements and submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire; and (f) the Chiropractor Defendants knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and falsely document the need for these services, which is necessary to enable Path Medical to submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire.

## C.     Path Medical Holdings And The Path ESOP

41.     Path Medical Holdings is an active Delaware corporation, incorporated on October 2, 2016, with its principal place of business at 2304 W. Oakland Park Blvd., Fort Lauderdale, Florida 33311.  Effective October 11, 2016, Lewin and Kimberly Russo ("Russo") transferred their entire interests in Path Medical to Path Medical Holdings.  Therefore, as of October 11, 2016, Path Medical Holdings had 100% of the ownership and controlling interest in Path Medical.

42.     On October 2, 2016, the same day Path Medical Holdings was formed, the Path Medical Center Holdings Employee Stock Ownership Plan (the

"Path ESOP") was formed, purportedly for the sole benefit of the employees of Path Medical Holdings and/or Path Medical.  Limited information is available in the public record regarding Path Medical Holdings and the Path ESOP.

43.    Based on the limited information available at this time, it is unclear whether Path Medical Holdings knowingly participated in the wrongful conduct alleged herein, or the extent to which it may have benefited from or been unjustly enriched by that wrongful conduct.  Therefore, Path Medical Holdings is not named as a defendant at this time.  However, the circumstances surrounding the formation and role of Path Medical Holdings are highly suspicious.  Specifically:

(a)  On October 2, 2016, Path Medical Holdings and the Path ESOP were formed;

(b)  Effective October 11, 2016, Lewin transferred his 51% ownership interest in Path Medical, and Russo transferred her 49% ownership interest in Path Medical, to Path Medical Holdings.  At that point, Path Medical Holdings owned a single asset – 100% of the ownership interests in Path Medical;

(c)  Also on October 11, 2016, the Path ESOP entered into two promissory notes with Path Medical Holdings totaling $243,500,000, the proceeds of which were used to purchase 100% of the common stock of Path Medical Holdings.  The Path ESOP's IRS Form 5500 and the

accompanying financial statements for the year 2016 stated $243,500,000 represented the fair value of the Path Medical Holdings stock as of October 11, 2016 as determined by an independent appraisal performed at the direction of the Path ESOP Trustee (GreatBanc Trust Company).  Lewin and Russo transferred their entire ownership interests in Path Medical to Path Medical Holdings to facilitate the transaction in which the Path ESOP purchased all the common stock of Path Medical Holdings;

(d)  Another independent appraisal performed at the direction of the Path ESOP's Trustee determined the fair value of the Path Medical Holdings shares as of December 31, 2016 had dropped to $35.1 million – less than 90 days after the Path ESOP agreed to pay $243,500,000, likely to Lewin and Russo, for those shares.   Remarkably, in 2017 a third independent appraisal performed at the direction of the Path ESOP's Trustee determined the fair value of the Path Medical Holding shares had further declined to $5.5 million.  In other words, less than 15 months after the Path ESOP agreed to pay Path Medical Holdings $243,500,000 pursuant to promissory notes to buy the shares of Path Medical Holdings, likely from Lewin and Russo, the fair value of the Path Medical Holdings shares had declined by about 98% to $5.5 million;[6] and

---

[6] According to the IRS Form 5500s filed for the Path ESOP, effective January 1, 2018, Path Medical Holdings and the Trustee for the Path ESOP "refinanced the [Path ESOP's] promissory

(e)  While it is unclear at this time how much Lewin and Russo were paid in connection with the sale of their ownership interests in Path Medical to Path Medical Holdings and the simultaneous sale of all of Path Medical Holdings' shares to the Path ESOP, (i) the Path ESOP was saddled with a debt of $243,500,000, (ii) the fair value of the Path Medical Holdings shares acquired by the Path ESOP in return for incurring that debt, declined by about 98% within less than 15 months, and (iii) Lewin retained control over Path Medical and Path Medical Holdings.  In fact, when Path Medical informed AHCA that Lewin and Russo had transferred their ownership interests in Path Medical to Path Medical Holdings, and the Path ESOP had purchased all of Path Medical Holdings' shares, Path Medical represented to AHCA the "ultimate ownership/control" of Path Medical would remain unchanged.  *See* October 21, 2016 letter from attorneys for Path Medical to AHCA.  (Ex. 5.)

44.    From the time of Path Medical Holdings' formation, there has been a significant identity of interest and control between it and Path Medical in that they have shared several of the same officers and directors and the same addresses, and the only asset held by Path Medical Holdings is and has been its

_____

notes and renegotiated the stock purchase agreement."  The refinanced promissory notes owed by the Path ESOP were allegedly "reduced to $15,791,252 and the initial costs of the [Path Medical Holdings] shares acquired by the [Path ESOP] was reduced to approximately $28,777,000."  The Form 5500s do not provide any explanation regarding the circumstances surrounding the "refinanced" promissory notes or the "renegotiated" stock purchase agreement.

100% ownership and control of Path Medical.   However, to ensure their continuing control over and benefits from Path Medical, Lewin and several other officers and directors of Path Medical Holdings have contemporaneously held the same or similar positions with Path Medical.   Specifically:

(a)  Lewin was a Director of Path Medical Holdings from the time of its inception through at least November 2018 and the Chief Executive Officer of Path Medical Holdings through at least December 2018.   During the same period, Lewin was also identified as a Director, as well as the CEO and President of Path Medical on documents submitted to AHCA;

(b)  Russell Permaul ("Permaul") was the Chief Compliance Officer for Path Medical Holdings from the time of its inception through December 2018, and a Director of Path Medical Holdings from October 2018 through June 2020.   Through at least 2019, Permaul was also identified as the VP of Security and Compliance, Chief Compliance Officer, and Registered Agent for Path Medical on documents submitted to AHCA;

(c)  Joel Manion, D.C. ("Manion") was the Chief Operating Officer of Path Medical Holdings from the time of its inception through March 2018, and was a Director of Path Medical Holdings from March 2018 through July 2019.  During the same period, Manion was also identified as the Chief Operating Officer for Path Medical on documents submitted to AHCA; and

(d)  Manuel Fernandez ("Fernandez") has been the Chief Executive Officer of Path Medical Holdings since April 2019 and a Director of Path Medical Holdings since July 2019.  During these same periods, Fernandez was also identified as the Chief Executive Officer for Path Medical on documents submitted to AHCA.

45.     Furthermore, from the time of Path Medical Holdings' formation on October 2, 2016, its principal office address has been the same as Path Medical, either 6220 South Orange Blossom Trail in Orlando, or 2304 West Oakland Boulevard in Ft. Lauderdale, which are locations of two of the Path Medical clinics.

46.     Similarly, there has been a significant identity of interest and control between the Path ESOP and Path Medical Holdings in that: (a) the common stock of Path Medical Holdings is the only asset held by the Path ESOP; (b) all of the publicly available IRS Form 5500s filed to date for the Path ESOP for the years 2016 through 2019 are dated in 2019 and 2020 and bear the electronic signature of Manny Fernandez as the "plan administrator," who at the same time was the Chief Executive Officer of Path Medical and a Director and Chief Executive Officer of Path Medical Holdings; (iv) from the time of its inception, the Path ESOP has been administered by an ESOP Committee appointed by the Board of Directors of Path Medical Holdings; and (v) the form 5500s filed by the Path

ESOP represent "certain administrative functions [of the Path ESOP] are performed by officers or employees of [Path Medical Holdings]," but the particular identity of the officers or employees of Path Medical Holdings are never identified.

47.     Accordingly, it appears Path Medical Holdings was formed to: (a) enable Lewin and Russo to transfer their entire ownership interests in Path Medical to Path Medical Holdings, and presumably in return for doing so receive all the common stock of Path Medical Holdings; (b) enable Lewin and Russo to sell their common stock in Path Medical Holdings to the Path ESOP at a grossly inflated price of up to $243,500,000; (c) eliminate Russo's ownership of Path Medical on paper; (d) enable Lewin to maintain control of Path Medical by serving as the President of Path Medical and a Director of Path Medical Holdings through at least November 2018 and the Chief Executive Officer of Path Medical Holdings through at least December 2018; and (e) saddle the Path ESOP with significant debt obligations to an entity apparently owned and controlled by Lewin with an obligation to pay Path Medical Holdings $243,500,000.

48.     At this time, State Farm Mutual and State Farm Fire do not know the full nature and scope of the relationships and financial transactions between Path Medical, Path Medical Holdings, and the Path ESOP, and the extent to which Path Medical Holdings may have participated in, benefitted from, or been

unjustly enriched by, the wrongful conduct alleged in Claims for Relief One through Nine through which State Farm Mutual and State Farm Fire were induced to pay at least $17 million to Path Medical.  However, given the circumstances described above, it appears Path Medical Holdings may have participated in, benefited from, or been unjustly enriched by, the wrongful conduct through which State Farm Mutual and State Farm Fire were induced to pay at least $17 million to Path Medical.

## IV.   ALLEGATIONS COMMON TO ALL CLAIMS

### A.   Insurance Benefits Under Florida Law

49.   Pursuant to Fla. Stat. § 627.736 *et seq.* (the "PIP Law"), auto insurers are required to provide PIP Benefits of at least $10,000 to certain designated individuals, for losses resulting from injuries arising out of the ownership, maintenance, or use of a motor vehicle.  Insureds may also carry additional coverage in the form of MPC Benefits, which may cover additional amounts after their PIP Benefits are exhausted.

50.   For purposes of PIP Benefits, insurers are required to pay 80% of all reasonable expenses for medically necessary medical, surgical, x-ray, dental, and rehabilitative services related to such injuries.  Fla. Stat. § 627.736(1)(a).

51.   Pursuant to Fla. Stat. § 627.732(2)(a)-(c), "'medically necessary' refers to a medical service or supply that a prudent physician would provide for

the purpose of preventing, diagnosing, or treating an illness, injury, disease or symptom in a manner that is: (a) [i]n accordance with generally accepted standards of medical practice; (b) [c]linically appropriate in terms of type, frequency, extent, site, and duration; and (c) [n]ot primarily for the convenience of the patient, physician, or other health care provider."

52.    Before January 1, 2013, injured parties who were eligible for PIP Benefits were entitled to up to $10,000 of PIP Benefits for medically necessary goods and services.  However, after an amendment to the PIP Law that became effective on January 1, 2013, PIP Benefits are now limited to $2,500 unless a physician or other professional licensed under other specific provisions of Florida law determines the injured person sustained an EMC, in which case the injured person would be eligible for PIP Benefits of up to $10,000.   Fla. Stat. § 627.736(1)(a)(3)-(4).   Florida law defines an EMC as "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) [s]erious jeopardy to patient health[;] (b) [s]erious impairment of bodily functions[; or] (c) [s]erious dysfunction of any bodily organ or part."  Fla. Stat. § 627.732(16).

53.    State Farm Mutual and State Farm Fire are required to pay or deny claims for PIP Benefits within 30 days, and may be ordered to pay interest and

attorneys' fees if they fail to pay the full amount owed within that period.  Fla. Stat. § 627.736(4)(b) and (d).

54.    Pursuant to Fla. Stat. 627.736(5)(b)(1)(b), "[a]n insurer or insured is not required to pay a claim or charges . . . (b) [f]or any service or treatment that was not lawful at the time rendered."  Pursuant to Fla. Stat. § 627.732(11), "'[l]awful' or 'lawfully' means in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."  The Patient Brokering Act, the Anti-Kickback Act, and the Chiropractic Advertising Laws are criminal, civil, and administrative requirements of state law related to the provision of the medical services and treatment provided by and through Path Medical.  Therefore, neither State Farm Mutual, State Farm Fire nor their insureds are required to pay any claim or charges for medical services and treatment provided by and through Path Medical as a result of the failure to substantially comply with those laws.  *See also* Fla. Stat. § 627.736(17) ("[c]laims generated as a result of activities that are unlawful pursuant to [the Patient Brokering Act] are not reimbursable under [the PIP Law]").

55.    Pursuant to Fla. Stat. § 627.736(5)(b)(1)(c), "[a]n insurer or insured is not required to pay a claim or charges . . . (c) [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges."

"'Knowingly' means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required."  Fla. Stat. § 627.732(10).  Therefore, neither State Farm Mutual, State Farm Fire nor its insureds are required to pay any claim or charges Path Medical knowingly submitted for services that were not medically necessary and not lawfully rendered.

### B.    Tort Claims For Non-Economic Loss

56.    Individuals who are not at fault for an auto accident can also potentially recover damages: (a) from at-fault drivers or their insurers through a BI Claim; and/or (b) through a UM Claim from the individuals' own insurer(s) if recovery under the BI Claim is insufficient.  The benefits potentially available to patients through BI and UM Claims include pain and suffering and other forms of non-economic damages, as well as necessary medical expenses and lost wages.

57.    To bring BI Claims or UM Claims, individuals must establish they meet one of several statutory requirements including that they have: (a) a significant and permanent loss of an important bodily function, or (b) a permanent injury (other than scarring or disfigurement) within a reasonable degree of medical probability.  Fla. Stat. § 627.737(2).

