UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and STATE FARM FIRE AND CASUALTY CO., <br><br> Plaintiffs, <br><br>   v. <br><br> ROBERT LEWIN, D.C., 1-800-411-PAIN REFERRAL SERVICE, LLC, PATH MEDICAL, LLC, DAVID CHEESMAN, D.O., CHINTAN DESAI, M.D., RALPH MARINO, M.D., TIE QIAN, M.D., ROGER RAMOS, M.D., DONALD THOMAS III, M.D., NELSON VAZQUEZ, M.D., MICHAEL WILENSKY, M.D., BRITTANY CHONG, D.C., RONALD GOLDEN, D.C., WILLIAM KURZBUCH, D.C., FRANK LASSITER, D.C., ADAM LEWIS, D.C., DHEERAJ MANOCHA, D.C., LISA NERBONNE, D.C., KIERON PARCHMENT, D.C., JOSEPH SEFICK, D.C., and SARAH VLEKO, D.C., <br><br> Defendants. | Case No. 8:20-cv-02428-VMC-TGW |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW**

Rule 19 requires dismissal of Plaintiffs' First Amended Complaint ("FAC") because Plaintiffs failed to join necessary parties. Plaintiffs recently produced documents showing that they denied claims by some patients at issue on the basis that their PIP funds were exhausted. Assuming *arguendo* Plaintiffs could prevail, those patients have a legal interest in and would be entitled to recover at least some of their PIP funds. But Plaintiffs want to take all the PIP funds for themselves, without relief for (or even notice to) those patients, exposing Path to substantial risk of multiple

1

obligations, in violation of due process.

Further, after this Court's dismissal of Plaintiffs' faulty Patient Self-Referral Act ("PSRA") claim attacking permissible state-regulated advertising and referrals, Plaintiffs now try to back-door the same allegations into the case as purported violations of the Florida Patient Brokering Act ("PBA"), Florida Anti-Kickback Statute ("AKS"), and what Plaintiffs refer to as "Chiropractic Advertising Laws" ("CAL"). But none of those statutes provides a private right of action, so they cannot form the basis of RICO, fraud, or other claims. Plaintiffs also fail to plead all the elements of violations of these laws, instead asserting that "to the extent" one can "infer" kickbacks or other facts exist that Plaintiffs do not actually plead, then Defendants violated these laws, which does not suffice.

Plaintiffs' FAC also attempts to repackage their dismissed PSRA claim related to advertising the phone number 1-800-411-PAIN as purported "solicitation." But the activities alleged, as a matter of law and plain language, are advertisements that do not constitute solicitation. A billboard, radio or TV ad telling the public to call 1-800-411-PAIN is not "soliciting" any more than a lawyer's or hospital's billboard or radio or TV ad is soliciting. Nor is fielding incoming calls solicitation, because solicitation requires directly contacting an injured person, which is not alleged here. Once again, Plaintiffs redefine a word to try to paint lawful activities as unlawful. Plaintiffs' attempt cannot stand and their claims alleging false representations of non-solicitation fail.

Plaintiffs cannot plead reliance, either, since they included allegations and exhibits demonstrating they knew of the same facts they now claim warranted non-

payment of the bills at issue here at the time Plaintiffs paid. Plaintiffs' allegations about advertising and referrals have been out in the public for years, disclosed to the Florida Bar and other regulatory agencies, and fully known to Plaintiffs. The FAC and exhibits demonstrate on their face that Plaintiffs have known for many years about the facts they now claim show fraud. This requires dismissal of all common law fraud claims.

Plaintiffs' claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") also must be dismissed as excluded by FDUTPA on its face for two reasons: (1) Path and its doctors are regulated by the Florida Department of Financial Services ("DFS") as a result of their licensure by the Agency for Health Care Administration ("AHCA"), so each is a regulated "person;" and (2) since 2013, under the amended Personal Injury Protection ("PIP") statute, the "activities" at issue are regulated by DFS and the Florida Office of Insurance Regulation ("OIR").

Finally, 1-800-411-PAIN Referral Service, LLC ("411-Pain") must be dismissed from Plaintiffs' new Count Four because Plaintiffs have not pled sufficient facts to state a claim that 411-Pain participated in the operation or management of Path—a required element now that Plaintiffs assert that Path is the RICO enterprise.

## ARGUMENT

### I.   Standard of Review

A court must dismiss an action under Rule 12(b)(7) for "failure to join a party under Rule 19" or must order the required party to be joined. On such a motion, the Court may consider evidence outside of the pleadings. *Wach v. Byrne, Goldenberg & Hamilton, PLLC*, 910 F. Supp.2d 162, 165 (D.D.C. 2012).

Additionally, a court must dismiss an action, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is not required to accept as true a legal conclusion couched as a factual allegation, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Id.*; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010). All of Plaintiffs' claims sound in fraud, so Plaintiffs also must satisfy Rule 9(b)'s heightened pleading standard. That means Plaintiffs must plead all claims with particularity: the "who, what, when, where and how" of the alleged fraud. *AstroTel, Inc. v. Verizon Fla.*, No. 8:11-cv-2224, 2012 WL 1581596, at *6 (M.D. Fla. May 4, 2012) (Covington, J.).

