UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT LEWIN, D.C., *et al.*,<br><br>Defendants. | Case No. 8:20-CV-02428-VMC-TGW |

**DEFENDANTS ROBERT LEWIN, D.C.'S, 1-800-411-PAIN REFERRAL SERVICE, LLC'S, AND PATH MEDICAL LLC'S MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' NON-PARTY SUBPOENAS**

Pursuant to Federal Rule of Civil Procedure 26(c) and the Court's inherent authority, Defendants Robert Lewin ("Lewin"), 1-800-411-PAIN Referral Service, LLC ("411-PAIN"), and Path Medical, LLC ("Path Medical") (collectively, "Path Defendants"), respectfully move for a protective order requiring Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's (collectively, "Plaintiffs" or "State Farm") to withdraw their irrelevant, overbroad subpoenas *duces tecum* to non-parties Path Medical Center Holdings, Inc. ("Path Holdings"), GreatBanc Trust Company ("GreatBanc"), and Keefe, McCullough & Co., LLP ("Keefe"). True and correct copies of the Subpoenas are attached as Exhibits 1 ("Path Holdings Subpoena"), 2 ("GreatBanc Subpoena"), and 3 ("Keefe Subpoena") (collectively, "Subpoenas").

On October 16, 2020, State Farm filed this action against former party Path Holdings, as well as current parties Lewin, 411-PAIN, Path Medical, David Cheesman, D.O., Chintan Desai, M.D., Ralph Marino, M.D., Tie Qian, M.D., Roger Ramos, M.D., Donald Thomas III, M.D., Nelson Vazquez, M.D., Michael Wilensky, M.D., Brittany Chong, D.C., Ronald Golden, D.C., William Kurzbuch, D.C., Frank Lassiter, D.C., Adam Lewis, D.C., Dheeraj Manocha, D.C., Lisa Nerbonne, D.C., Kieron Parchment, D.C., Joseph Sefick, D.C., and Sarah Vleko, D.C. (Dkt. # 1.)

On January 13, 2021, the Court entered its Case Management and Scheduling Order, ordering that any "Motions to Add Parties or to Amend Pleadings" must be filed by no later than March 31, 2021. (Dkt. # 42.)

On April 20, 2021, the Court entered an order granting Defendants' motion to dismiss in part, holding, among other things, that State Farm failed to adequately plead any claim against Path Holdings, Path Medical's parent company. (Dkt. # 73, pp. 16-17.) The only factual allegation State Farm asserted against Path Holdings was that it owned, controlled, and benefitted from the activities of its wholly-owned subsidiary Path Medical, which the Court held was insufficient to state any claim against Path Holdings. (*Id.*) The Court held that the dismissal was without prejudice as to Path Holdings, and if State Farm wanted to file an amended complaint seeking to replead against Path Holdings, it must do so by no later than May 4, 2021. (*Id.* at 40-41.)

On May 18, 2021, after State Farm sought and was granted a two-week extension, State Farm filed its First Amended Complaint ("FAC"). (Dkt. # 77.)

Although the Court had permitted State Farm another opportunity to plead against Path Holdings, State Farm did *not* name Path Holdings as a Defendant in the FAC.

State Farm asserts in the FAC that it is entitled to recover money paid by State Farm to Path Medical for no-fault insurance claims submitted by Path Medical. (*See generally id.*) State Farm claims that, from January 2017 to the present, the Defendants committed insurance fraud by submitting no-fault claims for services that lacked medical necessity, and that the Defendants violated patient brokering, anti-kickback, and chiropractic advertising laws through alleged solicitations and referrals through 411-PAIN's call service. (*See id.* at ¶ 21.) Defendants have moved to dismiss the FAC in part (Dkt. # 80), to which State Farm's response is due on July 19.

In the meantime, State Farm has served the Subpoenas on non-parties Path Holdings, GreatBanc, and Keefe.[1] Despite the fact that State Farm's existing claims do not include any cause of action against Path Holdings or any assertion that Path Holdings engaged in fraudulent billing or unlawful solicitations or referrals, Plaintiffs seek an enormous volume of documents from Path Holdings, GreatBanc, and Keefe concerning various irrelevant topics. For example, Plaintiffs seek from Path Holdings:

> 1.      All Documents reflecting the corporate formalities followed by You, including but not limited to, articles of formation, operating agreements, reports or Documents filed with state agencies, by-laws, shareholder agreements, stock certificates, board or shareholder rosters, board or shareholder meeting minutes, board or shareholder resolutions, letters of resignation, records of ownership, or membership agreements.

