# Exhibit 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| State Farm Mutual Automobile Insurance Co., et al., <br> *Plaintiff* <br> v. <br> Robert Lewin, D.C., et al., <br> *Defendant* | ) ) ) ) ) ) ) Civil Action No. 8:20-cv-2428 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Keefe, McCullough & Co., LLP
6550 N. Federal Highway, 4th Floor. Fort Lauderdale, FL 33308

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached rider.

| Place: John Lepore <br> c/o Veritext Legal Solutions <br> One Biscayne Tower <br> 2 S. Biscayne Blvd #2250, Miami, FL 33131 | Date and Time: <br> Within twenty-one (21) days of service |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/08/2021

*CLERK OF COURT*

OR  /s/ John L. Lepore

_____          _____
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company , who issues or requests this subpoena, are:
John Lepore; Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661-3693; john.lepore@katten.com; (312) 902-5395

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 8:20-cv-02428-VMC-TGW Document 86-3 Filed 07/15/21 Page 3 of 12 PageID 1915

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:19-cv-22487-RS

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SUBPOENA RIDER
## KEEFE, MCCULLOUGH & CO., LLP

### Definitions

1. The terms "You" and "Your" shall mean Keefe, McCullough & Co., LLP, and any employee, agent, entity, or other person acting on behalf of Keefe, McCullough & Co., LLP.

2. The term "State Farm" shall mean Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.

3. The term "Lawsuit" shall refer to *State Farm Mutual Automobile Insurance Company, et al. v. Robert Lewin, D.C., et al.*, 8:20-cv-02428-VMC-TGW, which is currently pending in the United States District Court for the Middle District of Florida.

4. The term "Defendant" and "Defendants" shall mean any Defendant named in the Complaint, or any individual working on behalf of or for the benefit of any Defendant, including:

    (a) Robert Lewin, D.C.
    (b) 1-800-411-PAIN Referral Service, LLC
    (c) Path Medical, LLC
    (d) David Cheesman, D.O.
    (e) Chintan Desai, M.D.
    (f) Ralph Marino, M.D.
    (g) Tie Qian, M.D.
    (h) Roger Ramos, M.D.
    (i) Donald Thomas III, M.D.
    (j) Nelson Vazquez, M.D.
    (k) Michael Wilensky, M.D.
    (l) Brittany Chong, D.C.
    (m) Ronald Golden, D.C.
    (n) William Kurzbuch, D.C.
    (o) Frank Lassiter, D.C.
    (p) Adam Lewis, D.C.
    (q) Dheeraj Manocha, D.C.
    (r) Lisa Nerbonne, D.C.
    (s) Kieron Parchment, D.C.
    (t) Joseph Sefick, D.C.
    (u) Sarah Vleko, D.C.

5. The term "Communications" shall mean all discussions, conversations, meetings, conferences, telephone conversations, text messages, interviews, negotiations, agreements, understandings, cards, letters, correspondences, telegrams, telexes, electronic mail, voicemail, or other forms of written or verbal interchange, however transmitted or stored, including reports, notes, memoranda, lists, agenda and other records of any communications.

6. The term "Documents" shall mean every original (and every copy of any original or copy which differs in any way from any original), every writing or recording of every kind or description, whether handwritten, typed, drawn, sketched, printed, computerized or recorded by any mechanical, electronic or electrical means whatsoever, including without limitation books, records, papers, letters, instructions, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, reports, correspondence, e-mails, text messages, faxes, Communications, memoranda, notes, notebooks, lists, analyses, financial statements, bank statements, deposit tickets, cancelled checks, wire transfers, solicitations, PowerPoint presentations, charts, minutes, calendars, appointment books, itineraries, vouchers, receipts, contracts, agreements, invoices, written memorials of oral communications, photographs, films, video tapes, audio tapes, recordings and compilations of data or other information, including any compilations from which information can be obtained. The term "Documents" shall have the broadest meaning possible consistent with the Federal Rules of Civil Procedure.

7. The term "Plan" shall mean the Path Medical Center Holdings, Inc. Employee Stock Ownership Plan.

8. The terms "Payment" or "Payments" shall mean any transfer of money or anything of value.

9. The terms "Person" or "Persons" are defined as any natural person or any business, legal or governmental entity, or association.