58.     Defendants' Predetermined Protocol, along with the corresponding bills and supporting documentation that are fraudulent, are designed to facilitate fraudulent claims for No-Fault Benefits, and to develop and maintain *quid pro quo* cross-referral relationships with PI Attorneys by supporting the PI Attorneys' ability to profit from inflated BI Claims against at-fault drivers and inflated UM Claims against their clients' own insurers if recovery under the BI Claims is insufficient to satisfy the clients' purported damages.

### C.     The Legitimate Treatment Of Patients With Strains And Sprains

59.     Path Medical and its providers, including the Medical Directors and Chiropractor Defendants, purport to examine, diagnose, and treat patients who have been in auto accidents and complain of neck and/or back pain, among other ailments.

60.     For patients who have been in auto accidents and have legitimate complaints of neck and/or back pain, or other ailments, a provider must perform a detailed history and legitimate examination to arrive at a legitimate diagnosis.

61.     Based upon a legitimate diagnosis, a licensed professional must engage in medical decision-making to design a legitimate treatment plan tailored to the unique circumstances of the patient.   During the course of treatment, treatment plans should be modified based upon the unique circumstances of each patient and their response (or lack thereof) to treatment.

62.     Legitimate treatment plans for patients with soft tissue injuries such as strains and sprains may involve no treatment at all because many of these kinds of injuries heal without any intervention, or a variety of interventions, including medications to reduce inflammation and relieve pain, passive modalities, and active modalities.

63.     Passive modalities do not require any affirmative effort or movement by patients.  There are many kinds of passive modalities, including: (a) hot/cold packs, (b) ultrasound, (c) electrical stimulation ("e-stim"), (d) manual therapy, (e) massage, and (f) traction.  Active modalities require affirmative movement by patients and include a wide variety of exercises, strengthening, and stretching tailored to the unique circumstances of each patient, including the nature and location of the injuries, the patients' physical abilities, and the patients' response (or lack thereof) to any particular active modality on any day or over time.

64.     In legitimate treatment plans, passive modalities should generally be used only to the extent necessary to reduce pain and facilitate active modalities, while active modalities should generally be introduced as soon as practicable to promote the actual healing of strains and sprains.

65.     The decision of which, if any, types of treatment are appropriate for each patient, as well as the level, frequency, and duration of the various services, should vary depending on the unique circumstances of each patient, including:

(a) the patient's age, social, family, and medical history; (b) the patient's physical condition, limitations, and abilities; (c) the location, nature, and severity of the patient's injury and symptoms; and (d) the patient's response to treatment.

66.     Therefore, while one or more passive modalities may be medically necessary on any particular visit to reduce pain and facilitate the patient's ability to perform active modalities, the combination of five or more modalities on nearly every visit would rarely, if ever, be appropriate for any patient.

67.     Treatment plans should be periodically reassessed and modified based upon the progress of the patient, or lack thereof.  To the extent diagnostic tests such as x-rays, CTs, and MRIs are medically necessary and are performed, treatment plans should integrate their results.

68.     Patients should be discharged from treatment when they have reached maximum medical improvement, such that no further treatment is likely to benefit the patient, or when patients fail to respond to the treatment program.

69.     The above-described process of examination, diagnosis, and treatment must be appropriately documented for the benefit of: (a) the licensed professionals involved in the patient's care; (b) other licensed professionals who may treat the patient contemporaneously or subsequently; (c) the patient, whose care and condition necessarily depends on the documentation of this

information; and (d) payors such as State Farm Mutual and State Farm Fire, so they can pay for reasonable and necessary treatment.

70. As described below, Defendants' patients are not legitimately examined, diagnosed, or treated for their unique needs. Instead, they are subjected to the Predetermined Protocol in which they receive virtually the same laundry list of services on every visit to exploit their No-Fault Benefits. Furthermore, the pervasive patterns in the documentation of services Path Medical submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire are not credible and reflect services performed pursuant to the Predetermined Protocol, rather than because they were medically necessary to address the unique needs of each patient.

## V.  PATH MEDICAL'S RELATIONSHIPS WITH THE 411-PAIN REFERRAL SERVICE AND PI ATTORNEYS

### A.  Path Medical's Relationship With The 411-PAIN Referral Service

71. The success of Defendants' scheme depends heavily upon the ability to gain quick access to individuals involved in auto accidents who can be referred to Path Medical for services designed to exploit their No-Fault Benefits. From at least January 2017 through at least December 2018, Path Medical appears to have gained quick access to many of its patients pursuant to its relationship with the 411-PAIN Referral Service, which was a purported legal and medical referral

service owned by Lewin.[7]  In or about December 2018, or shortly thereafter, Path Medical assumed ownership and control of the 411 Hotline, which it has continued to falsely advertise and operate under the pretense of a legitimate legal and medical referral service (*i.e.*, the Path Referral Service).

72.    The marketing materials used by the 411-PAIN Referral Service and Path Referral Service have urged individuals who are in auto accidents to call the 411 Hotline for purported legitimate legal and medical referrals through an aggressive multi-million dollar marketing campaign, which implores accident victims to "call from home, hospital or accident scene."  (Ex. 8.)  The 411-PAIN Referral Service and the Path Referral Service use various catchphrases to target auto accident victims, including "after 911, call 411."  (Ex. 9.)  The website for the 411 Hotline stated that "[once] you call 411-PAIN at 1-800-411-PAIN, you will be asked a few simple questions to determine exactly what type of assistance you will need and immediately after-wards [*sic*] be scheduled to see a doctor.  Same day appointments are available."  (Ex. 10.)  The website for the 411 Hotline also

---

[7] In addition to its relationships with the 411-PAIN Referral Service and Path Referral Service, Path Medical owns the trademarks for and operates the 1-800-671-HURT a/k/a HURT BURT referral service (the "HURT Referral Service"). (Exs. 6-7.)  The HURT Referral Service purports to provide individuals with "attorney referrals," "[m]edical and health care services," "medical information about getting help after being injured," and "medical information with respect to accidents," among other things.  (*Id.*)  While the full scope of the referral relationship between the HURT Referral Service and Path Medical is presently not known by State Farm Mutual and State Farm Fire, it is reasonable to infer the HURT Referral Service has referred or intends to refer individuals, including State Farm insureds, directly to Path Medical or to a PI Attorney who, in turn, refers the individuals to Path Medical.

claimed that callers should use the doctors from 1-800-411-PAIN because the network "has almost 20 years of experience . . . [and] [t]hey will assist you in recovering from your injuries as quickly as possible." (*Id.*)

73.     The 411-PAIN Referral Service and the Path Referral Service do not refer callers to a panel of medical providers randomly or based upon the callers' best interests.  Instead, they refer at least many callers to Path Medical and to PI Attorneys with whom Path Medical has *quid pro quo* cross-referral relationships. As discussed below, the PI Attorneys purportedly do not directly pay the 411-PAIN Referral Service or Path Referral Services for their services.  However, in return for client referrals from the 411-PAIN Referral Service and later from the Path Referral Service, PI Attorneys cross-refer their clients to Path Medical for treatment as patients.

74.     When making referrals to Path Medical, the 411-PAIN Referral Service did not disclose to callers Lewin's common ownership in the 411-PAIN Referral Service and Path Medical, or the *quid pro quo* cross-referral relationships with PI Attorneys.

75.     Upon information and belief, the 411-PAIN Referral Service entered into one or more contracts with Path Medical pursuant to which at least some, and possibly many, individuals who called the 411 Hotline and were in a geographic area in which a Path Medical clinic was located, were referred to Path

Medical.  While the contract(s) between the 411-PAIN Referral Service and Path Medical have not yet been disclosed to State Farm Mutual and State Farm Fire, it is reasonable to infer based on the millions of dollars in expenses incurred by the 411-PAIN Referral Service to advertise and operate the 411 Hotline that Path Medical would have had to offer and pay the 411-PAIN Referral Service a commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, in return for the referral of patients by the 411-PAIN Referral Service to Path Medical.  In turn, the 411-PAIN Referral Service would have had to solicit and receive from Path Medical a commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, in return for referring the patients or patronage to Path Medical.

76.    In addition, the 411-PAIN Referral Service referred individuals who called the 411 Hotline to specific clinics in defined geographic areas (which did not overlap with a Path Medical clinic location) who paid a fee to receive exclusive referrals within those defined geographic areas.  Indeed, in at least certain geographic areas of Florida, the 411-PAIN Referral Service appeared to refer all callers to a single health care provider who purchased territorial exclusivity for patient referrals, despite advertising itself as a legitimate medical referral service.  (Ex. 11.)  For example, a chiropractor in Jacksonville testified his clinic licensed the exclusive rights over all calls made to 1-800-411-PAIN in the

Jacksonville market.  (Ex. 12 at pp. 123-24, 134-36.)  Specifically, the chiropractor

testified that when individuals called from the 904 area code, they were

connected directly to the chiropractor's office:

> Q.   The – When I asked you if I, meaning me the attorney and I
>       was in an accident and I called the 1-800-411-PAIN number
>       and I had a 904 area code number that goes directly to you,
>       that's what you told me, right?
>
> A.   Yes.  The reason I asked you what your phone number was –
>
> Q.   Right.
>
> A.   – because if it's not 904 it would probably ring to somebody
>       else.  I don't know who.  We don't – we only have 904.

(*Id.* at pp. 138-39.)  In addition, the chiropractor testified that if a caller asks for a

lawyer, the chiropractor, with the patient's permission, "will try and contact an

attorney that will call [the patient] back[.]"  (*Id.* at p. 145.)

77.    The 411-PAIN Referral Service's advertising materials also marketed

similar types of exclusive referral arrangements that allow chiropractors to

purchase "vanity numbers" exclusive to specific broadcast markets.  (Ex. 13.)

Unbeknownst to callers, there is no panel or network of chiropractors or clinics to

whom callers in those markets will be referred.  Instead, the vanity number

provides territorial exclusivity to participating clinics so that when a "potential

patient dials 1-800-411-PAIN the number is 'pointed' by [the particular clinic's]

direction to any number [it] wish[es]," including the clinics themselves.  (*Id.* at p.

1.) The 411-PAIN Referral Service explained the arrangement as follows:

> Fast, simple and easy to remember.  This is a 24-hour, 7 day-a-week service.  Potential patients or referral sources dial this number and are automatically transferred directly to YOU . . . not a confusing referral network.   When a call comes from your designated marketing area, it automatically connects directly to you.

(*Id.*)  The 411-PAIN Referral Service touted its patient-referral arrangements allow the participating clinic to be "1-800-411-PAIN" in that particular market: "There is no such thing as a closed door.  You are now 1-800-411-PAIN [and] the attorneys NOW need you more than you need them."  (*Id.*)  Moreover, the participating clinic's use of the vanity number is exclusive "in the precise market area that [its] business covers" – calls originating in that market are redirected to the participating chiropractor:

> You own the right to use the vanity number in the precise market area your business covers.  It doesn't matter if all your customers are in multiple area codes or zip codes, one hundred percent of all calls originating from your territory ring directly to YOU.  1-800-411-PAIN is pointed to your current phone line, cell phone or call center according to your directions.

(*Id.* at p. 6.)  The 411-PAIN Referral Service's marketing materials make clear not all territories are available, and that interested chiropractors should "call or email [to] reserve [their] territory . . . on a first-come-first-serve-basis . . . ."  (*Id.* at p. 3.)

78.   The exclusive nature of 411-PAIN Referral Service's referral obligations is illustrated by an unsigned advertising agreement between the 411-PAIN Referral Service and a chiropractic clinic.  The agreement obligates the 411-

PAIN Referral Service to "redirect all phone calls placed by potential clients to the Toll Free Numbers [which are defined in the agreement as, "1-800-411-PAIN and any other related phrases and toll free numbers"] to the phone number(s) designated by Participating Clinic . . . ." (Ex. 11 at p. 1 and § 2(b).) Participating chiropractors, in turn, are obligated to "attend to phone calls placed by Potential Clients to the Toll Free Numbers and redirected by Referral Service to the phone number(s) designated by Participating Clinic" and pay a monthly "fee." (*Id.* at §§ 3(a), 4(a).)

79.    At this time, State Farm Mutual and State Farm Fire do not know the extent to which the Path Referral Service and HURT Referral Service have had the same or similar arrangements to refer all callers within certain geographic areas which do not overlap with the Path Medical clinics to specific clinics who agree to pay a fee to the Path Referral Service or the HURT Referral Service for the exclusive right to receive those referrals.

### B.    Path Medical's Unlawful *Quid Pro Quo* Cross-Referral Relationships With PI Attorneys

80.    In addition, the 411-PAIN Referral Service and Path Referral Service appear to have unlawful *quid pro quo* referral relationships with PI Attorneys who participate in the 411-PAIN Referral Service and the Path Referral Service.[8]

---

[8] At all relevant times, the 411-PAIN Referral Service and the Path Referral Service have registered with The Florida Bar as "qualifying providers," and filed reports with The Florida Bar identifying the lawyers participating in their referral network, as required by Fla. Bar R. 4-7.22.

81.    After the 411-PAIN Referral Service closed its operations, Path Medical began to hold itself out as a lawyer referral service, *i.e.*, the Path Referral Service, advertising on its website that injured individuals should call 1-800-411-PAIN "for information about receiving legal help" and to "get connected with a personal injury attorney" "who may get [callers] the compensation [they] deserve!" (Ex. 14, https://path411pain.com/other-accidents/).