## II.   **Plaintiffs' Failure to Join Necessary Parties Requires Dismissal.**

Plaintiffs seek recovery of all PIP funds paid to Path. But Plaintiffs have not joined parties who would be entitled to some or all of those funds (assuming *arguendo*

---

[1] Based on Exhibit 1 to the FAC, it appears Plaintiffs are not asserting any causes of action based on claims prior to January 1, 2017. Plaintiffs' "at least" qualifiers when describing the dates of their claims (e.g., "From at least January 2017 . . . ." (FAC ¶ 2, *et al.*)) are too threadbare to allow Plaintiffs to plead any cause of action earlier than January 1, 2017. There is a four-year statute of limitations applicable to each of Plaintiffs' claims, which bars any claims before October 16, 2016, including Plaintiffs' purported "solicitation" and referral claims going back as far as 2009 (FAC Exs. 11,12,15,17; *see* Section IV, *infra*). *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 145 (1987) (RICO); Fla. Stat. § 95.11(3)(f) (FDUTPA); Fla. Stat. §§ 95.11(3)(j), 95.031(2)(a) (fraud, aiding and abetting fraud); Fla. Stat. § 95.11(3)(p) (conspiracy); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1120 (S.D. Fla. 2019) (declaratory judgment).

Plaintiffs prevail) and therefore are required to be joined under Federal Rule of Civil Procedure 19. Without those parties, this Court cannot accord complete relief in this action. Also, allowing the action to proceed without the absent parties would subject Path to a substantial risk of incurring multiple or inconsistent obligations, which would violate due process, and would impair the absent parties' legal rights and interests.

Florida's PIP statute provides insureds who are injured in a motor vehicle accident with a statutory right to either $2,500 or $10,000[2] to cover up to 80% of medical costs and 60% of lost wages ("PIP Funds"). Fla. Stat. § 627.736(1)(3)-(4). Plaintiffs, as the insureds' motor vehicle insurers, must pay these statutory benefits first, Fla. Stat. § 627.736(4). Once the PIP Funds are exhausted, the insureds then must pay any additional medical costs and suffer any lost wages out of pocket. That means Plaintiffs must cover no less than $2,500 or $10,000 of the insureds' medical costs or lost wages. Once that statutory amount is exhausted, Plaintiffs deny any additional claims, and their insureds must incur the medical costs and lost wages themselves.

By way of example, patient JCG (FAC Ex. 1, line 28, Claim No. 59-0653-3V5) is entitled to $10,000 of PIP Funds. His PIP Funds were exhausted: $7,458 of his PIP Funds were paid to Path, Stewart Decl. Ex. A, and the remaining $2,542 to other providers, *Id.* Ex. B. JCG incurred additional medical costs, including at least $2,090 to non-Path providers, which he submitted to Plaintiffs. *Id.* Ex. C. Plaintiffs denied JCG's claims for $2,090 because his PIP Funds were exhausted. *Id.*

---

[2] Insureds who did not suffer an emergency medical condition ("EMC") are only entitled to $2,500.

Here, Plaintiffs demand to be awarded all of the PIP Funds—even when patients, like JCG, incurred out-of-pocket medical costs from medical providers other than Path and/or suffered lost wages because their PIP Funds were exhausted. Assuming *arguendo* that Plaintiffs can prove Defendants wrongfully depleted the patients' PIP Funds, **all** of the PIP Funds will be awarded to Plaintiffs. But the patients who exhausted their PIP Funds (the "Exhausted Patients") have a legal interest in and would be entitled to recovery of at least a portion (and in some cases all) of their PIP Funds. Take insured JCG above, for example. There is $7,458 at issue in this lawsuit. Path maintains it is entitled to all of it. Plaintiffs maintain they are entitled to all of it. But in the event Plaintiffs prevail, we know that JCG is entitled to at least a portion of the funds at issue–at minimum, the $2,090 that he incurred because Plaintiffs denied his claims based only on the fact that his PIP Funds had been exhausted.[3]

In short, as to Exhausted Patients, Plaintiffs are seeking funds that do not belong to them. Plaintiffs also seek to limit the patients' PIP Funds to $2,500 through their claim that the EMC findings for the patients were fraudulent. FAC ¶¶ 108-114. Worse, Plaintiffs seek to do all of this without joining the Exhausted Patients as parties, or even notifying them at all. The Federal Rules prohibit them from doing so. The Exhausted Patients meet all three of Rule 19's independent bases for required joinder.[4]

---

[3] If JCG incurred other costs that were denied or did not submit claims for costs because his PIP Funds were exhausted, JCG would be entitled to more, and potentially all, of the $7,458 at issue.

[4] To be a required party under Rule 19(a), the person must be "subject to service of process" and their joinder must not deprive the court of subject matter jurisdiction. The Exhausted Patients, who received services in Florida, are subject to service of process. Their joinder also will not deprive the Court of subject matter jurisdiction because Plaintiffs' claims raise federal questions.