---

[1] The Path Defendants respectfully request that the Court also provide Path Holdings, GreatBanc, and Keefe the opportunity to litigate their objections they have asserted to the Subpoenas, after they complete meeting and conferring with State Farm.

3

> 2. Your federal income tax returns, W-2s, 1099s, schedules, worksheets, and general ledgers for the years 2016 through the present.
>
> * * *
>
> 7. Documents reflecting Payments made to or received from the [Employee Stock Ownership] Plan.
>
> * * *
>
> 12. Documents, including but not limited to stock ledgers and stock certificates, reflecting the issuance, transfer, or sale of Your stock to the [Employee Stock Ownership] Plan or any other Person.

(Ex. 1.) There is no conceivable argument for why a non-party's corporate records, tax returns, transactions with an Employee Stock Ownership Plan ("ESOP"), or stock-related documents are relevant to a case arising out of Plaintiffs' allegations that a different entity allegedly provided medically unnecessary care or allegedly engaged in unlawful solicitation or referrals.

Additionally, while the allegations in the FAC concern only no-fault claims after January 1, *2017*, Plaintiffs seek documents from Path Holdings, GreatBanc, and Keefe starting in January 1, *2016*, specifically, all documents from a series of transactions in 2016 having nothing to do with this case. (Ex. 1, Instruction # 5; Ex. 2, Instruction # 5; Ex. 3, Instruction # 5.) For example, Plaintiffs request from Path Holdings:

> 16. Promissory note agreements between [Path Holdings] and the Plan, including but not limited to the $104,700,00 and $138,800,000 term note agreement(s) that You entered into with the Plan in *October 2016*.
>
> * * *
>
> 18. Contracts, agreements, or arrangements between You, GreatBanc Trust Company, and any other Person to refinance or reduce the amounts owed for the $104,700,000 and $138,800,000 term note agreement(s) that You entered into with the Plan in *October 2016*.

(Ex. 1; *see also* Ex. 2, Req. 2; Ex. 3, Req. 2) (emphasis supplied.)

There is no reasonable argument that documents related to ESOP loans issued in 2016 are relevant to Plaintiffs' claims that a different entity, Path Medical, unlawfully submitted no-fault claims in and after 2017.

GreatBanc and Keefe are even further removed from anything potentially relevant to the claims State Farm asserts in the FAC. Keefe, an accounting and auditing firm, is not mentioned anywhere in State Farm's 122-page Amended Complaint, and the sole mention of GreatBanc is that it is an ESOP Trustee who directed that an independent appraisal be performed of Path Holdings stock in 2016 (FAC ¶ 43(c)), before the time period at issue in this case and having nothing to do with allegedly medically unnecessary care or solicitation or referrals.

In addition, the Subpoenas are drafted so broadly as to seek a vast volume of irrelevant documents and are clearly unduly burdensome. For example, Request No. 27 alone of the Path Holdings Subpoena asks Path Holdings to produce all:

> 2. Communications between You and any of the Persons identified in subparagraphs (a)(1)-(9) below regarding the topics described in subparagraphs (b)(1)-(14) below:
>
> a. Communications with any of the following:
>
> 1) the GreatBanc Trust Company, as well as any of its officers, directors, employees, or agents;
>
> 2) the Plan, as well as any officers, or members of its Board of Directors, Administrative Committee, or ESOP Committee;
>
> 3) Path Medical, LLC, as well as any of its officers, directors, members, managers, employees, or agents;

5

4)      Crowe & Horwath, LLP, as well as any of its officers, directors, employees, or agents;

5)      any Person who performed an independent appraisal regarding the valuation of Your common stock held in the Plan;

6)      any Person who loaned, or was asked to loan, money used to acquire Your common stock for the Plan;

7)      Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., Joseph Russo, Jr.;

8)      Kevin Johnson or Path Medical Investment Holdings, LLC; or

9)      Keefe McCullough, as well as any of its officers, directors, employees, or agents;

b.      Documents reflecting Communications regarding the following topics:

1)      contracts, agreements, or arrangements with Path Medical, LLC, or 1-800-411-PAIN Referral Service, LLC;

2)      the terms pursuant to which You acquired the ownership or membership interests of Path Medical, LLC;

3)      payments made by You to acquire the ownership or membership interests in Path Medical, LLC;

4)      the issuance, transfer, or sale of Your stock to the Plan or any other Person;

5)      the terms pursuant to which You issued, transferred, or sold shares of Your stock to the Plan or any other Person;

6)      contracts, agreements, or arrangements pursuant to which the Plan or any other person purchased Your common stock;

7)      promissory note agreements between You and the Plan, including the $104,700,000 and $138,800,000 term note agreement(s) You entered into with the Plan in October 2016;

6

8) funds provided to the Plan pursuant to any promissory note agreement between You and the Plan;

9) contracts, agreements, or arrangements between You, GreatBanc Trust Company, and any other Person to refinance or reduce the amounts owed for the $104,700,000 and $138,800,000 term note agreement(s) that You entered into with the Plan in October 2016;

10) contracts, agreements, or arrangements between You, GreatBanc Trust Company, and any other Person to "renegotiate" or reduce the initial cost of the Plan's purchase of Your common stock, effective January 1, 2018;

11) information provided to, or received from, any Person for purposes of independent appraisals performed for the Plan regarding the valuation of Your common stock held by the Plan;

12) contracts, agreements, or arrangements with any Person to perform any service for Path Medical, LLC, 1-800-411-PAIN Referral Service, LLC, or the Plan, and any Payments made pursuant to such contracts, agreements, or arrangements.

13) contracts, agreements, or arrangements with Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., or Joseph Russo, Jr. and any Payments made pursuant to such contracts, agreements, or arrangements; and

14) contracts, agreements, or arrangements with Kevin Johnson or Path Medical Investment Holdings, LLC and any Payments made pursuant to such contracts, agreements, or arrangements.

(Ex. 1, Req. No. 27.)

In just one request, State Farm seeks all documents and communications that are even tangentially related to 9 different *categories* of persons/entities and 14 different broad *categories* of information. In other words, this request effectively functions as 126 different requests, none of which are reasonably targeted at obtaining relevant

7

information. Notably, a substantially similar request is contained in both the GreatBanc and Keefe Subpoenas. (*See* Ex. 2, Req. 17; Ex. 3, Req. 17.)

On the face of the Subpoenas, it is clear that Plaintiffs are seeking irrelevant documents in a futile attempt to resurrect their claims against Path Holdings that the Court dismissed and gave Plaintiffs another opportunity to replead by May 4, but which Plaintiffs declined to do. The Court should enter a protective order requiring Plaintiffs to withdraw and rescind their Subpoenas. In the alternative, Plaintiffs request that the Court enter an order substantially narrowing the scope of the requests.

**ARGUMENT**

I.    **Standard**

"Discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978). Rule 26(b)(1) only permits parties to obtain discovery regarding "nonprivileged matter[s] that [are] relevant to [a] party's claim or defense." "Although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, non-party status is considered by the court in weighing the burdens imposed in providing the requested discovery." *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003).

"[A] court may, for good cause shown, issue an order to protect any person from annoyance, embarrassment, oppression or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "A party has standing to challenge a non-party subpoena if the party alleges a 'personal right or privilege' with respect to the subpoena or if a subpoena seeks irrelevant information." *McCoy v. GEICO Gen. Ins. Co.*, 2019 WL

8

5391104, at *2 (M.D. Fla. Aug. 14, 2019) (quoting *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 2005 U.S. Dist. LEXIS 21524 at *6, 8 (M.D. Fla. 2005) ("As parties, defendants clearly have standing to move for protective order if the subpoenas seek irrelevant information.")). The Court also has the inherent authority to control discovery under Rule 26. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1310 (11th Cir. 2011).