## Instructions

1. You are required to produce all non-privileged responsive Documents within Your custody, possession, or control.

2. Any information or Document responsive to these Requests not produced or disclosed by reason of a claim of privilege or work-product protection, or for any other reason, shall be identified by: (i) the date the Document was created; (ii) general subject matter; (iii) identity of person(s) to whom the information, or any portion thereof, has been revealed; (iv) identity of person(s) from whom the information was communicated; and (v) the basis upon which the information is being withheld.

3. The singular form of any word shall include the plural and the plural shall include the singular.

4. The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively as necessary to bring within the scope all responses that might otherwise be construed as outside its scope.

5. Unless otherwise specified, the period applicable to these Document Requests is January 1, 2016 through the present.

## Document Requests

1. The Plan Agreement, including any amendments, that has been available to all Plan participants upon request and is referenced in Note 1 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 through 2019.

2. The $104,700,000 and $138,800,000 term note agreement(s) the Plan entered into with Path Medical Center Holdings, Inc. on October 11, 2016, which is referenced in Note 6 of

3

Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 through 2018.

3. The stock purchase agreement, and any other agreement, pursuant to which the Plan initially purchased the common stock of Path Medical Center Holdings, Inc., as described in Note 6 of Your Independent Auditor's Reports accompanying the Form 5500s filed for the Plan for the years 2016 and 2017.

4. Documents reflecting any transactions through which the proceeds used to purchase the common stock of Path Medical Center Holdings, Inc. for the Plan were generated, which is referenced in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017.

5. Documents reflecting the source, amount and transfer of the proceeds used to purchase the common stock of Path Medical Center Holdings, Inc. for the Plan, which is referenced in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017.

6. Contracts, agreements, or arrangements between Path Medical Center Holdings, Inc., GreatBanc Trust Company, and any other Person or entity to refinance the term note agreement, effective January 1, 2018, as referenced in Note 10 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017, and in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2018 and 2019.

7. Contracts, agreements, or arrangements between Path Medical Center Holdings, Inc., GreatBanc Trust Company, and any other Person or entity to "renegotiate" the initial cost of the Plan's purchase of the common stock of Path Medical Center Holdings, Inc., effective January

1, 2018, as referenced in Note 10 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017, and in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2018 and 2019.

8. Documents reflecting the valuation of the common stock of Path Medical Center Holdings, Inc., and the information and methodologies relied upon, by an independent appraiser when such shares were initially acquired by the Plan on October 11, 2016, and as of the last day of each year thereafter, as reported in Schedule H of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 through the present.

9. Documents reflecting information provided to, and received from, the Internal Revenue Service in connection with all requests for determination letters regarding whether the Plan was in compliance with the applicable requirements of the Internal Revenue Code, including the determination letter dated February 28, 2018, which was obtained by the Plan and is referenced in Note 3 of the IRS Form 5500s filed for the Plan for the years 2016 through 2019.

10. IRS Form 5500s that You filed for the Plan for the years 2016 through the present.

11. Documents reflecting any minutes of meetings of the Administrative Committee, the ESOP Committee, or the Board of Directors of the Plan.

12. Documents reflecting any exercise by the GreatBanc Trust Company of voting rights pursuant to the shares of Path Medical Center Holdings, Inc. held in the Plan.

13. Contracts, agreements, or arrangements with any Person to perform any service for Path Medical Center Holdings, Inc., Path Medical, LLC, or 1-800-411-PAIN Referral Service, LLC, and any Payments made pursuant to such contracts, agreements, or arrangements.

14. Contracts, agreements, or arrangements with Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., Joseph Russo, Jr., or Kevin Johnson, and any Payments made pursuant to such contracts, agreements, or arrangements.

15. Documents reflecting the terms pursuant to which Robert Lewin, D.C. and Kimberly Russo transferred their ownership or membership interest in Path Medical, LLC to Path Medical Center Holdings, Inc.

16. Documents reflecting the terms pursuant to which the common stock and any other class of stock of Path Medical Center Holdings, Inc. was acquired by the Plan.