82.    It is no coincidence that of the 2,850 patients reflected on Exhibit 1 who were represented by PI Attorneys, at least 2,486 of those patients were represented by PI Attorneys participating in the 411-PAIN Referral Service or the Path Referral Service. Of these patients, at least 244 were represented by Kanner & Pintaluga (K&P), which participates in and has other significant connections to the 411-PAIN Referral Service and Path Referral Service, as described in paragraphs 85 and 86 below.

83.    At various times, the 411-PAIN Referral Service, Lewin, and counsel for the 411-PAIN Referral Service represented it provided referrals of callers to the 411 Hotline to PI Attorneys free of charge. For example, according to a Miami New Times article, Lewin denied PI Attorneys paid any fee to be part of the 411-PAIN Referral Service, but he acknowledged clinics and PI Attorneys in the 411-PAIN Referral Service have "a reciprocal relationship." (Ex. 15.) Furthermore, during a hearing before the Florida Supreme Court regarding The Florida Bar's

proposed amendments to the rule regulating lawyer referral services, the 411-PAIN Referral Service's lawyer testified the 411-PAIN Referral Service "does not charge [a fee] at this time" to lawyers who participate in its referral network.  (Ex. 16.)

84.    Given the millions of dollars 411-PAIN Referral Service and the Path Referral Service have spent to advertise and operate the 411 Hotline, it is reasonable to infer the reason PI Attorneys who were participating in the 411-PAIN Referral Service and the Path Referral Service represented at least 2,486 of the 2,850 patients reflected on Exhibit 1 who were represented by PI Attorneys is because of an unlawful *quid pro quo* arrangement between Path Medical, the referral services, and the PI Attorneys.  This fits the "reciprocal relationship" Lewin described between the 411-PAIN Referral Service and PI Attorneys.  The 411-PAIN Referral Service and the Path Referral Service referred callers to the 411 Hotline to PI Attorneys to induce the PI Attorneys to refer their clients to Path Medical for treatment as patients.[9]

---

[9] The 411-PAIN Referral Service apparently did charge at least some PI Attorneys in return for referrals from the 411 Hotline.  Specifically, a PI Attorney who was under investigation by The Florida Bar stated via a letter to The Florida Bar he remitted monthly payments of $5,000 to the 411-PAIN Referral Service.  (Ex. 17.)  The payments were made by the PI Attorney under the "assum[ption] that 411 Pain was a legitimate lawyer referral service and that by contributing to its campaign he would be on the list of lawyers to whom [clinics owned by Lewin] would refer its patients if they needed legal help."  (*Id.*)  His statement was later confirmed by 411-PAIN Referral Service's attorney who informed The Florida Bar the PI Attorney "made payments to 411 PAIN by check totaling $160,000.00[.]"  (*Id.*)

85.     The 411-PAIN Referral Service also apparently developed exclusive relationships with PI Attorneys through sublicense agreements.  The 411-PAIN Referral Service's website claimed it had "a number of offices located throughout Florida, Georgia, Michigan, Minnesota, and Tennessee," and that it would refer callers "to an attorney who will strive to ensure [the caller's] just compensation[.]"  (Ex. 18.)  The 411-PAIN Referral Service also entered into a sublicense agreement with K&P, making K&P the sub-licensee of 411-PAIN's trademarks in the state of Georgia, and likely other states.  *See 1-800-411-I.P. Holdings, LLC v. The Eichholz Law Firm, P.C.*, No. 17-CV-04382, Dkt. 22, (N.D. Ga. Jan. 22, 2018).

86.     The 411-PAIN Referral Service asserted it had "successfully created a conscious connection in the public mind between its 411-PAIN [m]arks and legal services in the Georgia market provided by K&P and the public actually identifies the 411-PAIN [m]arks with those legal services in the Georgia market."  *Id.* Moreover, until recently, in certain areas of Florida, visitors to the website www.411pain.com were automatically redirected to K&P's website – www.kpattorney.com.  Similarly, in Illinois, 411-PAIN Referral Service and/or Path Referral Service's marketing materials referenced "The Law Offices of Kanner & Pintaluga, P.A.," and visitors to www.411pain.com were automatically redirected to www.kpattorney.com.  In addition, in other areas of the country

where 411-PAIN is marketed, 411-PAIN Referral Service and/or Path Referral Service provided websites that function as advertisements for and point visitors to specific PI Attorneys. For example, in Memphis, visitors to www.411painmemphis.com are directed to Schwed, Adams, & McGinley, P.A. Likewise, until recently, in Detroit, visitors to www.411paindetroit.com were directed to Motor City Accident Attorneys, an entity owned by attorneys Howard Kanner, Eric Pintaluga, and Todd Landau.

87.     At this time, State Farm Mutual and State Farm Fire do not know the extent to which the HURT Referral Service has had similar *quid pro quo* cross referral arrangements with PI Attorneys in which the PI Attorneys have agreed to refer their clients to Path Medical in return for referrals from the HURT Referral Service.

### C.     Complete Information Regarding 411-PAIN, Path Referral Service, And HURT Referral Service's Referrals To Path Medical Is Not Within State Farm Mutual And State Farm Fire's Control

88.     The 411-PAIN Referral Service purportedly does not possess any information or records about where it referred any individual who called the 411 Hotline. Given that referrals to Path Medical and PI Attorneys were the core nature of its business and it spent millions of dollars to solicit individuals whom it could refer to Path Medical and PI Attorneys, it is reasonable to infer the reason the 411-PAIN Referral Service intentionally destroyed its records

regarding these referrals is it knew they were unlawful and did not want to create proof regarding the nature and scope of these referral relationships.

89.    While the full scope of the referral relationships involving the 411-PAIN Referral Service, the Path Referral Service, and the HURT Referral Service is presently not known by State Farm Mutual and State Farm Fire, several patients in the claims at issue have testified the 411-PAIN Referral Service referred them directly to Path Medical, or referred them to a PI Attorney who, in turn, referred them to Path Medical.  (Ex. 19 at p. 3; Ex. 20 at p. 2; Ex. 21 at p. 3.)

90.    There are likely a substantial number of other State Farm Mutual and State Farm Fire insureds who were referred by the 411-PAIN Referral Service, the Path Referral Service, or the HURT Referral Service, to Path Medical or to PI Attorneys who participated in their legal referral service network and had *quid pro quo* cross-referral relationships with Path Medical.  Indeed, because complete information regarding the manner and source of referrals for the State Farm Mutual and State Farm Fire insureds who received services from Path Medical since January 2017 is exclusively within the knowledge of Defendants and the involved PI Attorneys, State Farm Mutual and State Farm Fire expect to identify through discovery additional State Farm Mutual and State Farm Fire insureds who were referred to Path Medical by the 411-PAIN Referral Service, the Path Referral Service, and the HURT Referral Service.  To date, State Farm has

identified at least 15 State Farm Mutual and State Farm Fire insureds who called the 411 Hotline and treated at Path Medical.  Moreover, State Farm Mutual and State Farm Fire have identified at least 2,486 State Farm Mutual and State Farm Fire insureds who were represented by PI Attorneys who participated in the 411-PAIN Referral Service and/or Path Referral Service, and treated at Path Medical. State Farm Mutual and State Farm Fire have paid at least $17 million in No-Fault Benefits to Path Medical for patients in the claims at issue, and it is reasonable to infer at least many of the patients identified in Exhibit 1 were unlawfully referred by the 411-PAIN Referral Service or the Path Referral Service to Path Medical, either through a direct referral to Path Medical or referrals to PI Attorneys who agreed to refer their clients to Path Medical as part of a *quid pro quo* for the referrals from the 411 Hotline, in violation of the Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.  Therefore, neither State Farm Mutual and State Farm Fire nor the patients had any obligation to pay for services rendered to those patients.

> **D.    Path Medical's Claims And Charges To State Farm Mutual And State Farm Fire Are For Services That Were Not Lawfully Rendered Because They Were Rendered Pursuant To Violations Of Florida's Patient Brokering Act, Anti-Kickback Act, And Chiropractic Advertising Rules**

91.    The claims and charges of Path Medical described in the chart attached hereto as Exhibit 1 were for services that were not lawfully rendered to

the extent they were rendered pursuant to intentional violations of Florida's Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws, which relate to the provision of medical services and is designed to protect the public health, safety, and welfare.

### 1.   Patient Brokering Act

92.    Florida's Patient Brokering Act broadly prohibits "any person from offering, paying, soliciting, or receiving any commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engaging in any split-fee arrangement in any form whatsoever, . . . in return for referring the patients or patronage to a health care provider or health care facility."  Fla. Stat. § 817.505(1)(a) and (b).  It is also unlawful for any person to "aid, abet, advise, or otherwise participate" in such conduct.  Fla. Stat. § 817.505(1)(d).

93.    In enacting the Patient Brokering Act, the Florida Legislature created a limited exception permitting payments to a "health information service" that "provides information upon request and without charge to consumers about health care goods or services to enable consumers to select appropriate providers or facilities."  Fla. Stat. § 817.505(3)(i).  This exception applies, however, only if the health information service does not attempt "through its standard questions for solicitation of consumer criteria or through any other means to steer or lead a consumer to select or consider selection of a particular health care provider or

health care facility." Fla. Stat. § 817.505(3)(i)(1).  Even if the 411-PAIN Referral Service and the Path Referral Service were a "health information service," it would not satisfy this exception because it steered and led all consumers to select or consider selection of a particular health care provider, Path Medical, as well as PI Attorneys who participated in the 411-PAIN Referral Service and the Path Referral Service and, in return, cross-referred their clients to Path Medical for services performed pursuant to the Predetermined Protocol.

94.    Path Medical and the 411-PAIN Referral Service violated the Patient Brokering Act by offering and paying a kickback or bribe, directly or indirectly, in cash or in kind, to PI Attorneys, namely referrals of callers to the 411 Hotline, in return for which the PI Attorneys referred their clients to Path Medical to be treated as patients.  Furthermore, Lewin violated the Patient Brokering Act by aiding, abetting, advising, and otherwise participating in such conduct.

95.    To the extent Path Medical offered and paid a commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, to the 411-PAIN Referral Service for referring patients or patronage to Path Medical, Path Medical violated the Patient Brokering Act.  Furthermore, to the extent Lewin aided, abetted, advised, and otherwise participated in such conduct, Lewin violated the Patient Brokering Act.

96.    To the extent the 411-PAIN Referral Service solicited or received a commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, from Path Medical for referring patients or patronage to Path Medical, the 411-PAIN Referral Service violated the Patient Brokering Act. Furthermore, to the extent Lewin aided, abetted, advised, and otherwise participated in such conduct, Lewin violated the Patient Brokering Act.

### 2.    Anti-Kickback Act

97.    Florida's Anti-Kickback Act prohibits any health care provider or any provider of health care services from offering, paying, soliciting, or receiving "a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients."  Fla. Stat. § 456.054.  The Anti-Kickback Act provides a broad definition of "kickback" to include any "remuneration or payment, by or on behalf of a provider of health care services or items, to any person as an incentive or inducement to refer patients for past or future services or items[.]"  Fla. Stat. § 456.054(1).  Violations of the Anti-Kickback Act are also violations of the Patient Brokering Act.  Fla. Stat. § 456.054(3).

98.    Lewin and Path Medical, as health care providers and providers of health care services, violated the Anti-Kickback Act by offering and paying kickbacks, directly or indirectly, overtly or covertly, in cash or in kind, namely

referrals of callers to the 411 Hotline, to PI Attorneys to incentivize and induce the PI Attorneys to refer patients to Path Medical for future services and items.

### 3.   Chiropractic Advertising Laws

99.   Florida law regulates advertising by chiropractors, and prohibits chiropractors from – among other things – advertising "under a name other than one's own," engaging in "[f]alse, deceptive, or misleading advertising," "[a]dvertising, practicing, or attempting to practice under a name other than one's own," and "[s]oliciting patients either personally or through an agent, unless such solicitation falls into a category of solicitations approved by rule of the board [of chiropractic medicine]."  Fla. Stat. § 460.413(1)(d), (f), and (l).

100.   Similarly, the Florida Board of Chiropractic Medicine has promulgated various rules regarding chiropractic advertising.  Among other things, these rules prohibit chiropractors from disseminating or causing the dissemination of any advertisement or advertising which is in any way "fraudulent, false, deceptive, or misleading"; and require all advertisements "generated by or on behalf of a chiropractor must disclose that [they are] generated by or on behalf of a chiropractor by including a reference to the chiropractor by name and degree."  Fla. Admin. Code R. 64B2-15.001(1), (2)(a), and (b).

101.   Lewin, who is a chiropractor, violated the Chiropractic Advertising Laws by advertising under a name other than his own, engaging in false, deceptive, and misleading advertising, and engaging in unapproved patient solicitation.