**Rule 19(a)(1)(A).** Under Rule 19(a)(1)(A), a person is a required party if "in that person's absence, the court cannot accord complete relief among existing parties." Here, if Plaintiffs prevail, the ownership of Exhausted Patients' PIP Funds will remain uncertain. The Exhausted Patients who incurred costs or lost wages (or both), like JCG, have a claim to some or all of their PIP Funds if Plaintiffs prevail. Without the Exhausted Patients, like JCG, this Court cannot "accord complete relief among the existing parties" because ownership of the property at issue "will remain uncertain." *EEE Minerals, LLC v. North Dakota*, 318 F.R.D. 118, 125 (D.N.D. Oct. 3, 2016).[5]

The fact that, unlike health insurance, the PIP Funds are a finite statutorily owed amount makes this case—in so far as it relates to the Exhausted Patients— analogous to common fund cases, where courts have consistently held that joinder of parties who have an interest in the funds is mandatory and if not done, is fatal to the action. *E.g. Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305-06 (4th Cir. 1992) ("[A]ll [] claimants must be joined if feasible" in "suits arising out of disputes between multiple claimants to a common fund."). Here, Plaintiffs claim they have a right to the entirety of the PIP Funds. But Plaintiffs' theory of liability—the allegedly unlawful exhaustion of the PIP Funds through medically unnecessary treatment—necessarily means the Exhausted Patients, like JCG, who had non-Path-related medical or lost wage claims denied (or did not submit such claims for payment

---

[5] There may be other required parties because they incurred the costs as a result of Plaintiffs' denial for exhaustion of PIP Funds. But it is Plaintiffs', not Defendants', burden to identify and join required parties, and if they do not, to plead "the name, if known, of any person who is required to be joined if feasible" and "the reasons for not joining that person." Rule 19(c).

because the funds already were exhausted) would also be entitled to some or all of the PIP Funds to compensate them for costs to which they were statutorily entitled absent the allegedly wrongful exhaustion. Moreover, if Plaintiffs prevail, the Exhausted Patients could sue Path based on the same allegations and seek to collect all or part of the same PIP Funds awarded to Plaintiffs in this action. In turn, Path would have to sue Plaintiffs to seek indemnification from them for the full judgment as to the Exhausted Patients' PIP Funds. In other words, Plaintiffs and Path would be back in court litigating over these same funds again. Rule 19 is intended to "avoid[] repeated lawsuits on the same essential subject matter." Fed. R. Civ. P. 19, advisory committee note of 1966. The Exhausted Patients are required parties under Rule 19(a)(1)(A), and without them, the Court "would be obliged to grant partial or 'hollow' rather than complete relief*." Id.*

**Rule 19(a)(1)(B).** Even if complete relief could be accorded without joining the Exhausted Patients (it cannot), the Exhausted Patients are still required parties under Rule 19(a)(1)(B), which applies to those persons who claimed "an interest relating to the subject matter of the action." As detailed above, the Exhausted Patients have a legal interest in the PIP Funds at issue—*i.e.* the subject matter of this action. And they made a claim related to that interest by submitting claims for their PIP Funds to Plaintiffs. Indeed, the Exhausted Patients, like JCG, had their claims denied by Plaintiffs on the basis that their PIP Funds were exhausted. Therefore, the Exhausted Patients are required parties under both of Rule 19(a)(1)(B)'s bases because their absence would "leave an existing party subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations" and would "impair or impede" the Exhausted Patients' "ability to protect the[ir] interest." Fed. R. Civ. 19(a)(1)(B)(i)-(ii).

*First*, failure to join the Exhausted Parties would subject Path to a risk of "double, multiple, or otherwise inconsistent" obligations under Subsection (B)(ii). Path faces the very same claims from the Exhausted Patients, like JCG, based on the very same (false) allegations that Path fraudulently took part of the Exhausted Patients' PIP Funds. Those actions would seek, at least in part, the same PIP Funds that, if Plaintiffs prevail, Path would have already paid to Plaintiffs in this action—*i.e.,* double damages. This is exactly what Rule 19 prohibits. It violates due process to compel a property owner to relinquish property "without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment." *Western Union Tel. Co. v. Pennsylvania*, 368 U.S. 71, 75 (1961). Here, Plaintiffs also seek treble damages, which means Path is faced with the risk of multiple (not just double) damages assuming Plaintiffs could prevail. *See, e.g.*, *Illinois Brick v. Illinois,* 431 U.S. 720, 737 ("A treble-damages action brought by one of the[] potential plaintiffs" "implicates . . . the interest of the defendant in avoiding multiple liability.").

Moreover, to the extent Exhausted Patients bring lawsuits, Path also could be subjected to inconsistent obligations: assuming *arguendo* Path is ordered in this action to pay the PIP Funds to Plaintiffs and in another action is ordered to pay the same PIP Funds to an Exhausted Patient. The only way Path could comply with both orders would be to pay double damages, which violates Path's due process rights.

*Second*, failure to join the Exhausted Patients would substantially impair their

legal interests and rights. Where, as here, there are conflicting claims to a common set of funds, it is a "textbook example of a case where one party may be severely prejudiced by a decision in his absence." *Philippines v. Pimentel*, 553 U.S. 851, 870 (2008). In short, Plaintiffs are trying to usurp the Exhausted Patients' PIP Funds, and if Plaintiffs succeed, it would result in a windfall to Plaintiffs at the expense of the Exhausted Patients.  Further, as noted above, Plaintiffs are not only arguing that they are entitled to all of the PIP Funds, they are also arguing that any Exhausted Patient entitled to the $10,000 statutory amount should now and forever be reduced to the $2,500 statutory amount without any notice to or process at all for the affected patients.

Therefore, Plaintiffs' FAC must be dismissed for failure to join required parties.

## III.  Plaintiffs' Claims Predicated on PBA, AKS, and CAL Fail

In the FAC, Plaintiffs attempt to base their claims on alleged violations of three new statutes not mentioned in their Complaint: the PBA, AKS, and CAL.[6]  But, these statutes have no private right of action, and they cannot be used as a basis for Plaintiffs' RICO, declaratory judgment, or common law fraud or conspiracy claims (Counts I-VII and IX). Moreover, Plaintiffs fail to sufficiently plead violations of the statutes. All claims to the extent premised on the PBA, AKS, or CAL must be dismissed.