"The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Molina v. Hunter*, 15-CV-00076, 2015 WL 13805179, *2 (W.D. Tex. Nov. 16, 2016). "[S]peculative or attenuated connection between materials sought and claims or defenses is insufficient to establish relevance . . . ." *Lath v. Manchester Pol. Dep't*, 16-cv-534, 2017 WL 11509790, at *2 (D.N.H. Nov. 28, 2017).[2]

## II. The Requested Documents Are Not Relevant

### A. State Farm issued the Subpoenas for the improper purpose of developing claims against a nonparty that State Farm declined to seek to replead against by the Court's deadline.

The irrelevant nature of the Subpoenas supports that they were served not only

---

[2] "The scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery under Rule 26." *Rodgers v. Herbalife Int'l of Am., Inc.*, No. 8:19-MC-115-T-35AAS, 2020 WL 263667, at *1 (M.D. Fla. Jan. 17, 2020); Fed R. Civ. P. 45 advisory committee's note to the 1970 amendment ("The changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Molina v. Hunter*, 15-CV-00076, 2015 WL 13805179, at *2 (W.D. Tex. Nov. 16, 2016).

9

to harass and expand the scope of discovery beyond its permissible limits, but also for the improper purpose of conjuring up a claim against Path Holdings, which State Farm declined to replead by the Court's deadline. Plaintiffs drafted the Subpoenas with the intent to obtain information that Plaintiffs (incorrectly) speculate might assist it in asserting a future claim against Path Holdings. Even aside from the tardiness of any claim State Farm might seek to bring in the future against Path Holdings, it is an abuse of the subpoena power to use it to seek to assert new claims, against new parties, not already asserted in the operative pleading. *See Polycarpe v. Seterus, Inc.,* No. 6:16–cv–1606, 2017 WL 2257571, at *4 (M.D. Fla. May 23, 2017) (parties have "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003) (holding that a subpoena is improper where the plaintiff seeks "not only information to buttress her action as it presently stands, but also additional defendants or plaintiffs to join in her suit"); *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (A "subpoena may only properly seek testimony and documents that are relevant to any party's claim or defense in that case. And a party may no more use third-party discovery to develop new claims or defenses that are not already identified in the pleadings than it may use discovery served on a party to find the claims themselves rather than to find support for properly pleaded claims.").

Plaintiffs' own FAC admits that they cannot adequately plead claims against, or related to, Path Holdings. The FAC states that "it is unclear whether Path Medical Holdings knowingly participated in the wrongful conduct alleged herein, or to the

10

extent to which it may have benefited from or been unjustly enriched by that wrongful conduct. Therefore, Path Medical Holdings is not named as a defendant at this time." (FAC at ¶ 43.) Nevertheless, the FAC contains a string of allegations irrelevant to the asserted claims, presumably in an attempt to support a fishing expedition into Path Holdings' transactions in 2016. (*See id.* at ¶¶ 41–48.) For example, the FAC alleges:

> On October 2, 2016, the same day Path Medical Holdings was formed, the Path Medical Center Holdings Employee Stock Ownership Plan (the "Path ESOP") was formed, purportedly for the sole benefit of the employees of Path Medical Holdings and/or Path Medical. Limited information is available in the public record regarding Path Medical Holdings and the Path ESOP.

(*Id.* at ¶ 42.) And State Farm asserts—through pure (incorrect) conjecture—that the "circumstances surrounding the formation of Path Medical Holdings are highly suspicious." (*Id.* at ¶ 43).

Plaintiffs' fishing expedition is uniquely problematic given that their claims are subject to Rule 9(b)'s heightened pleading standard, that the Court dismissed Path Holdings from the case for insufficient notice of the claims against it, and that State Farm declined to attempt to replead any claims against Path Holdings by the Court's deadline. Allowing Plaintiffs to abuse the subpoena power in this manner would render the protections provided by a heightened pleading standard a nullity. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) ("The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without" first bringing a well-pleaded claim.) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in

claims with discernable boundaries and manageable discovery limits."). Plaintiffs should not be permitted to use the subpoena power to forage for potential new claims, particularly not after the Court's deadline. As the Subpoenas were clearly issued for an improper purpose, Plaintiffs should be required to withdraw and rescind them in their entirety.