17. Communications between You and any of the Persons identified in subparagraphs (a)(1)-(9) below regarding the topics described in subparagraphs (b)(1)-(13) below:

    a. Communications with any of the following:

        1) the GreatBanc Trust Company, as well as any of its officers, directors, employees, or agents;

        2) the Plan, as well as any officers, or members of its Board of Directors, Administrative Committee, or ESOP Committee;

        3) Path Medical Center Holdings, Inc., as well as any of its officers, directors, employees, or agents;

        4) Path Medical, LLC, as well as any of its officers, directors, members, managers, employees, or agents;

        5) Crowe & Horwath, LLP, as well as any of its officers, directors, employees, or agents;

        6) any Person who performed an independent appraisal regarding the valuation of the common stock of Path Medical Center Holdings, Inc. held in the Plan;

        7) any Person who loaned, or was asked to loan, money used to acquire the common stock of Path Medical Center Holdings, Inc. for the Plan;

        8) Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., Joseph Russo, Jr.; or

6

  9) Kevin Johnson or Path Medical Investment Holdings, LLC;

 b. Documents reflecting Communications regarding the following topics:

  1) the $104,700,000 and $138,800,000 term note agreement(s) the Plan entered into with Path Medical Center Holdings, Inc. on October 11, 2016, which is referenced in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 through 2018;

  2) the stock purchase agreement, and any other agreement, pursuant to which the Plan initially purchased the common stock of Path Medical Center Holdings, Inc., as described in Note 6 of Your Independent Auditor's Report accompanying the Form 5500s filed for the Plan for the years 2016 and 2017;

  3) transactions through which the proceeds used to purchase the common stock of Path Medical Center Holdings, Inc. for the Plan were generated, which is referenced in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017;

  4) the source, amount, and transfer of the proceeds used to purchase the common stock of Path Medical Center Holdings, Inc. for the Plan, which is referenced in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017;

  5) contracts, agreements, or arrangements between Path Medical Center Holdings, Inc., GreatBanc Trust Company, and any other Person or entity to "refinance" the term note agreement, effective January 1, 2018, as referenced in Note 10 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017, and in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2018 and 2019;

  6) contracts, agreements, or arrangements between Path Medical Center Holdings, Inc., GreatBanc Trust Company and any other Person or entity to "renegotiate" the initial cost of the Plan's purchase of the common stock of Path Medical Center Holdings, Inc., effective January 1, 2018, as referenced in Note 10 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 and 2017, and in Note 6 of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2018 and 2019;

7

7) the valuation of the common stock of Path Medical Center Holdings, Inc., and the information and methodologies relied upon, by an independent appraiser when such shares were initially acquired by the Plan on October 11, 2016, and as of the last day of each year thereafter, as reported in Schedule H of Your Independent Auditor's Reports accompanying the IRS Form 5500s filed for the Plan for the years 2016 through the present;

8) requests by the Plan for determination letters from the Internal Revenue Service regarding whether the Plan was in compliance with the applicable requirements of the Internal Revenue Code, including the determination letter dated February 28, 2018 which was obtained by the Plan and is referenced in Note 3 to the IRS Form 5500s filed for the Plan for the years 2016 through 2019;

9) contracts, agreements, or arrangements with any Person or entity to perform any service for Path Medical Center Holdings, Inc., Path Medical, LLC or 1-800-411-PAIN Referral Service, LLC, and any Payments made pursuant to such contracts or agreements;

10) contracts, agreements, or arrangements with Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., or Joseph Russo, Jr., and any Payments made pursuant to such contracts, agreements, or arrangements;

11) the terms pursuant to which Robert Lewin, D.C. and Kimberly Russo transferred their membership interests in Path Medical, LLC to Path Medical Center Holdings, Inc.;

12) the terms pursuant to which the common stock and any other class of stock of Path Medical Center Holdings, Inc. was acquired by the Plan; or

13) contracts, agreements, or arrangements with Kevin Johnson or Path Medical Investment Holdings, LLC, and any Payments made pursuant to such contracts, agreements, or arrangements.