102.   Specifically, Lewin engaged in fraudulent, false, deceptive, and misleading advertising through the 411-PAIN Referral Service by: (1) misrepresenting the 411-PAIN Referral Service as an independent, legitimate medical and legal referral service, and omitting it was – in fact – used in Florida to refer patients to Path Medical and PI Attorneys who agreed to direct their clients to the Path Medical clinics in exchange for client referrals; (2) advertising under a name, 411-PAIN, other than Lewin or Path Medical; and (3) soliciting patients through a chiropractic referral service or bureau, the 411-PAIN Referral Service, without identifying the advertisements were, in fact, generated by or on behalf of Lewin and Path Medical.

**E.      Path Medical's Claims And Charges To State Farm Mutual And State Farm Fire Are For Services That Were Not Lawfully Rendered Because False Disclosure And Acknowledgement Forms Were Submitted To State Farm Mutual And State Farm Fire For Patients Who Were Referred To Path Medical By 411-PAIN Referral Service Or By PI Attorneys Who Participated In The 411-PAIN Referral Service**

103.   Pursuant to Fla. Stat. § 627.736(5)(e)(1)(c), at the initial treatment or service provided, Path Medical is required to have all patients, or their guardians,

57

execute a Disclosure and Acknowledgment form, which reflects at a minimum the insured, or his or her guardian, was not solicited by any person to seek any services from Path Medical.   The licensed medical professional rendering treatment for which payment of No-Fault Benefits is claimed must sign the form, and the original completed Disclosure and Acknowledgment form must be furnished to the insurer.  Fla. Stat. § 627.736(5)(e)(4) and (5).

104.   Path Medical routinely submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire Disclosure and Acknowledgement forms in support of claims for the initial treatment or service. (Ex. 22, Representative Examples of Standard Disclosure and Acknowledgement Forms.)

105.   To conceal the unlawful solicitation and referrals obtained through the 411 Hotline, the Disclosure and Acknowledgement Forms submitted by Path Medical to State Farm Mutual and State Farm Fire were signed by the insureds affirming that they were "not solicited by any person to seek any services" from Path Medical, and signed by either the Medical Director Defendants, the Chiropractor Defendants, or other licensed medical professionals of Path Medical falsely affirming, "I have not solicited or caused the injured person . . . to be solicited to make a claim for [No-Fault Benefits]."   In each instance, these Disclosure and Acknowledgement Forms were false when submitted by Path Medical to State Farm Mutual and State Farm Fire for patients whom Path

Medical knew were solicited and referred through the 411 Hotline, thereby rendering all services rendered to such patients by Path Medical unlawful and non-compensable. *See* Fla. Stat. § 627.736(5)(b)(1)(b).

## VI.   THE FRAUDULENT AND UNLAWFUL PREDETERMINED PROTOCOL

106.   When patients present to Path Medical, they are not legitimately examined, diagnosed, or treated for their unique needs.  They are instead subjected to the Predetermined Protocol in which the Path Medical Providers, including the Medical Directors and the Chiropractor Defendants, purport to examine the patients, document they suffer from emergency medical conditions (EMC), and diagnose them with a litany of diagnoses, most often exceeding ten or more, to support a predetermined course of care, which they receive until they unilaterally stop treatment, or their No-Fault Benefits are exhausted, or substantially reduced.  When patients are discharged, the Path Medical Providers inevitably conclude the patients suffer from a permanent impairment despite the extensive course of services these patients have purportedly received.

107.   The bills and supporting documentation associated with the purported initial and final examinations, EMC findings, treatment, diagnostic imaging, and other services purportedly rendered by the Path Medical Providers to patients, which Defendants submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire are fraudulent because they falsely represent

the services were medically necessary and lawfully rendered, when they were not. *See* Fla. Stat. § 627.736(5)(b)(1)(b)-(c).   Each step in Defendants' fraudulent Predetermined Protocol is discussed next.

### A.   The Fraudulent And Unlawful Initial Examinations And EMC Findings

108.   The first step in the Predetermined Protocol is for the Path Medical Providers to purportedly perform initial examinations of patients and document they suffer from a litany of diagnoses, most often exceeding ten or more diagnoses per patient, including general sprains and strains of the spine, which the Path Medical Providers inevitably determine require extensive treatment, despite the fact these types of injuries often heal within weeks without any medical intervention.  (Ex. 1, Sprain/Strain Diagnosis Column.)  Based on the purported examinations, reports are created summarizing the patients' subjective complaints, as well as the Path Medical Providers' purported findings, results of any diagnostic imaging, diagnoses, and plan of care ("Initial Exam Reports"). (Ex. 23, Representative Examples of Initial Exam Reports with Corresponding Bills.)  Defendants submit, or cause to be submitted, the Initial Exam Reports to State Farm Mutual and State Farm Fire to support separate office visit charges and to justify the predetermined treatment and diagnostic imaging services prescribed to patients.  Indeed, regardless of the examination findings, results of any diagnostic imaging, diagnoses, and plan of care reflected in the Initial Exam

Reports, the Path Medical Providers purport to provide virtually all patients with four or more passive modalities, in addition to one or more active modality, on every visit.  (Ex. 1, Treatment Columns.)

109.   At Path Medical, a chiropractor purports to examine each patient at his or her initial visit and then a physician, physician assistant, or nurse practitioner purports to perform a second, separate examination of the patient. Both the chiropractor, on the one hand, and the physician, physician assistant, or nurse practitioner, on the other hand, prepare separate Initial Exam Reports, which Defendants submit, or cause to be submitted, to State Farm Mutual and State Farm Fire in support of separate office charges.  The Initial Exam Reports from the chiropractor contain no legitimate, documented basis or rationale for another provider in a different discipline to perform a second examination of patients, most of whom purportedly suffer from commonplace, soft tissue injuries such as sprains and strains.  Indeed, while the examinations purportedly performed by the physicians, physician assistants, and nurse practitioners at Path Medical are not medically necessary, they nonetheless play an important role in Defendants' scheme to exploit the full profit potential of their patients because they purport to justify the predetermined treatment and related services prescribed by chiropractors and document the existence of an EMC.

110.   As noted above, before January 1, 2013, injured parties who were eligible for PIP Benefits were entitled to up to $10,000 of PIP Benefits for medically necessary goods and services.  Then, in 2012, the Florida Legislature amended the PIP Law in an attempt "to reduce fraud in order to lower the cost of insurance premiums."  *Progressive Am. Ins. Co. v. Eduardo J. Garrido D.C. P.A.*, 211 So. 3d 1086, 1089 (Fla. Dist. Ct. App. 2017), *review denied sub nom. Eduardo J. Garrido D.C. P.A. v. Progressive Am. Ins. Co.*, No. SC17-383, 2017 WL 2874837 (Fla. July 6, 2017).  The amendment, which became effective on January 1, 2013, sought to further its objective by limiting PIP Benefits to $2,500 unless there was a determination by a physician or other professional licensed under other specific provisions of Florida law that the injured person sustained an EMC, in which case the injured person was eligible for PIP Benefits of up to $10,000 for such goods and services.   *See* Fla. Stat. § 627.736(1)(a)(3)-(4). Accordingly, because chiropractors are not allowed under the PIP Law to assign patients with an emergency medical condition, Defendants could lawfully be limited to $2,500 in PIP Benefits in the absence of the unnecessary examinations performed by Path Medical's physicians, physician assistants, and nurse practitioners.  Thus, Defendants' scheme involves shuffling their patients to the second, medically unnecessary examination performed by a Path Medical physician, physician assistant, or nurse practitioner, which routinely results in

findings of an emergency medical condition, to ensure the full $10,000 in PIP Benefits is available for Defendants to exploit.

111.   Indeed, since at least January 2017, the Path Medical physicians, physician assistants, and nurse practitioners, including Cheesman, Marino, Qian, Thomas, Vazquez, and Wilensky, have falsely represented the overwhelming majority of their patients suffer from an EMC – that is, a condition that "manifest[s] itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in . . . [s]erious jeopardy to patient health, . . . [s]erious impairment to bodily functions, [or] . . . [s]erious dysfunction of any bodily organ or part."   Fla. Stat. § 627.732(16).   These fraudulent EMC determinations are documented in Initial Exam Reports and boilerplate "Notice Of Emergency Medical Condition" forms, which Defendants submit to State Farm Mutual and State Farm Fire.  (Ex. 24 at pp. 2, 5, and 9, Representative Examples of Physician Initial Exam Reports and Bills; Ex. 25, Representative Examples of EMC Notices.)  Defendants' records fail, however, to meaningfully detail any emergency medical conditions in their patients, most of whom purportedly suffer from commonplace, soft tissue injuries such as sprains and strains (*see, e.g.*, Ex. 1, sprain/strain diagnosis column) that would rarely, if ever, result in serious

jeopardy to patient health, serious impairment of bodily functions, or serious dysfunction of any bodily organ or part.

112.   For example, patient J.E.M. was involved in an auto accident on March 30, 2017.  (Ex. 1, RICO No. 262, Date of Loss Column.)  On April 3, 2017, Sefick performed an initial chiropractic exam on patient J.E.M., documented diagnoses of soft tissue injuries of the left shoulder and lumbar spine, and made a recommendation for MRIs and the predetermined treatment plan, as well as an internal referral to "the medical doctor in our office for consultation."  On May 2, 2017, Marino purportedly examined patient J.E.M.  (Ex. 26.)  During the exam, Marino documented J.E.M.'s "back and shoulder" pain at an intensity of "1" on a scale of 0 to 10, and diagnosed sprains/strains of the cervical spine and left shoulder.  (*Id.* at p. 1.)  Marino further documented patient J.E.M. had "no current numbness, tingling, or weakness," "no spasm or tenderness of the lumbar paravertebral muscles," and "no pain with elevation of [the] left arm at 180 degrees."  (*Id.*)  Despite patient J.E.M.'s *de minimis* complaints and lack of objective findings, including Marino's failure to document any examination whatsoever of patient J.E.M.'s cervical spine, Marino summarily concluded patient J.E.M. suffered from an EMC.  (*Id.* at p. 2.)

113.   Similarly, patient K.M. was involved in an auto accident on February 4, 2018  (Ex. 1, RICO No. 1,454, Date of Loss Column.)  On February 8, 2018,

Sefick performed an initial chiropractic exam on patient K.M., documented diagnoses of headaches and soft tissue injuries of the right knee and cervical, thoracic, and lumbar regions of the spine, and made a recommendation for MRIs and the predetermined treatment plan, as well as an internal referral to "the medical doctor in our office for consultation."  In a February 12, 2018 Notice of Emergency Medical Condition form, Marino purportedly determined – without any documented examination – patient K.M. suffered from an EMC.  (Ex. 27 at p. 3.)  Just two weeks later, on February 26, 2018, Marino purportedly examined patient K.M.  (Ex. 27.)  Although Marino previously had concluded the patient purportedly suffered from an EMC, his exam documented that K.M.'s "neck and back" pain was at an intensity of "2" on a scale of 0 to 10 and there was "tenderness" of the cervical and lumbar paravertebral muscles.  (*Id.* at p. 1.) Marino diagnosed sprains/strains of the cervical and lumbar regions of the spine and recommended patient K.M. continue unspecified therapy.  (*Id.* at pp. 1-2.)

114.   In short, the routine finding of an EMC for Path Medical's patients examined by a physician, physician assistant, or nurse practitioner is simply not credible and fraudulent.

### B.   The Fraudulent And Unlawful Treatment

115.   Following their initial examinations, Path Medical subjects virtually all patients to the predetermined course of treatment consisting of five or more

modalities on nearly every visit.  (Ex. 1, Treatment Columns.)  The treatment patients purportedly receive at Path Medical is not individualized or adjusted over the course of treatment to address patients' unique response to treatment, progress, or lack thereof.  In the vast majority of instances, the modalities purportedly provided to Path Medical's patients are virtually identical and consist of hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise, which is not credible given the wide range of unique circumstances presented by each patient, including the patient's age, physical characteristics, symptoms, history, ability to participate in treatment, and his or her response to treatment. Moreover, this combination of treatments results in patients allegedly receiving five or more modalities on nearly every visit, which would rarely, if ever, be medically necessary for any patient, let alone for nearly all patients.  Path Medical ensures virtually all patients receive five or more modalities on nearly every visit because it enables Defendants to submit five or more charges for each date of service to State Farm Mutual and State Farm Fire, thereby quickly reducing patients' available No-Fault Benefits for Defendants' gain.

116.  To further illustrate the lack of medical necessity across Path Medical's services, when Path Medical purportedly performed chiropractic manipulation, it routinely adjusted three to four regions of the patient's spine

(CPT Code 98941), regardless of whether this level of service was indicated.  For example, Path Medical purportedly performed and billed a three-to-four level adjustment (CPT Code 98941) on patient J.E.M.'s (RICO No. 262) cervical, thoracic, and lumbar regions of the spine.  (Ex. 28.)  However, patient J.E.M.'s Daily Treatment Note reflected no objective findings at all and documented complaints of only one spinal region, as opposed to three regions required to support the medical necessity of a three-to-four region adjustment.  (Ex. 29.)

117.  Similarly, on December 15, 2017, Path Medical purportedly performed and billed a three-to-four level adjustment (CPT Code 98941) on patient M.A.'s (RICO No. 1,110) cervical, thoracic, and lumbar regions of the spine.  (Ex. 30.)  However, patient M.A.'s Daily Treatment Note documented complaints for only two spinal regions, as opposed to three, and contained no objective findings at all, let alone objective findings for an issue in the patient's spine.  (Ex. 31.)