### A.  The PBA, AKS, and CAL Cannot Serve as the Basis of RICO, Declaratory Judgment, and Common Law Claims.

There is no private right of action under the PBA, AKS, or CAL, so Plaintiffs

---

[6] Plaintiffs identified these as Fla. Stat. § 817.505 (PBA); §456.054 (AKS); and § 460.413(1)(d), (f), and (l) and Fla. Admin. Code R. 64B2-15.001 (CAL).

cannot bring causes of action based on alleged violations of these statutes.[7]  In an attempt to skirt this restriction, Plaintiffs have tried to use alleged violations of these statutes as predicate acts for other causes of action. This, too, is impermissible.

First, violations of statutes without a private right of action cannot form the basis of a RICO action. *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226–27 (11th Cir. 2002) (affirming dismissal of RICO claim because plaintiffs cannot "'packag[e] their [non-private-right-of-action statutory] claim as a RICO claim"). In *McCulloch*, the plaintiffs alleged a "scheme to defraud" that allegedly constituted mail and wire fraud for nondisclosure of defendants' alleged violations of statutes that had no private right of action, just as Plaintiffs are attempting to do here. 298 F.3d at 1226-27. The Eleventh Circuit affirmed dismissal with prejudice because "Plaintiffs' mail and wire fraud claims are nothing more than purported [statutory] violations pled in RICO terms." *Id.*, citing *Ayres v. Gen. Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) (nondisclosure of a violation of a statute with no private right of action is not mail or wire fraud)).

Nor may a plaintiff base a declaratory judgment claim on a violation of a statue with no private right of action. *Millenium*, 2012 WL 12905083, at *3-4 ("Many courts, including the Eleventh Circuit, have held that a claim for declaratory relief must be dismissed where there is no private right of action available for an alleged statutory violation," including PBA and AKS.); *Quilty v. Envision Healthcare Corp.,* No. 8:18-cv-

---

[7] There is no private right of action under the PBA or AKS. *Millenium Labs., Inc. v. Universal Oral Fluid Labs.*, LLC, No. 8:11-CV-1757-MSS-TBM, 2012 WL 12905083, at *4 (M.D. Fla. Apr. 25, 2012). Also, the CAL contains no private right of action and evidences no legislative intent to create one. 2012 WL 12905083, at *4.

341-T-33CPT, 2018 WL 2445824, *8 (M.D. Fla. May 31, 2018); *Rosenberg v. BCBS of Fla., Inc.*, No. 8:18-cv-2648-T-33SPF, 2019 WL 399571, *5 (M.D. Fla. Jan. 31, 2019).

Further, "[i]n Florida, common law claims cannot be based on violations of a statute where that statute itself does not create a private right of action." *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1270 (M.D. Fla. 2012) (dismissing common law claims, including civil conspiracy, based on a Florida statute that did not contain a private right of action); *Espana Informatica, S.A. v. Top Cargo, Inc.*, No. 08-cv-20276, 2008 WL 11331684, at *2 (S.D. Fla. Aug. 5, 2008) (same).

Plaintiffs might argue that they are not trying to enforce these statutes and instead are using alleged violations of them to establish that Path committed mail fraud by misrepresenting to Plaintiffs that the services Path provided were lawfully rendered. Plaintiffs are wrong. In *McCulloch*, *Ayres*, and the other cases cited above, the plaintiffs likewise attempted to couch their claims as a "scheme to defraud" for defendants allegedly hiding their statutory violations from the plaintiffs, but the Eleventh Circuit and the other courts above rejected such attempts. *See, e.g. McCulloch*, 298 F.3d at 1226-27. Just as Plaintiffs will presumably argue here, the plaintiff in *Brown v. First Tennessee Bank National Association* claimed that he "did not allege a violation of a [regulation without a private right of action] as a predicate act" because "the allegations are that [the defendant] made false representations" in its charges for fees sent to plaintiffs, in particular, that the defendant "misrepresented these fees as 'lawful.'" 753 F. Supp. 2d 1249, 1259-60 (N.D. Ga. 2009). The court correctly rejected that argument, holding that the plaintiff's "suit is, at its core, an attempt to use the fraud-predicated civil-RICO

claim to enforce regulatory provisions" without private rights of action because the "very lie" at issue was "in fact, rooted in the [] regulations." *Id.* Just as in *Brown* and the other cases cited above, Plaintiffs' allegations of misrepresentations of charges as "lawful" are impermissibly "rooted" in whether those statutes were violated. *Id.*

"[O]nce all the fat is trimmed away, we are left with little more than allegations that the Defendants violated" the PBA, AKS, and CAL. *Bank of N.Y. Mellon*, 2013 WL 149707, at *5 (M.D. La. Jan. 14, 2013), *aff'd sub nom., 557 F. App'x 383 (5th Cir. 2014).* Plaintiffs "cannot circumvent" the fact that they cannot sue under those claims by "packaging" alleged violations as claims under other causes of action. *McCulloch*, 298 F.3d at 1226–27.[8] Accordingly, Plaintiffs' RICO (Counts II-V), declaratory judgment (Count IX), civil conspiracy (Count VI), and fraud (Counts I and VII) claims must be dismissed to the extent based on alleged violations of the PBA, AKS, or CAL.