      **B.    The Subpoenas Should Be Rescinded Because They Seek Irrelevant Information Well Outside the Scope of Permissible Discovery.**

In addition to the Subpoenas' impermissible purpose of seeking support for new claims against Path Holdings after the Court's deadline, Plaintiffs also cannot meet their burden to establish relevance. Courts have long held that the standard for discovery is "not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so." *See Gavin's Ace Hardware, Inc. v. Federated Mut. Ins. Co.*, No. 2:11-CV-162-FTM-36, 2011 WL 5104476, at *2 (M.D. Fla. Oct. 27, 2011) (quoting *Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682 (S.D. Fla. 2010) (citation omitted)). In other words, "parties may not engage in a 'fishing expedition' to obtain evidence to support their claims or defenses." *Rodgers*, 2020 WL 263667 at *1 (citing *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006)); *see also Fox v. Lake Erie Coll. of Osteopathic Med.*, No. 8:19-cv-2795-T-60AAS, 2020 WL 7054554, at *2 (M.D. Fla. Dec. 2, 2020). Here, State Farm's Subpoenas seek a broad range of documents which are not relevant to any claim or defense in this case.

### 1.   *The GreatBanc and Keefe Subpoenas*

The GreatBanc and Keefe Subpoenas are virtually identical and each contain 142 document requests including sub-parts (which Plaintiffs labeled as 17 requests), none of which seek relevant information. The Subpoenas are directed to three broad categories of documents: (1) documents related to Path Holdings' ESOP; (2) contracts and payments between GreatBanc/Keefe and Path Holdings/Defendants; and (3) documents related to ownership and membership interests of Path Holdings or Path Medical.  These are not relevant subject matters.

First, documents related to a nonparty's ESOP are facially not relevant to a case arising out of allegations that a different entity submitted fraudulent or unlawful no-fault claims.  Indeed, the requests read as though State Farm has brought an entirely different case based on different claims.  For example, Request 9 asks for:

> 9.   Documents reflecting information provided to, and received from, the Internal Revenue Service in connection with all requests for determination letters regarding whether the Plan was in compliance with the applicable requirements of the Internal Revenue Code, including the determination letter dated February 28, 2018, which was obtained by the Plan and is referenced in Note 3 of the IRS Form 5500s filed for the Plan for the years 2016 through 2019.

(Ex. 2; Ex. 3.)  Request 10 asks for "IRS Form 5500s that You filed for the Plan for the years 2016 through the present."  (Ex. 2; Ex. 3.)  There is no reasonable basis to claim that documents related to whether a non-party's ESOP was in compliance with IRS rules is relevant to whether another entity implemented a predetermined protocol or unlawfully solicited or referred patients. Even assuming solely for the sake of argument that Path Holdings' ESOP breached every IRS rule and regulation in

13

existence (which it did not), that does not bear on whether or not a different entity provided allegedly medically unnecessary care or violated patient brokering, anti-kickback, or chiropractic advertising laws.

Request 11 asks for "[d]ocuments reflecting any minutes of meetings of the Administrative Committee, the ESOP Committee, or the Board of Directors of the Plan." (Ex. 2; Ex. 3.) Again, GreatBanc and Keefe's management of Path Holdings' Plan has nothing to do with whether a different entity unlawfully solicited patients or implemented a predetermined protocol for medical treatment of patients.

Request 12 asks for "[d]ocuments reflecting Your exercise of voting rights pursuant to the shares of Path Medical Center Holdings, Inc. held in the Plan." (Ex. 2; Ex. 3.) Similar to its other requests, Request 12 does not seek relevant documents. Whether or not two non-parties (GreatBanc and Keefe) exercised voting rights related to an ESOP of another nonparty (Path Holdings) is not even minimally relevant to the claims asserted in the FAC.

Second, the document requests related to GreatBanc and Keefe's contracts with Path Holdings and Defendants, and payments made there under, are not relevant. For example, Request 14 asks for all "[c]ontracts, agreements, or arrangements with Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., Joseph Russo, Jr., or Kevin Johnson, and any Payments made pursuant to such contracts, agreements, or arrangements." (Ex. 2; Ex. 3.) The request is facially problematic as it is not limited by the subject matter of the contracts or payments. Nevertheless, there is no conceivable situation where contracts with, or payments made to, GreatBanc and

14

Keefe related to a non-party's ESOP would assist a trier of fact in determining whether a different entity unlawfully solicited patients or submitted fraudulent no-fault claims.