118.  In short, Path Medical's charges for three-to-four level adjustments were not medically necessary but instead performed and billed to exploit patients' No-Fault Benefits.

119.  In addition to the course of medically unnecessary passive and active modalities Defendants purport to provide to virtually every patient, the Path Medical Providers routinely provide patients with medically unnecessary DME

(*e.g.*, lumbar braces) at or near patients' first visit to Path Medical. In fact, the majority of patients who are diagnosed with a lumbar sprain/strain receive a "Weave 27" or "Weave 31" lumbar brace from Path Medical. Defendants subsequently bill State Farm Mutual and State Farm Fire $800 for each Weave 27 lumbar brace under Current Procedural Terminology ("CPT") Code L0642, and $1,000 for each Weave 31 lumbar brace under CPT Code L0648.

120. In conjunction with the DME, Path Medical submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire "Letters of Medical Necessity," in which the Path Medical Providers fraudulently represent the DME is medically necessary because a Path Medical Provider purportedly diagnosed the patient with a lumbar sprain or strain. These non-specific findings do not justify the prescription of DME. Moreover, the DME is not prescribed to patients because it is medically necessary, but because it allows Path Medical to submit grossly inflated charges, which are more than 10 times the retail price of the same or substantially similar lumbar braces available in the marketplace.

121. Specifically, the $800-$1,000 price Path Medical charges for the DME, namely, the Weave 27 and Weave 31 lumbar braces, is more than 1,000% higher than the price a consumer could pay to obtain the same or substantially similar braces from a store. For example, a consumer can readily purchase the Weave 27 lumbar brace from Walmart for only $62.99. (*See*

www.walmart.com/ip/The-Weave-Back-Brace-27-Series/116306367.)   Similarly, a consumer can purchase the Weave 31 lumbar brace from Walmart for $87.99. (*See* www.walmart.com/ip/The-Weave-Back-Brace-31-Series/114204936.)

122.   In short, the Path Medical Providers do not prescribe DME because it was medically necessary but because it financially enriched Defendants by allowing them to bill for DME at inflated prices in order to exploit patients' No-Fault Benefits and to inflate the value of BI and UM Claims.

123.   To support fraudulent charges for the medically unnecessary services provided at Path Medical, Defendants submit, or caused to be submitted, to State Farm Mutual and State Farm Fire "Daily Treatment Notes" for each visit.  (Ex. 32, Representative Examples of Daily Treatment Notes and Bills.)  The Daily Treatment Notes routinely reflect patients have nonspecific "pain" in one or more regions of the spine, as well as other areas of the body, although Defendants typically fail to document each patient's pain score or provide a meaningful baseline measurement of any sort.  (*Id.*)  Thus, the Daily Treatment Notes provide no objective basis upon which to measure the extent of any progress (or lack thereof) made by the patient over the course of treatment.  (*Id.*)

124.   The Daily Treatment Notes also purportedly reflect Defendants' examination findings that, if documented at all, reflect vague findings of "spasm" or "tenderness" in each anatomic site patients purportedly report pain.  (*Id.*)  The

69

Daily Treatment Notes routinely fail to identify specific muscles, levels of the spine, or other structures that supposedly evince tenderness or spasms when examined. (*Id.*)

125.   Moreover, while the Daily Treatment Notes purport to document the treatment provided on each visit, they do so only in a cursory manner and virtually always reflect patients received numerous medically unnecessary passive modalities (*e.g.*, hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction) at each visit throughout their course of care.  (Ex. 32.)  Because each medically unnecessary modality provided to a patient presents Defendants with the opportunity to submit a fraudulent charge to State Farm Mutual and State Farm Fire, the Path Medical Providers do not phase out passive modalities over time as would be expected in a legitimate treatment setting.

126.  With the exception of chiropractic manipulation and manual therapy, the Daily Treatment Notes also routinely fail to document the specific levels of the patient's spine (*e.g.*, C3-C4, L4-L5) or any particular muscles or joints that were supposedly treated with the passive modalities.  The Daily Treatment Notes largely provide only nonspecific information that the cervical, thoracic, and/or lumbar regions of the spine, each of which is comprised of many

different levels, muscles, and structures, were treated with various passive modalities. (*Id.*)

127. In addition to the four or more passive modalities provided on nearly all visits, the Daily Treatment Notes and corresponding bills submitted to State Farm Mutual and State Farm Fire reflect patients purportedly engaged in active therapy on nearly every visit, which is typically billed as neuromuscular reeducation, therapeutic exercise, therapeutic activities, and/or group physical therapy under CPT Codes 97112, 97110, 97530, and 97150, respectively. (Ex. 1, Treatment Columns.) While the Daily Treatment Notes purport to reflect patients engage in active therapies at nearly every visit, they provide only vague descriptions of the neuromuscular reeducation, therapeutic exercise, therapeutic activities, and group physical therapy. (Ex. 32.) The Daily Treatment Notes also fail to meaningfully document for each patient the specific goals for the active therapies or patients' progress (or lack thereof) towards those goals.

128. Indeed, the Daily Treatment Notes fail to meaningfully document how patients responded to any of the numerous modalities purportedly provided to patients at each visit, or the patient's progress or responses to any of the therapies over time. At best, the Daily Treatment Notes reflect each patient's response to treatment was "unchanged," "improving," or "worsening." (Ex. 32.) Because the Daily Treatment Notes fail to provide a meaningful assessment on

each treatment visit, there is no baseline against which Defendants could measure the extent of any patient's progress (or lack thereof).

129.   The Daily Treatment Notes also purport to document each patient's "Therapy Plan."  The Therapy Plan, however, reflects only the frequency of treatment for each patient (*e.g.*, "daily," "3x week").  Defendants' Therapy Plan makes no effort to describe the passive or active modalities each patient should receive on their next visit, the specific exercises that should be performed, and the area(s) of the body any such modalities should target.  (Ex. 32.)

130.   Defendants' treatment of multiple individuals, who were purportedly in the same accident, began treatment at Path Medical on or about the same date, were subjected to the same or nearly identical treatment, and were discharged with impairments on or about the same date, illustrates the predetermined course of patients' treatment.  For example, patient E.B.A., a thirty-one-year-old female, and patient J.G.O., a forty-two-year-old male, were involved in the same auto accident on February 21, 2017.  (Ex. 1, RICO Nos. 137 and 138, Date of Loss Column.)  Both patients began treatment at Path Medical-Kissimmee on the same day – February 22, 2017.  (*Id.*, First Date of Service Column.)  On that date, Cameron Banks, D.C. prepared Initial Exam Reports for patients E.B.A. and J.G.O., diagnosed them with sprains/strains in multiple regions of the spine, recommended a predetermined course of treatment, and referred each patient for

MRIs to "rule out internal derangement[.]"  (Ex. 1, RICO Nos. 137 and 138, Sprain/Strain Diagnosis Regions Column; Ex. 33 at pp. 3-4; Ex. 34 at pp. 3-4.) On March 1, 2017, Path Medical-Apex performed cervical and lumbar MRIs on patients E.B.A. and J.G.O.  (Ex. 1, RICO Nos. 137 and 138, Number of Path MRIs Column; Ex. 33 at pp. 5-9; Ex. 34 at pp. 5-9.)  Desai prepared reports purporting to document his interpretation of each patient's MRIs, all of which reflected "herniations" and "bulges" of the cervical and lumbar spine.  (Ex. 33 at pp. 5, 7; Ex. 34 at pp. 5, 8.)  On March 29, 2017, Marino purportedly examined patients E.B.A. and J.G.O., diagnosed them with cervical and lumbar sprains/strains, recommended continued treatment, and documented they had both sustained an EMC.  (Ex. 1, RICO Nos. 137 and 138; Ex. 33 at pp. 10-11; Ex. 34 at pp. 10-11.) Pursuant to the predetermined course of treatment, patients E.B.A. and J.G.O. received the same litany of medically unnecessary treatment modalities, which consisted of at least five modalities across 21 dates of service.  (Ex. 1, RICO Nos. 137 and 138, Number of Treatment Visits and Treatment Modality Columns.)  On May 3, 2017, Marino purportedly performed a final examination of patients E.B.A. and J.G.O.  (Ex. 33 at pp. 12-14; Ex. 34 at pp. 12-14.)  Although neither patient reported any pain, Marino diagnosed patients E.B.A. and J.G.O. with a cervical sprain/strain, lumbar sprain/strain, and various "herniations" and

"bulges" of the cervical and lumbar spine, and discharged both patients with a permanent impairment.  (Ex. 33 p. 13; Ex. 34 at pp. 13-14.)

131.   Similarly, patient B.H.P., a twenty-two-year-old female, and patient D.F., a twenty-eight-year-old male, were involved in the same auto accident on April 7, 2017, and presented to Path Medical-East just days after the accident. (Ex. 1, RICO Nos. 294 and 295, Date of Loss and First Date of Service Columns.) On April 10, 2017, Sefick purportedly examined patients B.H.P. and D.F., prepared an Initial Exam Report for each patient, diagnosed them with multiple sprains/strains of the spine, recommended a predetermined course of treatment, and referred each patient for MRIs to "rule out internal disc derangement."  (Ex. 1, RICO Nos. 294 and 295, Sprain/Strain Diagnosis Column; Ex. 35 at pp. 2-3; Ex. 36 at pp. 2-3.)  On April 20, 2017, patients B.H.P. and D.F. each received MRIs of two regions of the spine from Path Medical-Apex.  (Ex. 1, RICO Nos. 294 and 295, Number of Path MRIs Column; Ex. 35 at pp. 4-8; Ex. 36 at pp. 4-7.) According to reports prepared by Desai, each patient's MRIs reflected "herniations" and "bulges."  (Ex. 35 at pp. 4, 7; Ex. 36 at pp. 4, 6.)  On May 2, 2017, Marino purportedly examined patients B.H.P. and D.F., diagnosed them with a cervical sprain/strain and lumbar sprain/strain, recommended continued treatment, and documented each patient had sustained an EMC.  (Ex. 1, RICO Nos. 294 and 295; Ex. 35 at pp. 9-10; Ex. 36 at pp. 8-9.)  Patients B.H.P. and D.F.

received the same modalities, which consisted of at least five modalities across all seventeen dates of service in which treatment was purportedly provided at Path Medical.  (Ex. 1, RICO Nos. 294 and 295, Number of Treatment Visits and Treatment Modality Columns.)  On July 18, 2017, Marino purportedly performed a final examination of patients B.H.P. and D.F., diagnosed them with multiple sprains/strains and various "herniations" and "bulges" of the spine, and discharged both patients with a permanent impairment.  (Ex. 35 pp. 12-13; Ex. 36 at pp. 11-12.)

132.   Such uniformity of treatment among passengers from the same auto accidents is simply not credible given the unique circumstances presented by each patient, including each patient's physical characteristics, symptoms, history, ability to participate in treatment, and his or her response thereto, and further underscores the fraudulent nature of Defendants' Predetermined Protocol.

133. Accordingly, because Defendants provided services, if at all, pursuant to the Predetermined Protocol and not because such services were medically necessary, the bills and supporting documentation submitted to State Farm Mutual and State Farm Fire for such services were fraudulent.  *See* Fla. Stat. §§ 627.732(11), 627.736(5)(b)(1)(c); *see also* Exhibit 1.

### C.     The Fraudulent And Unlawful Diagnostic Imaging Services

134.   The overwhelming majority of Path Medical's patients were referred by the Path Medical Providers for medically unnecessary and unlawful MRIs. (Ex. 1, MRI Columns.)  MRIs are advanced imaging procedures that should be ordered if they are necessary for a diagnostic purpose to guide treatment, or another specific purpose designed to benefit the patient as explained in the medical record.  For example, MRIs may be appropriate when a patient's diagnostic picture includes worrisome signs or symptoms, response to treatment is atypical, or legitimate concerns about structural issues exist.  For patients with soft tissue injuries, MRIs are rarely indicated, and almost never indicated in multiple regions of the spine and body simultaneously, especially on a patient's first date of treatment.  When MRIs are clinically indicated and ordered, medical providers should evaluate and document whether any abnormalities have any clinical significance for the patient's current condition and care plan.

135.   The lack of medical necessity for the MRIs ordered by the Path Medical Providers is reflected by the timing of the MRI recommendations and the patients' diagnoses.  The Path Medical providers regularly ordered MRIs early in the patient's course of treatment – often on the patient's first visit to Path Medical – despite the lack of any documented conditions or circumstances that would warrant a MRI and before there was an opportunity to determine if the

patient recovered through a course of time and conservative care.  (Ex. 1, First Date of Service Column; Ex. 23, Representative Examples of Initial Exam Reports and Bills.)  In fact, the lack of medical necessity for the MRIs can also be seen in the fact that, for the overwhelming majority of patients, the Path Medical Providers do not meaningfully evaluate and document the significance of the MRI findings and incorporate those findings into diagnoses and treatment plans. At best, the MRI findings sometimes resulted in referrals for consultations to other specialists (*e.g.*, neurologist, orthopedic surgeon) but the Path Medical Providers did little to follow-up on the results of the referrals or change the patients' course of treatment.