### B.    Plaintiffs Have Not Sufficiently Pled PBA, AKS, or CAL Violations.

The absence of a private right of action and the authorities discussed above alone require dismissal of Plaintiffs' claims based on the PBA, AKS, or CAL. If the Court does not dismiss on that basis, however, it should dismiss such claims as inadequately pled under Rules 9(b) and 12. In the sections of Plaintiffs' FAC in which they allege violations of PBA, AKS, and CAL, Plaintiffs merely recite the statutory

---

[8] Plaintiffs might point to *State Farm v. Performance Orthopaedics & Neurosurgery* to argue that they can maintain alleged PBA and AKS violations as underlying bases for their fraud claim. 278 F. Supp. 3d 1307, 1323-24 (S.D. Fla. 2017). That decision is not controlling, nor did it discuss the Eleventh Circuit precedent that is controlling, namely *McCulloch* and *Ayres*. Instead, the court focused on whether the fraud claim was preempted, *id.* at 1323-24, n. 20, but Defendants are not arguing preemption here.

text, not factual allegations that support each element of a violation of those statutes. FAC ¶¶ 92-93, 97, 99-102. The "solicitation" Plaintiffs allege is that 411-Pain and Path had a contractual relationship (FAC ¶ 75), that 411-Pain and then Path registered with the Florida Bar as a referral service (FAC ¶ 47 n. 8) in accordance with and required by the Rules Regulating the Florida Bar, that personal injury attorneys and health care providers refer to each other (FAC ¶ 93, 102), and that 411-Pain advertisements did not include Robert Lewin's name (FAC ¶ 101-02), which was not required.

None of these allegations pleads facts supporting each element of violations of the PBA, AKS, or CAL. Registering as a referral service does not violate the PBA or AKS, as it is required by Florida Bar Rules. Nor would a contract between 411-Pain and Path violate the PBA or AKS; in fact, safe harbors applicable to these statutes require the existence of a contract. Contracting for services such as advertising and matching callers with providers in their geographic proximity, which is what is at issue here, is by no means prohibited conduct under the PBA or AKS.[9]

Plaintiffs merely assert that because 411-Pain spent money on advertising, "it is reasonable to infer" that Path paid a "commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind" (a conclusory quote of the PBA). FAC ¶ 75. Plaintiffs say "to the extent" that Defendants did so, they violated the PBA. FAC

---

[9] Nor have Plaintiffs pled the elements of a CAL violation. 411-Pain was not a health care provider, it was an advertising company that connected callers to providers throughout the state, including but not limited to Path providers, as allowed by the CAL. Fla. Admin. Code. R. 64B2-15.001(2)(b) (referral services "that operate on a national or statewide basis, and that have at least 50 participating members, do not have to specifically name each individual chiropractor participating in the service on their advertisements"); FAC Ex. 1 (listing more than 50 providers). The alleged failure to name Lewin in ads is not a CAL violation, nor can Plaintiffs plead it was misleading or fraudulent.

¶¶ 95-96. It is not reasonable to infer that spending money on advertising means a company is engaged in unlawful kickbacks, bribes, or other unlawful conduct. Allegations merely reciting statutory text or starting with "it is reasonable to infer that" a party engaged in unlawful conduct or "to the extent that" a party engaged in unlawful conduct do not allege facts satisfying *Twombly* or *Iqbal*, much less Rule 9(b).

## IV.   Plaintiffs Cannot Plead "Solicitation."

In their initial Complaint, Plaintiffs alleged that individuals who called 1-800-411-PAIN were referred to Path in violation of the PSRA, attempting to recast legitimate advertising as nefarious and unlawful. This Court properly dismissed Plaintiffs' baseless PSRA claim because individuals who called 1-800-411-PAIN were not "patients." (Order, Dkt. 73.) Plaintiffs have not re-pled their faulty PSRA claim, but they now attempt to shoehorn their allegations related to callers to 1-800-411-PAIN back into the case by claiming that people who saw the phone number advertised on a billboard, bus, radio, or television commercial and called the number were unlawfully "solicited." But it is clear from the face of the complaint that callers who contacted 1-800-411-PAIN were not "solicited," because there is no allegation that any Defendant contacted injured persons. Plaintiffs point to no statute or definition that turns advertising into solicitation—much less "unlawful" solicitation—because they cannot. Therefore, Plaintiffs' claims that insureds' statements allegedly falsely stating that they were not "solicited" (FAC ¶ 105) must be dismissed.

First, the Florida Bar Rules are clear that "solicitation" means "direct contact

15

with prospective clients." Florida Bar Rules, Rule 4-7.18.[10] Advertisements and referral services are expressly permitted. *See generally* Rule 4-7. Plaintiffs themselves plead that 411-Pain was registered with, that its conduct was regulated by the Florida Bar, and that it filed reports as required by Florida Bar Rule 4-7.22. FAC n. 8. Second, Florida Statute § 817.234, which Plaintiffs accuse Defendants of violating (FAC ¶ 9, 164, *et al.*), provides that "advertising directed to the public" is not solicitation and is expressly permitted. Fla. Stat. § 817.234(8)(b). Third, "solicitation" by health care providers requires a "communication which directly or implicitly requests an immediate oral response from the recipient." Fla. Stat. § 458.331(1)(l).