Third, the document requests related to ownership and membership interest of Path Holdings or Path Medical are not relevant. For example, Request No. 16 asks for "[d]ocuments reflecting the terms pursuant to which the common stock and any other class of stock of Path Medical Center Holdings, Inc. was acquired by the Plan." (Ex. 2; Ex. 3.) The terms under which an ESOP obtained an ownership interest in Path Holdings, a non-party, is not relevant to whether a different entity implemented a predetermined protocol or submitted medically unnecessary no-fault claims.

### 2. *The Path Holdings Subpoena*

The Path Holdings Subpoena contains numerous requests directed at the same improper subject matter identified above. For example, Request No. 2 is directed to Path Holdings' tax returns and Request Nos. 7, 8, 12, 14–21, 24, and 27 are related to Path Holdings' ESOP. For the same reasons as above, such requests are not relevant and are improper. Even further, the Path Holding Subpoena seeks additional categories of irrelevant information: (1) documents related to Path Holdings' corporate structure; (2) contracts and payments between Path Holdings and Path Medical or 411-PAIN; and (3) documents related to an employee handbook.

First, documents related to a non-party's corporate structure are irrelevant. For example, Request No. 1 asks for:

> All Documents reflecting the corporate formalities followed by You, including but not limited to, articles of formation, operating agreements, reports or Documents filed with state agencies, by-laws, shareholder

15

> agreements, stock certificates, board or shareholder rosters, board or shareholder meeting minutes, board or shareholder resolutions, letters of resignation, records of ownership, or membership agreements.

(Ex. 1.) Plaintiffs' request is clearly targeted at information that could theoretically be used to pierce Path Holdings' (a non-party) corporate veil. Obviously, however, Plaintiffs cannot pierce the corporate veil of a non-party, nor has State Farm asserted any such claims or any facts in the FAC to support such piercing. The information sought would only be relevant if Plaintiffs had active claims against Path Holdings, arising out of some alleged misconduct by Path Holdings. But that is not the case.

Second, Plaintiffs improperly seek documents related to contracts and payments between Path Holdings and Defendants. For example, Request No. 3 asks for "[d]ocuments reflecting Payments made to or received from Path Medical, LLC." Again, whatever money Path Holdings and any Defendant may have exchanged, if any, is not relevant to whether the Defendants unlawfully solicited or referred patients or submitted medically unnecessary no-fault claims to State Farm. Moreover, the request is clearly overbroad, as it is not limited by subject matter.

Third, Plaintiffs improperly seek documents from Path Holdings that they could get from discovery requests to Defendants, such as Path Medical employee handbook materials (Request No. 23). *See Davidson v. Gov't Emps. Ins. Co.*, No. 8:09–cv–727, 2010 WL 11507180, at *2 (M.D. Fla. Mar. 19, 2010) (holding that subpoena improperly sought documents that could have been obtained through other means); *Audio MPEG, Inc. v. HP Inc.*, 16-mc-80271, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017).

Plaintiffs' Subpoenas are clearly targeted at a broad spectrum of irrelevant information. Plaintiffs are not entitled to aimlessly subpoena huge volumes of irrelevant documents in order to "rifle through, private, irrelevant [documents and] communications" in the hopes that some relevant documents might be included. *See C.H. v. Sch. Bd. of Okaloosa Cnty. Fla.*, 3:18-cv-2128, 2020 WL 6572430, at *4 (N.D. Fla. Nov. 4, 2020) (internal quotation marks omitted). Accordingly, courts should enter a protective order requiring the withdrawal or recension of a subpoena when the requests are largely directed, as is the case here, at irrelevant information. *Id.*

## III. The Subpoenas Are Unduly Burdensome

Although the Path Defendants are primarily asserting the grounds above for entering a protective order, the Subpoenas also are unduly burdensome. "In determining whether a subpoena is unduly burdensome, courts should consider the relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 2:14–mc–25, 2015 WL 3484743, at *2 (M.D. Fla. June 2, 2015). And, Path Holdings, GreatBanc, and Keefe's non-party status automatically weighs in favor of a finding of undue burden. *Cf. Cytodyne*, 216 F.R.D. at 535. All factors weigh in favor of issuing a protective order.