136.   Regardless of the timing for the MRI orders, the Path Medical Providers also failed to document an adequate rationale for their MRI orders. The routine documented justification for the MRIs was to rule out HNP (*i.e.*, herniated nucleus pulposus), herniated discs, or other similar disc injury, which is not a legitimate reason for ordering an MRI.  (Ex. 23 at pp. 6, 10, and 18, Representative Examples of Initial Exam Reports and Bills.)  The components of a treatment plan depend on the patient's clinical presentation, and the mere presence of a disc herniation does not preclude the patient from performing conservative treatment such as physical therapy or chiropractic treatment.

137. Path Medical also failed to use the MRI results to tailor patients' treatment plans, which further underscores the MRIs lack of medical necessity. For example, patient M.M.B. initiated treatment at Path Medical on February 9, 2017. (Ex. 1, RICO No. 91, First Date of Service Column.) Between February 9, 2017 and February 14, 2017, Path Medical purportedly provided hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise on each date of service. (*Id.*, Treatment Columns.) On February 15, 2017, MRIs of patient M.M.B.'s cervical and lumbar spine were performed at Path Medical-Apex, which purportedly revealed disc bulges and herniations, among other findings. (Ex. 37, Patient M.M.B.'s MRI Reports and Bills.) After the MRI was performed, Path Medical continued to administer the same course of treatment. (Ex. 1, RICO No. 91, Treatment Columns.)

138. Similarly, patient P.C.A. initiated treatment at Path Medical on October 17, 2017. (Ex. 1, RICO No. 1,041, First Date of Service Column.) Between October 17, 2017 and October 22, 2017, Path Medical purportedly provided hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise on each date of service. (*Id.*, Treatment Columns.) On October 23, 2017, MRIs of patient P.C.A.'s cervical and lumbar spine were performed at Path Medical-

Hallandale, which purportedly revealed bulging discs, among other findings. (Ex. 38, Patient P.C.A.'s MRI Reports and Bills.) After the MRI was performed, Path Medical continued to administer the same course of treatment. (Ex. 1, RICO No. 1,041, Treatment Columns.)

139. Likewise, patient D.S. initiated treatment at Path Medical on January 19, 2018. (Ex. 1, RICO No. 1,398, First Date of Service Column.) Between January 19, 2018 and January 22, 2018, Path Medical purportedly provided hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise on each date of service. (*Id.*, Treatment Columns.) On January 23, 2018, MRIs of patient D.S.'s cervical and lumbar spine were performed at Path Medical-Apex, which purportedly revealed disc bulges and herniations, among other findings. (Ex. 39, Patient D.S.'s MRI Reports and Bills.) After the MRI was performed, Path Medical continued to administer the same course of treatment. (Ex. 1, RICO No. 1,398, Treatment Columns.)

140. In addition, when the Path Medical Providers ordered the medically unnecessary and unlawful MRIs, the vast majority of patients were steered to Path Medical for the MRIs, which allowed Defendants to submit substantial additional charges to State Farm Mutual and State Farm Fire. (Ex. 1, Number of Path MRIs Column.) Indeed, from at least January 2017 through the present, the

Path Medical Providers referred 2,346 patients to Path Medical for 4,883 medically unnecessary and unlawful MRIs.  Path Medical billed State Farm Mutual and State Farm Fire more than $7 million for these medically unnecessary and unlawful MRIs.  (*Id.*)  On average, Path Medical billed State Farm Mutual and State Farm Fire $1,500 for each Path Medical MRI, and the vast majority of patients who received a MRI from Path Medical received two or more MRIs.[10]  (*Id.*)

141.   Moreover, the MRIs performed at Path Medical are purportedly interpreted by the Medical Directors of the various Path Medical MRI locations – Drs. Desai and Ramos – radiologists who document their purported findings in "MRI Reports."  (Ex. 41, Examples of MRI Reports with Corresponding Bills; Ex. 1, Path Defendants Column.)   The MRI Reports for patients who received cervical, thoracic, and/or lumbar MRIs from Path Medical virtually always reflect positive findings, most often consisting of purported disc "herniations" or "bulges."  (Ex. 41 at pp. 1, 3-4, 6, 9, and 12.)  The MRI Reports appear not only designed to further justify the need for the Predetermined Protocol, but also to document the existence of conditions that could support the patients' BI Claims and UM Claims, which require evidence of a "significant and permanent loss of

---

[10] Path Medical's average MRI charge of $1,500 is nearly 65% higher than the average MRI charge of $912 it represented to AHCA in its application for health care clinic licensure.  (Ex. 40.)

an important bodily function," or "a permanent injury[.]"  Fla. Stat. § 627.737(2).
The MRI Reports appear to facilitate *quid pro quo* cross-referral relationships
with PI Attorneys to the extent the reports increased the medical charges for the
patient and supported their BI or UM Claims.

142.   The Path Medical Providers also routinely ordered and performed
medically unnecessary x-ray services on their patients, often on two or more
areas of the patient's body, despite the lack of any legitimate, documented clinical
basis to order such x-rays in the records.  (Ex. 1, X-Rays Column.)

143.   Providers must avoid overexposing patients and subjecting them to
unnecessary and potentially harmful ionizing radiation from x-rays where there
is no prior clinical basis to do so.  Thus, x-rays should never be a routine
component of diagnosing and treating soft-tissue injuries.  Moreover, in
legitimate settings, when x-rays are ordered, they should be medically necessary
and limited to the targeted body part or area of interest.  The Initial Exam
Reports, however, rarely, if ever, meaningfully document a clinical basis for why
such x-rays were necessary.  The Path Medical Providers ordered and provided x-
rays to their patients not because they were medically necessary, but because
such services allowed Defendants to submit additional charges and to support the
purported need for the Predetermined Protocol.

144.   In sum, the MRIs and x-rays performed at Path Medical are not ordered and performed because they are medically necessary to address each patient's unique circumstances and were therefore fraudulent. *See* Fla. Stat. §§ 627.732(11) and 627.736(5)(b)(1)(b)-(c); *see also* Exhibit 1, MRI and X-Ray Columns.

### D.   The Fraudulent And Unlawful Re-Examinations

145.   Because patients are unique and respond differently to injuries and treatment, treatment plans should be periodically reassessed and modified, if appropriate, but there is no indication the Path Medical Providers perform a meaningful re-examination of their patients' progress to assess whether treatment plans should be modified.

146.   Indeed, while Path Medical may purport to re-evaluate some patients every few weeks, the re-examination reports ("Re-Examination Reports") are similar to the Initial Exam Reports in that they reflect rote recommendations for continued treatment regardless of a patient's unique circumstances or whether there has been any documented medical improvement. Nor do the Re-Examination Reports meaningfully attempt to incorporate the findings of any diagnostic imaging (other than merely copying and pasting the results of the diagnostic imaging reports) into the treatment plan. At best, the re-examinations result only in a recommendation for either a continuation of the

same, a decrease in frequency, or a referral to another provider (without any meaningful documentation regarding the results of these referrals). Representative examples of the Re-Examination Reports and bills are attached hereto as Exhibit 42.

147.   The re-examinations performed at Path Medical are not done to legitimately evaluate the patients' conditions and progress or to make medical decisions necessary to address the unique needs of the individual patients. Instead, the re-examinations are a pretext to support predetermined recommendations for continued treatment and to facilitate separate office visit charges and are thus fraudulent.   *See* Fla. Stat. §§ 627.732(11) and 627.736(5)(b)(1)(b)-(c); *see also* Exhibit 42.

### E.   The Fraudulent And Unlawful Final Examinations

148.   The Path Medical Providers also purport to conduct final examinations in which they discharge the patients and release them from further treatment.   (Ex. 43, Representative Examples of Final Exam Reports and Bills.) These final examinations are reflected in reports that typically purport to detail the patient's final subjective complaints, examination findings, the results of any diagnostic imaging, and diagnoses, among other information ("Final Exam Reports").   (*Id.*)

149. The Final Exam Reports are not credible and are fraudulent, however. Indeed, despite the extensive treatment patients purportedly received at Path Medical, which for most patients consists of five or more of the same modalities on virtually every visit, the Final Exam Reports nearly always document patients are still afflicted with some degree of neck and/or back pain, among other ailments, and have sustained a permanent impairment. (Ex. 43 at pp. 3, 7-8, 11-12, and 15-16, Representative Examples of Final Exam Reports and Bills.)

150. Moreover, the Path Medical Providers document findings of permanent impairment regardless of each patient's reported pain score, if any. For example, patient R.A. initiated treatment at Path Medical on January 11, 2017. (Ex. 1, RICO No. 15, First Date of Service Column.) Between January 11, 2017 and March 23, 2017, patient R.A. treated at Path Medical for 32 visits and purportedly received hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise on virtually every date of service. (Ex. 1, Treatment Visits and Treatment Columns.) At the conclusion of his treatment, on March 23, 2017, Marino purportedly performed a final examination in which patient R.A. rated his pain at an intensity of "0" on a scale of 0 to 10. (Ex. 44 at p. 1.) Moreover, Marino's purported examination revealed patient R.A. had normal cervical and lumbar

ranges of motion, as well as no tenderness or spasms in the cervical and lumbar regions of the spine.  (*Id.* at p. 2.)  Nonetheless, Marino concluded patient R.A. suffered a 4% permanent impairment. (*Id.* at pp. 2-3.)

151.   Similarly, patient G.E.L. initiated treatment at Path Medical on August 12, 2017.  (Ex. 1, RICO No. 782, First Date of Service Column.)  Between August 12, 2017 and October 17, 2017, patient G.E.L. treated at Path Medical for 25 visits and purportedly received hot/cold packs, chiropractic manipulation, manual therapy, e-stim, mechanical traction, neuromuscular reeducation, and therapeutic exercise on virtually every date of service.  (Ex. 1, Treatment Visits and Treatment Columns.)  At the conclusion of his treatment, on October 17, 2017, Marino purportedly performed a final examination in which patient G.E.L. rated his pain at an intensity of "0" on a scale of 0 to 10.  (Ex. 45 at p. 1.) Moreover, Marino's purported examination revealed patient G.E.L. had normal cervical and lumbar ranges of motion, as well as no tenderness or spasms in the cervical and lumbar regions of the spine.  (*Id.* at p. 2.)  Nonetheless, Marino concluded patient G.E.L. suffered a 5% permanent impairment. (*Id.* at pp. 2-3.)

152.   Similar to the findings of the MRI Reports discussed above, the Final Exam Reports' findings of purported permanent impairments appear designed to support patients' BI or UM Claims and thus further facilitate the *quid pro quo* cross-referral relationships between Defendants and PI Attorneys.  By virtue of

the fraudulent statements reflected in the Final Exam Reports, Defendants knowingly submitted to State Farm Mutual and State Farm Fire a false statement relating to a claim or charge. *See* Fla. Stat. §§ 627.732(11) and 627.736(5)(b)(1)(c); *see also* Ex. 43, Representative Examples of Final Exam Reports and Bills.

## VII.   THE MEDICAL DIRECTORS FAILED TO COMPLY WITH THEIR STATUTORY DUTIES UNDER THE HCCA

153.   In 2003, the Florida Legislature enacted the HCCA after finding "the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers." Fla. Stat. § 400.990(2). The purpose of the HCCA is "to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by [AHCA]." *Id.*

154.   Consistent with its twin goals of establishing basic standards for health care clinics and providing administrative oversight, the licensing regime established by the HCCA subjects licensed clinics to increased regulation and scrutiny. Indeed, it not only requires entities that provide health care services to obtain a license but also requires licensed clinics to meet numerous qualifications and accept enhanced oversight, including clinic inspections and certifications, increased criminal penalties for operating an unlicensed clinic, substantially higher fees to obtain clinic licensure, and mandatory background screening for all

individuals and entities that qualify as clinic applicants.  Fla. Stat. § 400.990 *et seq.*

155.   For example, the HCCA generally requires any entity, such as Path Medical, which provides health care services and tenders charges for reimbursement for such services to first obtain a license from AHCA.  To obtain a license, each clinic location must comply with the licensing procedures outlined in both the HCCA and the Health Care Licensing Registration Act, Fla. Stat. § 408.801 *et seq*.

156.   Moreover, licensed clinics, like Path Medical, must also "appoint a medical director or clinic director" who is responsible for, among other things: (a) "[r]eview[ing] any patient referral contracts or agreements executed by the clinic"; (b) "conduct[ing] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful"; and (c) "[u]pon discovery of an unlawful charge . . . tak[ing] immediate corrective action."  Fla. Stat. § 400.9935(1)(c) and (g).  In applying for licensure, each clinic must also identify the name and license number of the medical or clinic director.  Fla. Stat. § 400.991(3).  A clinic's failure to employ a qualified medical director or clinic director constitutes a ground for emergency suspension of the clinic's license.  Fla. Stat. § 400.9915(1).