Here, no Defendant is alleged to have contacted individuals, to request an immediate oral response or otherwise. Rather, individuals looking for assistance had to call the publicly advertised number 1-800-411-PAIN to have any contact with 411-Pain (or starting in 2019, Path), just as individuals have to call phone numbers advertised by attorneys to have contact with attorneys; that is not solicitation. Plaintiffs' attempt to redefine the word "solicitation" to make it synonymous with advertising is unavailing. Therefore, the individuals' representations on the Disclosure and Acknowledgment Forms stating they were not solicited are not false or fraudulent as a matter of law. FAC ¶¶ 2(a)(1), 2(b), 4-6, 18-21. If this Court were to hold that "solicitation" does not require direct contact and includes advertising to the public, it would raise serious constitutional concerns with outlawing protected, permissible

---

[10] https://www.media.floridabar.org/uploads/2021/04/2021_10-APR-RRTFB-4-15-2021-1.pdf

speech. *See, e.g., Harrell v. Florida Bar*, 915 F. Supp. 2d 1285 (M.D. Fla. 2011).

Because there are no factual allegations supporting claims of solicitation, all claims should be dismissed to the extent they rely on Plaintiffs' assertions that Disclosure and Acknowledgment Forms stating patients were not solicited were false or fraudulent. Count I ¶ 179(i), Count II ¶¶ 188(b)-(c), 189(i), Count III ¶ 193(i), Count IV ¶¶ 199(a), 200(i), Count V ¶ 204(i), Count VI ¶ 210(i), Count VII ¶¶ 215(i), *et al.*

V.   <u>**Because Plaintiffs' FAC and Exhibits Establish that Plaintiffs Knew Many Years Ago About What They Now Claim Are PBA and AKS Violations, Plaintiffs Have Not Pled and Cannot Plead Reliance, Requiring Dismissal of Plaintiffs' Common Law Fraud Claims.**</u>

In Claims I and VII, Plaintiffs allege that Defendants committed or aided and abetted common law fraud by submitting bills misrepresenting that services were lawfully rendered. In the FAC, Plaintiffs now add that those "services were not lawfully rendered" because they "were rendered pursuant to intentional violations of the . . . Patient Brokering Act [and] Anti-Kickback Act." FAC ¶¶ 179, 215. Plaintiffs claim that in paying the bills for those services, they relied on misrepresentations that the services were lawfully rendered, including that Defendants were not in violation of the PBA or AKS. FAC ¶ 182. But Plaintiffs' fraud claims require that they did not know about Defendants' alleged violations of law at the time Plaintiffs made payment. *See, e.g., Platinum Props. Inv'r Network, Inc. v. Sells*, 2019 WL 2247544, at *12 (S.D. Fla. Apr. 11, 2019) ("Florida law is replete with examples of courts refusing to recognize a fraud claim where the plaintiff is aware of the misrepresentation, [*i.e.*] first-party reliance is a pleading requirement of fraud."); *Grills v. Philip Morris USA, Inc.*, 645 F.

Supp. 2d 1107, 1126 (M.D. Fla. 2009) (dismissing under Rule 9(b) for plaintiff's failure to plead "a required element of his fraud claim, namely, that he relied" on alleged lies).

The face of Plaintiffs' FAC and attached exhibits make clear that Plaintiffs were aware of the very same facts now underlying their PBA and AKS allegations many years before Plaintiffs paid the claims at issue. Even accepting as true Plaintiffs' unsupported allegation that Defendants committed fraud by falsely representing that the services were lawfully rendered, Plaintiffs cannot plead they relied on the alleged misrepresentations because at the time Plaintiffs paid, they were aware of the same facts they now allege demonstrate the claims were not payable.

In the FAC, Plaintiffs allege Defendants violated the PBA and AKS by offering and paying a kickback or bribe, directly or indirectly, in cash or in kind, to personal injury attorneys, namely referrals of callers to 1-800-411-PAIN, and in return the attorneys referred their clients to Path (and others) for treatment. FAC ¶ 19, 179, 215. Setting aside the fact that there is nothing unlawful about 411-Pain matching callers with attorneys or health care providers, the only facts Plaintiffs offer in support of their otherwise bare-boned assertions that Defendants violated these Acts are references to exhibits attached to the FAC. *E.g., id.* at ¶ 83 (citing Ex. 15 to demonstrate a "reciprocal relationship" between attorneys and clinics), ¶ 76 (citing Exs. 11 and 12 to demonstrate "territorial exclusivity for patient referrals"), ¶ 84 n. 9 (citing Ex. 17 to claim that 411-Pain charged "at least some PI Attorneys in return for referrals").

The FAC reveals, however, that prior to 2017, when Plaintiffs began paying the bills at issue, Plaintiffs already possessed these documents—and therefore at all times

18

material knew about the facts that now purportedly support their assertions of fraud. Exhibit 15, for example, is a *Miami New Times* article published in December 2010, which Plaintiffs accessed, as shown in the top-left hand corner, on January 12, 2015 (nearly two years before Plaintiffs paid the first claims at issue). Likewise, Exhibit 11 is an advertising agreement between 411-Pain and a participating clinic dated April 1, 2012 with a fax date of April 3, 2012. The same is true for Exhibit 12, excerpted portions of a May 4, 2009 deposition transcript that State Farm received as demonstrated by the reference to State Farm in the footer, and for Exhibit 17, which are documents dated July 13 and November 19, 2010, about even earlier events.