### A. Factors 1, 2, and 5: Relevance, Need, and Nonparty Status

The relevance, need, and nonparty status factors strongly weigh in favor of

issuing a protective order. First, as previously explained, the documents sought are facially overbroad and irrelevant. Second, State Farm does not have a compelling need for the requested documents. Indeed, even if relevant (which they are not), they are clearly not material. There is no plausible situation where State Farm would need documents related to a non-party's ESOP, corporate structure, and tax filings to successfully prove its case against the remaining Defendants. Moreover, the majority of the requested documents could be obtained from Defendants—*e.g.*, documents related to Path Holdings' ownership interest in Path Medical and 411-PAIN. Thus, State Farm does not need to obtain those documents from a third-party. *See Davidson*, 2010 WL 11507180, at *2; *see also Audio MPEG*, 2017 WL 950847, at *4. Accordingly, the final factor—nonparty status—weighs in favor of issuing a protective order. *See Cytodyne*, 216 F.R.D. at 535.

### C. Factor 3: the Scope of the Requests

The third factor, scope of the requests, weighs in favor of issuing a protective order. Courts in this district have consistently held that "broadly worded request[s] encompass[ing] numerous documents wholly irrelevant to the lawsuit underlying th[e] case" are improper. *See Schaff v. SmithKline Beecham Corp.*, No. 3:06–CV–120, 2006 WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006); *accord Wolfe v. Glasgow*, No. 3:08–cv–813, 2009 WL 1956687, at *1 (M.D. Fla. July 7, 2009). When a subpoena contains such broad requests, a court must quash or enter a protective order as to the entirety of the subpoena even if some of the documents sought may be relevant. *See Davidson*,

2010 WL 11507180, at *2. State Farm was affirmatively obligated to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). But State Farm facially ignored this requirement by, among other things, issuing a broadly worded 126-part request, requests without subject matter limitations, requests for time periods not at issue, requests seeking information that State Farm could obtain from parties in the case, and requests so broadly worded that Plaintiffs seek vast volumes of documents that are irrelevant and immaterial.

### D. Factor 4: Time Period

State Farm's Subpoena is also unduly burdensome as it seeks broad categories of documents for a period exceeding 5 years and primarily seeks documents from 2016, outside of the time period of this case. Courts have routinely held that such broad third-party requests are improper. *See Wolfe*, 2009 WL 1956687, at *1 (holding that requesting all documents relating to communications between the movant and defendants in past 5 years was overly burdensome); *Geller v. Von Hagens*, No. 11–cv-80269, 2012 WL 1413461, at *4 (N.D. Cal. Apr. 23, 2012) (quashing a subpoena where the "time period covered by the subpoena is quite long—approximately five years" and the requests were "not described with particularity"); *S.R.L. v. Full Speed Ahead, Inc.*, No. 08-cv-1372, 2010 WL 11527270, at *2 (W.D. Wash. Jan. 4, 2010) (holding that subpoena that would require a non-party to search through documents spanning over five years of advertising work was overly burdensome).

## CONCLUSION

For the foregoing reasons, Defendants Robert Lewin, D.C., 1-800-411-PAIN Referral Service, LLC, and Path Medical, LLC respectfully request that the Court issue a protective order requiring Plaintiffs to withdraw and rescind their Subpoenas to Path Holdings, GreatBanc, and Keefe and grant any other relief the Court deems just and warranted. In the alternative, the Path Defendants request that the Court order that the scope of the Subpoenas be substantially and appropriately narrowed.

**Local Rule 3.01(g) Certification:** Counsel for the Path Defendants conferred with counsel for Plaintiffs by telephone on July 15, 2021, and the parties do not agree on the resolution of this motion.

Dated: July 15, 2021

Respectfully submitted,

By: /s/ *Heather A. Lee*

Lisa M. Noller (*admitted pro hac vice*)
E-mail: lnoller@foley.com
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Michael P. Matthews (FBN 63988)
Primary Email: mmatthews@foley.com
Secondary Email: dguillen@foley.com
Heather A. Lee (FBN 1011026)
Primary Email: hlee@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Telephone: (813) 229-2300
Facsimile: (813) 221-4210

*Attorneys for Defendants Robert Lewin, D.C., 1-800-411-PAIN Referral Service, LLC, and Path Medical, LLC*