157.   To effectuate the purpose of the HCCA, "[a] sample [of billings] must be reviewed by the medical director or clinic director at least once every 30 days

and a record maintained by the health care clinic for at least three years identifying the records reviewed and when and what action was taken to correct fraudulent or unlawful billings." Fla. Admin. Code R. 59A-33.012(3)(m).  Florida law also requires "[d]ocumentation for the past two years or from the date of licensure, whichever is earlier, demonstrating in writing compliance, when, and what action was taken by the medical [director] to perform the functions, duties and clinic responsibilities under [Fla. Stat. § 400.9935(1)(a)-(i)]."  Fla. Admin. Code R. 59A-33.012(3)(s).  The penalties for violating these provisions of the HCCA are severe.  In fact, a Medical Director's failure to substantially comply with the health care clinic's responsibilities under these provisions, as well as Fla. Stat. § 400.9935(1)(a)-(i), "shall be grounds for the revocation or suspension of the license and assessment of a fine[.]"  Fla. Admin. Code R. 59A-33.008(1).

158.   In light of the importance of the above standards in protecting the public safety, health, and welfare, the HCCA further instructs "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable."  Fla. Stat. § 400.9935(3).

159.    The Medical Directors – Drs. Cheesman, Desai, Marino, Qian, Ramos, Thomas, Vazquez, and Wilensky – did not comply with their statutory duties under the HCCA.  Specifically, the Medical Directors failed to: (a) review patient referral contracts or agreements between Path Medical and 411-PAIN Referral Service that resulted in violations of the Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws; (b) systematically review billings at their respective Path Medical clinics to ensure they were not fraudulent or unlawful; and (c) implement corrective measures.

160.    Indeed, the Medical Directors implemented, oversaw, and provided treatment to their patients pursuant to the Predetermined Protocol, as well as signed bills and supporting documents for medically unnecessary services.  (*See, e.g*., Ex. 1, Path Examining Provider and Path Defendants Columns.)

161.    Moreover, if the Medical Directors had actually complied with their statutory duties, it should have been obvious based upon their own adherence to the Predetermined Protocol, as well as the pervasive patterns across more than 3,700 patients following the same Predetermined Protocol, the bills and supporting documentation of Path Medical did not reflect medically necessary treatment.  Thus, even if a systematic review was conducted, the review was not legitimate, and no corrective action was ever taken because Path Medical

continued to submit bills and documentation pursuant to the Predetermined Protocol described above to State Farm Mutual and State Farm Fire.

162. In sum, because the Medical Directors failed to comply with their statutory duties under the HCCA, all of the bills Path Medical submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire were unlawful, noncompensable, and unenforceable. *See* Fla. Stat. § 400.9935(3).

## VIII. PATH MEDICAL'S UNLAWFUL LICENSURE SCHEME

163. As described above, each Path Medical clinic location operates as an AHCA-licensed health care clinic. Pursuant to the HCCA, neither the patients nor third-party payors, like State Farm Mutual and State Farm Fire, are required to pay for medical treatment rendered by a clinic that is not operating in compliance with the licensure requirements of the HCCA.

164. At all relevant times, Path Medical has knowingly operated in violation of the HCCA's licensure requirements by providing medically unnecessary services, employing Medical Directors who failed to comply with their statutory duties, and tendering charges for reimbursement for such services to State Farm Mutual and State Farm Fire. Thus, all of the charges Path Medical submitted to State Farm Mutual and State Farm Fire are unlawful, noncompensable, and unenforceable. *See* Fla. Stat. §§ 400.9935(1)(c) and (g)

and (3), 627.732(11), 627.736(5)(b)(1)(b)-(c), 627.736(5)(d), 627.736(17), 817.234(1)(a)(2), and Fla. Admin. Code R. 59A-33.008(1).

## IX.   DEFENDANTS' VIOLATIONS OF FDUTPA

165.   FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  The provisions of FDUTPA are to be liberally construed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts and practices in the conduct of any trade or commerce.  Fla. Stat. § 501.202(2).

166.   Violations of any law, statute, rule, or regulation that proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices constitute violations of FDUTPA.   Fla. Stat. § 501.203(3)(c).   "A deceptive act or practice is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017) (citation omitted).  "Fraudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA."  *Id*.  In addition, "[a] violation of the [HCCA] may serve as a statutory predicate for a *per*

*se* FDUTPA violation." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1307 (S.D. Fla. 2018). Similarly, "[t]he Insurance Fraud Statute may serve as a predicate offense under the FDUTPA." [11] *Id.*

167.  Defendants violated FDUTPA by engaging in the unfair and deceptive acts and practices described above, which violate the established public policies of the state of Florida as codified in the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws and which are immoral, unethical, oppressive, unscrupulous, misleading, and substantially injurious to consumers.  Accordingly, the services purportedly provided by Path Medical are not lawfully rendered and therefore are not compensable under Florida law.  *See* Fla. Stat. §§ 400.9935(1)(c) and (g) and (3), 456.054, 460.413(1)(d), (f), and (l); 627.732(11), 627.736(5)(b)(1)(b)-(c), 627.736(5)(d), 627.736(17), 817.234(1)(a)(2), 817.505(1)(a), (b), and (d), and Fla. Admin. Code R. 64B2-15.001(1), (2)(a), and (b).

---

[11] Pursuant to Fla. Stat. § 817.234 (the "Insurance Fraud Statute"), a person commits insurance fraud if that person, "with the intent to injure, defraud or deceive any insurer . . . [p]resents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim[.]" Fla. Stat. § 817.234(1)(a)(1).  Further, a person commits insurance fraud if that person, "with the intent to injure, defraud or deceive any insurer . . . [p]repares or makes any written or oral statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy . . . knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim[.]" Fla. Stat. § 817.234(1)(a)(2).

X.      **STATE FARM MUTUAL AND STATE FARM FIRE'S RELIANCE**

168.   Defendants are obligated legally and ethically to act honestly and with integrity.  Florida medical practice statutes govern the conduct of physicians and chiropractors who provide services in the state of Florida.  *See, e.g*., Fla. Stat. §§ 456.072, 458.331, and 460.413 (collectively, the "Disciplinary Statutes"). Pursuant to the Disciplinary Statutes, the following acts can result in disciplinary action against a physician and chiropractor:

> (a)   Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession;

> (b)   Making deceptive, untrue, or fraudulent representations in or related to the practice of a profession; and

> (c)   Exercising influence on the patient or client for the purpose of financial gain of the licensee or a third party.

*See* Fla. Stat. §§ 456.072(1)(a), (m), and (n), 458.331(1)(k) and (n), and 460.413(1)(k) and (n).

169.   Moreover, the Insurance Fraud Statute imposes criminal penalties on providers who "with the intent to injure, defraud or deceive any insurer prepares or makes any written statement that is intended to be presented to any insurer in connection with, or support of, any claim for payment pursuant to an

insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning the claim." Fla. Stat. § 817.234(1)(a)(2).

170.   Despite their duty to act honestly, with integrity, and in accord with Florida law, Defendants submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire bills and supporting documentation that are false, misleading, and fraudulent because they represent patients were legitimately examined, had sustained emergency medical conditions, and received medically necessary and lawfully rendered services when, in fact, they did not. Defendants submitted, and caused to be submitted, the bills and supporting documentation to State Farm Mutual and State Farm Fire to induce them to pay benefits to which Defendants knew they were not entitled.

171.   As a result of Defendants' false statements in the bills and supporting medical records they submitted to State Farm Mutual and State Farm Fire, State Farm Mutual and State Farm Fire paid for medically unnecessary and unlawful services.

172.   State Farm Mutual and State Farm Fire are under statutory and contractual duties to pay or deny claims for No-Fault Benefits within 30 days, and may be ordered to pay interest and attorneys' fees if they fail to pay the full amount owed within that period. *See* Fla. Stat. § 627.736(4)(b) and (d). Defendants' fraudulent scheme was successful because of precisely how State

Farm Mutual and State Farm Fire are required to adjust claims for No-Fault Benefits.

173.    Defendants developed and implemented their fraudulent scheme to take advantage of State Farm Mutual and State Farm Fire and the Florida No-Fault claims environment.  Defendants knew the efficient operation of a system of insurance requires prompt processing of individual claims.  Thus, Defendants designed a scheme that could go undetected in an individual claim.  Specifically, Defendants fraudulently concealed their conduct by repeatedly submitting misleading bills and supporting documentation that made it appear they were delivering medically necessary and lawful care when considered in the context of a single patient's claim, when they were not.

174.    In short, each bill and its supporting documentation, when viewed in isolation, do not reveal its fraudulent and unlawful nature.  It was only when the bills and supporting documentation across the patients at issue in this Amended Complaint are viewed together as a whole do the patterns emerge revealing the fraudulent and unlawful nature of all the bills and supporting documentation. Indeed, State Farm Mutual and State Farm Fire did not discover and could not have reasonably discovered their payments to Defendants were based upon fraud until they reviewed together as a whole the patterns reflected in the bills and supporting documentation for all of the patients at issue in this Amended

Complaint.   (*See, e.g.*, Exs. 1; 23-25; 32; 41-43.)   Only then did it become apparent Defendants were not providing medically necessary and lawful medical care designed to address their patients' unique needs, but instead provided services pursuant to the Predetermined Protocol.  The submission of fraudulent bills and supporting documentation were affirmative acts by Defendants that prevented State Farm Mutual and State Farm Fire from discovering the truth.

175.   State Farm Mutual and State Farm Fire's injuries were inherently unknowable because State Farm Mutual and State Farm Fire believed they were paying Defendants what they were owed.  State Farm Mutual and State Farm Fire relied on the accuracy of Defendants' bills and supporting documentation and their representations the services were medically necessary and lawfully rendered, when they were not.

176.   The bills and supporting documentation Defendants submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire in support of the fraudulent and unlawful charges at issue, combined with the material misrepresentations described above, were designed to and did cause State Farm Mutual and State Farm Fire to rely on them to their detriment.  As a result, State Farm Mutual and State Farm Fire have incurred damages of at least $17 million.

XI.     **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**COMMON LAW FRAUD**
**(Against Lewin, 411-PAIN Referral Service, Path Medical,**
**the Medical Directors, and the Chiropractor Defendants)**

177.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

178.   In the claims set forth in Exhibit 1, Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants acted in concert to intentionally and knowingly make, or cause to be made, false and fraudulent representations of material fact to State Farm Mutual and State Farm Fire.

179.   The false and fraudulent representations of material fact include that: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment, which nearly always consisted of five or more modalities on virtually all visits, because it was medically necessary, when it was not; (f) patients received DME (*e.g.*, lumbar braces) that was medically

necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited and referred to Path Medical through the 411 Hotline; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

180.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants knew the above-described misrepresentations made to State Farm Mutual and State Farm Fire relating to the purported examinations, EMC findings, diagnostic imaging, DME, Disclosure and Acknowledgment forms, and services of patients were false and fraudulent when they were made.

181.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants made the above-described

98

misrepresentations and engaged in such conduct to induce State Farm Mutual and State Farm Fire into relying on the misrepresentations.

182.   Representative examples of the fraudulent reports, documentation, and bills can be found in Exhibits 1; 23-25; 32; 41-43.

183.   As a result of its reliance on these misrepresentations, State Farm Mutual and State Farm Fire have incurred damages of at least $17 million.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for compensatory damages, costs, and other such relief as the Court deems equitable, just, and proper.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. § 1962(c)
## (Against Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants)

184.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

185.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants formed an association-in-fact "enterprise" (the "Path Medical Fraudulent Billing Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

99

186.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants are or have been employed by and associated with the Path Medical Fraudulent Billing Enterprise.

187.   The members of the Path Medical Fraudulent Billing Enterprise are and have been joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose.  Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants forged symbiotic relationships and needed and depended upon the participation of the others to accomplish their common purpose of defrauding State Farm Mutual and State Farm Fire through fraudulent claims for No-Fault Benefits, as described in paragraphs 1 through 176 above.

188.  Specifically: (a) Path Medical holds the AHCA licensee for all the Path Medical clinics and is the entity that knowingly submitted, and caused to be submitted, all the fraudulent bills and supporting documentation for services that were not medically necessary and not lawfully rendered; (b) since at least December 2018, or shortly thereafter, Path Medical has also owned and controlled the 411 Hotline, through which it has unlawfully solicited and referred individuals to PI Attorneys who agreed to refer their clients to Path Medical in return for the referrals from the 411 Hotline; (c) from at least January 2017

through December 2018, the 411-PAIN Referral Service falsely advertised itself as a legitimate medical and legal referral service to unlawfully solicit and refer individuals who called the 411 Hotline to Path Medical or to PI Attorneys who agreed to refer their clients to Path Medical in return for the referrals from the 411 Hotline; (d) from at least January 2017 through December 2018, Lewin owned and controlled the 411-PAIN Referral Service and Path Medical, designed, oversaw, and is responsible for the Predetermined Protocol to exploit the No-Fault Benefits of patients who treated at Path Medical, as well as enabled Path Medical to circumvent the HCCA's licensure requirements; (e) the Medical Directors knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and fail to comply with their statutory obligations to (i) review patient referral contracts or agreements between Path Medical and 411-PAIN Referral Service, (ii) conduct systematic reviews of Path Medical's bills to ensure they are not fraudulent or unlawful, and (iii) take immediate, corrective action upon discovery of an unlawful charge at Path Medical, which is necessary to enable Path Medical to circumvent the HCCA requirements and submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire; and (f) the Chiropractor Defendants knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and falsely document the need for these services,

101

which is necessary to enable Path Medical to submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire.