Plaintiffs omitted these dates from the body of the FAC. But the exhibits are "part of the complaint for all purposes." Fed. R. Civ. P. 10(c). Even construing the allegations in the light most favorable to Plaintiffs, there is not a plausible inference from these documents that Plaintiffs were not aware of this information prior to January 1, 2017. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). If Plaintiffs argue that timing and their reliance are not ascertainable from their pleading, then they have not sufficiently pled their fraud claims under Rule 9(b). Fed. R. Civ. P. 9(f) ("An allegation of time or place is material when testing the sufficiency of a pleading."); *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London*, 2012 WL 952752, at *5 (D. V.I. Mar. 21, 2012) ("In sum, Plaintiffs' [] Amended Complaint does not plead with particularity how, when, where or why they made decisions or took actions to their detriment, in reliance upon

Defendant's alleged misrepresentations."); *Williams v. State Farm Ins. Co.*, 781 F. Supp. 2d 519 (E.D. Mich. 2011) (plaintiff failed to plead reliance where he did not "specify" "why he relied upon" the representation or "why his reliance was reasonable").

Plaintiffs might assert that their other fraud arguments, including their "Pre-determined Protocol" allegations, should permit their common law fraud claims to stand. That is wrong. Plaintiffs claim they were misled by a statement that the services were "lawfully rendered," and any one unlawful act would independently render that statement false. Thus, each of their underlying premises of unlawfulness, including the PBA and AKS, serve as separate bases upon which Plaintiffs were (as they now claim) not "required to pay any claim or charges" for the billed services. (FAC ¶ 54.) But according to the face of their own pleading, Plaintiffs knew of alleged bases why Defendants' representations were purportedly false and that Plaintiffs therefore did not have to pay the claims, but they paid anyway. Accordingly, Plaintiffs cannot plead reliance, and their common law fraud claims (Counts I and VII) should be dismissed.[11]

## VI.   **Plaintiffs Cannot Maintain a Claim under FDUTPA.**

Plaintiffs' FDUTPA claim also must be dismissed. To bring a claim under FDUTPA, the claim must not fall into one of FDUTPA's statutory exceptions. Relevant here, FDUTPA specifies that it "does not apply to any person or activity regulated under laws administered" by the "Office of Insurance Regulation" ("OIR") or by "the former Department of Insurance which are now administered by the

---

[11] Plaintiffs' declaratory judgment action (Count IX) also should be dismissed for this reason to the extent it is premised on relief for claims that Plaintiffs previously paid.

Department of Financial Services" ("DFS"). Fla. Stat. §§ 501.212(4)(a), (d).

Courts have made clear that application of the statutory exception does not require both the person and the activity at issue to be regulated under laws administered by the administrative agencies; either one requires dismissal. *See e.g.*, *CMR Constr. & Roofing, LLC v. Am. Cap. Assurance Corp.*, 2021 WL 354167, at *3 (M.D. Fla. Feb. 2, 2021). Here, the statutory exception applies for both reasons: the person and the activity at issue are regulated under the laws administered by those agencies. Plaintiffs' FDUTPA claim therefore must be dismissed for two independent reasons.

First, Path, which submitted the invoices Plaintiffs claim are fraudulent, is a "person" regulated under laws administered by the DFS. As the FAC says, Path is licensed by AHCA under Florida's Health Care Clinic Act ("HCCA"), Fla. Sta. § 400.9905 *et seq.* (FAC ¶¶ 21, 20, 156.) Unlike physician-owned practices that are not required to be licensed by AHCA under the HCCA, Path is a non-physician owned corporate practice and is subject to significant additional regulatory oversight, including by Florida's DFS, as the HCCA requires that DFS regulate licensed health care clinics like Path. The HCCA makes clear that DFS regulates clinics licensed by AHCA through its investigations and enforcement of Florida Statute Section 626.989,[12] among others, and that Path is required to conspicuously display signs to inform all patients of the DFS's Division of Investigative and Forensic Services'

---

[12] Section 626.989 was initially administered by the Department of Insurance's Division of Insurance Fraud. *See* Fla. Stat. § 20.13(2)(g), (4), Fla. Stat. (2000) (statute creating the Department of Insurance, explaining that "[t]he Division of Insurance Fraud shall enforce the provisions of Section 626.989"). It is now administered by the Department of Financial Services. *See* Fla. Stat. § 20.121(2)(e) (2003).

investigative authority and awards for information about fraudulent insurance acts, among others. *See* Fla. Stat. § 400.9935(9). As a consequence of its HCCA licensure, Path is subject to "unannounced inspections" by the DFS, "as necessary to determine whether the clinic is in compliance with" Section 400.9935(9) and to "allow full and complete access to the premises" for the inspection. *Id.* Because Path is licensed under the HCCA and is regulated by the DFS, FDUPTA does not apply "regardless of the activity at issue," which requires dismissal. *See CMR*, 2021 WL 354167, at *3.

Second, the premise of Plaintiffs' FDUTPA claim—the submission of allegedly fraudulent invoices under the PIP statute—is activity subject to the regulatory authority of the DFS and OIR. Since 2013, Section 627.736(4)(i) of Florida's PIP statute requires that claims denied for potentially fraudulent insurance acts under Section 626.989 "***shall*** be reported to the [DFS'] Division of Investigative and Forensic Services" (formerly the Division of Insurance Fraud). Fla. Stat. § 627.736(4)(i) (emphasis added). Through the addition of Paragraph (4)(i) of the PIP statute in 2013,[13] the Florida legislature placed the activity at issue in Plaintiffs' claim within the regulatory authority of the DFS. Thus, here, like in this Court's decision in *Quilty v. Envision Healthcare Corp.*, the PIP statute (since 2013) contains provisions that "specifically address[] the [alleged] unfair or deceptive acts and practice" at issue. 2018 WL 2445824 at *6 (M.D. Fla. May 31, 2020). Plaintiffs' FDUTPA claim must be

---

[13] Effective July 1, 2016, the statute was further amended to change references to the "Division of Insurance Fraud" to the "Division of Investigative and Forensic Services."

dismissed for this reason as well, against all Defendants.