189.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of the Path Medical Fraudulent Billing Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit, or cause to be submitted, to State Farm Mutual and State Farm Fire many hundreds of fraudulent claims, consisting of bills and supporting documentation that were fraudulent because they falsely represented: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (*e.g*., lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and

x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

190.   The bills and corresponding mailings that comprise the pattern of racketeering activity identified through the date of this Amended Complaint are described, in part, in Exhibits 1; 23-25; 32; 41-43.

191.   State Farm Mutual and State Farm Fire have been injured in their business and property by reason of the above-described conduct in that they have paid at least $17 million based upon the fraudulent and unlawful charges.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for

compensatory damages, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Against Lewin, 411-PAIN Referral Service, Path Medical,**
**the Medical Directors, and the Chiropractor Defendants)**

192.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

193.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Path Medical Fraudulent Billing Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit, or cause to be submitted, to State Farm Mutual and State Farm Fire claims, consisting of bills and supporting documentation that were fraudulent because they falsely represented: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have

sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (e.g., lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through the 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

194.   The bills and corresponding mailings that comprise the pattern of racketeering activity identified through the date of this Amended Complaint are described, in part, in Exhibits 1; 23-25; 32; 41-43.

195.    Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants agreed to and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission to State Farm Mutual and State Farm Fire of bills and supporting documentation for examinations, EMC findings, diagnostic imaging, DME, Disclosure and Acknowledgment forms, and other services, which were not medically necessary and were not lawfully rendered.

196.    State Farm Mutual and State Farm Fire have been injured in their business and property by reason of the above-described conduct in that they have paid at least $17 million based upon the charges that are fraudulent and unlawful.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for compensatory damages, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
## VIOLATION 18 U.S.C. § 1962(c)
## (Against Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants)

197.    State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraph 1 through 176 above.

198.   Path Medical is a limited liability company and an "enterprise" (the "Path Medical Enterprise"), as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

199.   Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants have been employed by and/or associated with the Path Medical Enterprise. Specifically: (a) from at least January 2017 through December 2018, the 411-PAIN Referral Service falsely advertised itself as a legitimate medical and legal referral service to unlawfully solicit and refer individuals who called the 411 Hotline to Path Medical or to PI Attorneys who agreed to refer their clients to Path Medical in return for the referrals from the 411 Hotline; (b) from at least January 2017 through December 2018, Lewin owned and controlled the 411-PAIN Referral Service and Path Medical, and designed, oversaw, and is responsible for the Predetermined Protocol to exploit the No-Fault Benefits of patients who treated at Path Medical, as well as enabled Path Medical to circumvent the HCCA's licensure requirements; (c) the Medical Directors knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and fail to comply with their statutory obligations to (i) review patient referral contracts or agreements between Path Medical and the 411-PAIN Referral Service, (ii) conduct systematic reviews of Path Medical's bills to ensure they are not

fraudulent or unlawful, and (iii) take immediate, corrective action upon discovery of an unlawful charge at Path Medical, which is necessary to enable Path Medical to circumvent the HCCA requirements and submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire; and (d) the Chiropractor Defendants knowingly direct, oversee, and implement the medically unnecessary and unlawfully rendered services, and falsely document the need for these services, which is necessary to enable Path Medical to submit the fraudulent bills and supporting documentation to State Farm Mutual and State Farm Fire.

200.   Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of the Path Medical Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit, or cause to be submitted, to State Farm Mutual and State Farm Fire many hundreds of fraudulent claims, consisting of bills and supporting documentation that were fraudulent because they falsely represented: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries,

108

when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (*e.g.*, lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

201.   The bills and corresponding mailings that comprise the pattern of racketeering activity identified through the date of this Amended Complaint are described, in part, in Exhibits 1; 23-25; 32; 41-43.

202.   State Farm Mutual and State Farm Fire have been injured in their business and property by reason of the above-described conduct in that they have paid at least $17 million based upon the fraudulent and unlawful charges.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants jointly and severally   for compensatory damages, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**<u>(Against Lewin, 411-PAIN Referral Service,</u>**
**<u>the Medical Directors, and the Chiropractor Defendants)</u>**

203.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraph 1 through 176 above.

204. Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Path Medical Enterprise's affairs through a pattern of racketeering activity consisting

110

of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit, or cause to be submitted, to State Farm Mutual and State Farm Fire claims, consisting of bills and supporting documentation that were fraudulent because they falsely represented: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (e.g., lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path

111

Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

205.  The bills and corresponding mailings that comprise the pattern of racketeering activity identified through the date of this Amended Complaint are described, in part, in Exhibits 1; 23-25; 32; 41-43.

206.  Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors, and the Chiropractor Defendants agreed to and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission to State Farm Mutual and State Farm Fire of bills and supporting documentation for examinations, EMC findings, diagnostic imaging, DME, Disclosure and Acknowledgment forms, and other services, which were not medically necessary and were not lawfully rendered.

207.  State Farm Mutual and State Farm Fire have been injured in their business and property by reason of the above-described conduct in that they have paid at least $17 million based upon the charges that are fraudulent and unlawful.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, the 411-PAIN Referral Service, the Medical Directors,

and the Chiropractor Defendants jointly and severally for compensatory damages, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, and any other relief the Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**CIVIL CONSPIRACY**
**<u>(Against Lewin, 411-PAIN Referral Service, Path Medical,</u>**
**<u>the Medical Directors, and the Chiropractor Defendants)</u>**

208.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

209.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants each knowingly agreed and conspired to conduct and participate, directly or indirectly, in the fraudulent scheme described above in paragraphs 1 through 176 when they submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire bills and supporting documentation that were fraudulent and unlawful.

210.   Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants each agreed to act and did act in furtherance of the common and overall objective of the conspiracy to fraudulently obtain No-Fault Benefits by knowingly facilitating the submission of bills and supporting documentation to State Farm Mutual and State Farm Fire that made intentional false and fraudulent representations that: (a) the services

were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (*e.g.*, lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA,

Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

211.   Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants are jointly and severally liable to State Farm Mutual and State Farm Fire for the damages caused by the conspiracy.

212.   As a direct and proximate result of Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants' conspiracy, State Farm Mutual and State Farm Fire have incurred damages of at least $17 million.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for compensatory damages, costs, and other such relief as this Court deems equitable, just, and proper.

**SEVENTH CLAIM FOR RELIEF**
**AIDING AND ABETTING FRAUD**
**<u>(Against Lewin, 411-PAIN Referral Service, Path Medical,</u>**
**<u>the Medical Directors, and the Chiropractor Defendants)</u>**

213.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

115

214.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants each knowingly aided and abetted the fraudulent scheme described above in paragraphs 1 through 176 that was perpetrated against State Farm Mutual and State Farm Fire.

215.   The acts of Defendants Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants in substantially advancing the fraudulent scheme include knowingly facilitating the submission of bills and supporting documentation to State Farm Mutual and State Farm Fire that made intentional false and fraudulent representations that: (a) the services were performed, medically necessary, and lawful as required by the PIP Law, when they were not; (b) patients were legitimately examined to determine the true nature and extent of their injuries, when they were not; (c) patients were legitimately diagnosed with the same or similar injuries, when they were not; (d) patients were legitimately found to have sustained an EMC as a result of their auto accident, when they were not; (e) patients received a predetermined course of treatment consisting of five or more modalities on virtually all visits because it was medically necessary, when it was not; (f) patients received DME (*e.g.*, lumbar braces) that was medically necessary, when it was not; (g) patients required medically necessary MRIs and x-rays, when in fact the MRIs and x-rays were not medically necessary; (h) patients were legitimately found to suffer from

permanent impairments at their final examinations, when they were not; (i) the Disclosure and Acknowledgement forms submitted to State Farm Mutual and State Farm Fire accurately represented patients were not solicited to receive services at Path Medical, when patients were unlawfully solicited through 411-PAIN Referral Service to Path Medical; and (j) the services performed at Path Medical were lawfully rendered when, in fact, these services were not lawfully rendered and therefore were not owed pursuant to the PIP Law because such services were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws.

216.   The conduct of Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants in substantially advancing the fraudulent scheme was material and necessary to the success of the Defendants' fraudulent scheme.

217.   Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants aided and abetted the fraudulent scheme in a calculated effort to induce State Farm Mutual and State Farm Fire into paying Defendants' fraudulent and unlawful charges.

218.   As a direct and proximate result of Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor

117

Defendants' conduct in substantially advancing the fraudulent scheme, State Farm Mutual and State Farm Fire have incurred damages of at least $17 million.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for compensatory damages, costs, and other such relief as this Court deems equitable, just, and proper.

**EIGHTH CLAIM FOR RELIEF**
**VIOLATIONS OF FDUTPA**
**(Against Lewin, 411-PAIN Referral Service, Path Medical,**
**the Medical Directors, and the Chiropractor Defendants)**

219.   State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

220.   In each claim set forth in Exhibit 1 submitted to State Farm Mutual and State Farm Fire, Defendants Lewin, the 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce.   Such acts and practices offended public policy and were unconscionable, immoral, unethical, oppressive, and unscrupulous.   These acts and practices included intentionally and knowingly making, or causing to be made, false and fraudulent statements of material fact to State Farm Mutual and State Farm Fire in fraudulent submissions for services that were not lawfully

rendered by Path Medical because they were rendered pursuant to intentional violations of the PIP Law, HCCA, Insurance Fraud Statute, Patient Brokering Act, Anti-Kickback Act, and Chiropractic Advertising Laws. *See* Fla. Stat. §§ 400.9935(1)(c) and (g) and (3), 456.054, 460.413(1)(d), (f), and (l); 627.732(11), 627.736(5)(b)(1)(b)-(c), 627.736(5)(d), 627.736(17), 817.234(1)(a)(2), 817.5051(1)(a), (b), and (d), and Fla. Admin. Code R. 64B2-15.001(1), (2)(a), and (b).

221. Accordingly, by virtue of the foregoing, State Farm Mutual and State Farm Fire are entitled to actual damages of at least $17 million, plus attorneys' fees and costs and any other relief this Court deems equitable, just, and proper.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Lewin, 411-PAIN Referral Service, Path Medical, the Medical Directors, and the Chiropractor Defendants jointly and severally for actual damages plus interest and costs and any other relief this Court deems equitable, just, and proper.

## NINTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT
## (Against Path Medical)

222. State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in paragraphs 1 through 176 above.

223. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

224.   There is an actual case and controversy between State Farm Mutual and State Farm Fire, on the one hand, and Path Medical, on the other hand, as to all claims and charges for patients who purportedly received services performed at Path Medical that have not been paid or were allegedly underpaid.  State Farm Mutual and State Farm Fire contend Path Medical is not entitled to be paid for any of these unpaid or allegedly underpaid claims and charges submitted to State Farm Mutual and State Farm Fire to date and through the trial of this case.

225.   Because Path Medical knowingly made false and fraudulent statements relating to a claim and charge and otherwise engaged in the above-described fraudulent and unlawful conduct with the intent to conceal and misrepresent material facts and circumstances regarding each claim and charge Path Medical submitted to State Farm Mutual and State Farm Fire it is not entitled to any reimbursement for any unpaid or allegedly underpaid claims and charges submitted to State Farm Mutual and State Farm Fire to date and through the trial of this case.  *See* Fla. Stat. §§ 400.9935(1)(c) and (g) and (3), 456.054, 460.413(1)(d), (f), and (l); 627.732(11), 627.736(5)(b)(1)(b)-(c), 627.736(5)(d), 627.736(17), 817.234(1)(a)(2), 817.505(1)(a), (b), and (d), and Fla. Admin. Code R. 64B2-15.001(1), (2)(a), and (b).

WHEREFORE, State Farm Mutual and State Farm Fire respectfully request a judgment declaring that Path Medical is not entitled to reimbursement

for any of the unpaid or allegedly underpaid charges for services purportedly performed at Path Medical submitted to State Farm Mutual and State Farm Fire to date and through the trial of this case, and for supplementary relief, attorneys' fees, interest, and costs as this Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), State Farm Mutual and State Farm Fire demand a trial by jury.

Dated: May 18, 2021                    Respectfully submitted,


By: */s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540
david.spector@hklaw.com
NICHOLAS PURVIS
Fla. Bar No. 054268
nicholas.purvis@hklaw.com
MATTHEW DETZEL
Fla. Bar No. 050604
matthew.detzel@hklaw.com
HOLLAND & KNIGHT LLP
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, Florida  33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399

– and –

ROSS O. SILVERMAN
ross.silverman@katten.com
(admitted *pro hac vice*)
ERIC T. GORTNER

eric.gortner@katten.com
(admitted *pro hac vice*)
JOHN W. REALE
john.reale@katten.com
(admitted *pro hac vice*)
JOHN T. LEPORE
john.lepore@katten.com
(admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN
LLP
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021 the foregoing document will be served on all counsel of record via CM/ECF.

*/s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540