Plaintiffs might cite cases, including *Day v. Sarasota Doctors Hospital, Inc.*, which conclude the exception does not apply to fraudulent billing for PIP benefits.[14] However, *Day* and all such other decisions rely on *State Farm v. Physicians Injury Care Center*, an outdated ***pre***-PIP-statute-amendment decision and its progeny, none of which considered the arguments raised here.[15] Those decisions are outdated because they addressed a prior version of the PIP statute, which did not include Section 627.736(4)(i). That new provision is not addressed in any of the post-amendment decisions. The defendant in *Day* did not raise this argument, and that Section was not cited in any of the briefs in *Day*. ***Nor*** do any of those cases address the HCCA.

The Florida legislature amended the PIP statute in 2012 to add Section 627.736(4)(i) to strengthen the oversight and regulatory authority of the DFS and OIR to "eliminate[] fraud and abuse in the PIP system." *See* Staff An., H.B. 119, 2/27/2012. The decision to require an insurer to inform the DFS any time a claim is denied under the PIP statute for suspected fraud under Section 626.989 places the activity alleged here under DFS and OIR regulatory authority. *Physicians Injury* and its progeny are thus not controlling or persuasive; instead, this Court's decision in *Quilty*

---

[14] No. 8:19-cv-1522, 2020 WL 7390052 (M.D. Fla. May 26, 2020); *see also State Farm Mut. Auto Ins. Co. v. First Care Solution, Inc.*, 232 F. Supp. 3d 1257 (S.D. Fla. 2017); *State Farm Mut. Auto Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137 (S.D. Fla. 2018).

[15] *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 723 (11th Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011); *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014).

is instructive and requires dismissal of the FDUTPA claim, because Section 627.736(4)(i) requires the reporting of fraud under Section 626.989 to the DFS.

Even if this Court were to decide that those decisions interpreting outdated statutes are still controlling (they are not), Plaintiffs' FDUTPA claim must be dismissed because the claim is premised on a "person" exempted from the statute, as addressed above. *See* Fla. Stat. § 501.212(4)(d). None of the cases that Plaintiffs may cite addresses the HCCA and its provisions outlining that AHCA-licensed entities are subject to regulation by the DFS, including unannounced inspections. In addition to counsel in those cases not arguing these issues, the entities in those outdated cases such as the entity in *Physicians Injury* (Stewart Decl. Ex. D), were not licensed by AHCA (since physician-owned entities are not required to be licensed under the HCCA), unlike Path and its physician staff, which must maintain AHCA licensure, FAC ¶ 155. The FDUTPA claim must be dismissed for either of these two independent reasons.

**VII.   New Count Four Must Be Dismissed Against 411-Pain.**

In their FAC, Plaintiffs added a new claim under 18 U.S.C. § 1962(c), alleging for the first time that Path itself is a RICO enterprise. To plead this claim under Section 1962(c), Plaintiffs must plausibly allege that each defendant "participated in the operation or management of [Path] itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183-84 (1993). Plaintiffs have not alleged that 411-Pain participated in the operation or management of Path or made any allegations that could even be inferred to allege it. Nor could they. As the FAC alleges, 411-Pain was a vendor alleged to have unlawfully "solicited" purported "patients" to Path. 411-Pain is not alleged to have

participated in the management or operation of Path. Thus, Plaintiffs' Fourth Count against 411-Pain should be dismissed. *See id.*; *Strong & Fisher Ltd. v. Maxima Leather, Inc.*, 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993) (even "substantial persuasive power to induce management to take certain actions and [] the legal authority to take other actions" is not sufficient to establish participation in operations or management).

## CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiffs' FAC for failure to join required parties. If the Court does not dismiss the FAC in full for that reason, then pursuant to the other bases above, Defendants respectfully ask the Court to dismiss with prejudice: (1) the common law fraud claims (Count I and VII); (2) all claims to the extent premised on alleged violations of the PBA, AKS, or CAL (all Counts); (3) all claims premised on unlawful "solicitation" (all Counts); (4) the FDUTPA claim (Count VIII); and (5) new Section 1962(c) claim against 411-Pain (Count IV).

**Local Rule 3.01(g) Certification:** Defendants have conferred with Plaintiffs by telephone, and the parties do not agree on the resolution of this motion.

Dated:  June 18, 2021

/s/ Dale R. Sisco
Dale R. Sisco, Esq. (FBN 559679)
dsisco@sisco-law.com
SISCO-LAW
1110 N. Florida Avenue
Tampa, Florida 33602
Telephone:  (813) 224-0555

*Attorneys for the Medical Director and Chiropractor Defendants*

/s/ Michael P. Matthews
Michael P. Matthews (FBN 63988)
mmatthews@foley.com
Lisa M. Noller
Maureen M. Stewart
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, Florida 33602-5810
Telephone:  (813) 229-2300
*Attorneys for Defendants Lewin, 1-800-411-PAIN, and Path Medical*