# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |  |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 8:20-cv-02428-VMC-TGW |
| v. | ) ) | Hon. Virginia M. Hernandez Covington |
| ROBERT LEWIN, D.C., *et al.*, | ) ) ) | Magistrate Thomas G. Wilson |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' NON-PARTY SUBPOENAS

Defendants' Motion for Protective Order (the "Motion") asks the Court to order

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire

and Casualty Company (collectively, "Plaintiffs") to withdraw completely three

document subpoenas (the "Subpoenas") to non-parties Path Medical Center Holdings,

Inc. ("Path Holdings"), GreatBanc Trust Company ("GreatBanc"), Keefe

McCullough & Co., LLP ("Keefe") (collectively, "the Non-Parties").[1] Defendants

---

[1] Defendants Robert Lewin, D.C. ("Lewin"), Path Medical, LLC ("Path Medical"), and 1-800-411-PAIN Referral Service, LLC ("411-PAIN") filed a motion on July 15, 2021, the date the Non-Parties' responses to the Subpoenas were due. (ECF 86.) The Chiropractor and Medical Director Defendants ("Provider Defendants"), however, filed an untimely joinder motion (ECF 87), *see, e.g.*, *Allstate v. Auto Glass Am., LLC*, 2020 WL 6066316, at *2 (M.D. Fla. July 15, 2020); *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 4322764, at *1 (M.D. Fla. Dec. 11, 2007), that failed to comply with Local Rule 3.01(g), *see Allmond v. City of Jacksonville*, 2007 WL 1079089, at *1 (M.D. Fla. Apr. 9, 2007) (denying the plaintiff's motions for a protective order to prevent discovery and to strike non-party subpoenas because the motions did not "contain certificates indicating [the p]laintiff conferred with opposing counsel as

argue the Subpoenas should be withdrawn for three reasons. First, they contend the Court should withdraw the Subpoenas because they seek information from and regarding Path Holdings, which is not a party to the lawsuit. Second, they contend the Subpoenas seek information that is not relevant to the fraud scheme alleged in the Amended Complaint ("AC"). Finally, they argue the Subpoenas seek information that would be unduly burdensome for the Non-Parties to produce. As discussed below, these arguments should be rejected, and the Motion should be denied.

## I.    LEGAL STANDARDS

As the "party seeking a protective order," Defendants – not Plaintiffs – have the burden to demonstrate good cause for their Motion.[2] *Bernath v. Seavey*, 2017 WL 11025770, at *3 (M.D. Fla. May 9, 2017). Defendants "must make a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements supporting the need for a protective order." *Id.* "Good cause represents the 'sole criterion' for assessing the propriety of a protective order, and it generally signifies a sound basis or legitimate need to take judicial action." *E-Pro. Techs. LLC v. Primehealth of Ill., Inc.*, 2020 WL 9595904, at *1 (M.D. Fla. Oct. 22, 2020).

---

required by Local Rule 3.01(g)"). The Provider Defendants' joinder motion should be denied on these grounds. *See infra* n.13.

[2] Defendants rely on a Texas federal district court decision to argue Plaintiffs carry the initial burden to show the discovery is relevant. However, in the Eleventh Circuit, the standard Defendants urge appears to apply to motions to compel, not motions for protective orders. *See Doerr v. Abplanalp*, 2020 WL 6870912, at *2 (M.D. Fla. Sept. 3, 2020) ("the proponent of a motion to compel discovery [] bears the initial burden of proving that the information is relevant"); *Endurance Am. Spec'ty Ins. Co. v. Liberty Mut. Ins.*, 2018 WL 7352150, at *3 (M.D. Fla. Dec. 20, 2018) ("Generally, the proponent of a motion to compel discovery bears the initial burden of proving that the information sought was relevant"). In any event, because the Subpoenas seek relevant information, Defendants cannot avoid their burden to show good cause for issuance of a protective order.

Additionally, while Defendants urge an exceptionally narrow and incorrect view of permissible discovery, Rule 26(b)(1) actually provides a broad allowance for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.] Information within this scope of discovery need not be admissible in evidence to be discoverable." *Eres v. Progressive*, 2018 WL 11344801, at *1 (M.D. Fla. Sept. 21, 2018). The term relevant should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to [any] other matter that bears on, any issue that is or may be in the case." (*Id.*) The same relevancy standard under Rule 26 governs Rule 45 subpoenas. *E-Pro. Techs.*, 2020 WL 9595904, at *1. The relevancy of the information sought through the Subpoenas is discussed next.[3]

## II. THE INFORMATION SOUGHT BY THE SUBPOENAS IS HIGHLY RELEVANT AND DISCOVERABLE

The fact Path Holdings is not a party does not preclude Plaintiffs from obtaining information from and about Path Holdings, so long as the information is relevant and proportional to the needs of the case. *See* FRCP 26(b)(1). Indeed, regardless of status as a party or non-party, the question of relevancy turns on whether "there is any possibility that the information sought [by the Subpoenas] may be relevant to the subject matter of the action." *Ortiz v. Pin UPS of Daytona Beach, LLC*, 2020 WL

---

[3] Although Defendants observe several of the causes of action at issue are subject to Rule 9(b), it has no bearing on the discovery sought in the Subpoenas. (*See* Mot. 11.) The Court already concluded Plaintiff's original Complaint included "sufficient factual allegations to support Plaintiffs' contention that [the] claims are fraudulent" and issued an order largely denying Defendants' motion to dismiss. (ECF 73, pp. 22-25.) The Subpoenas seek discovery related to those well-pleaded fraud claims.

10456853, at *2 (M.D. Fla. July 31, 2020) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984) (if the court is in doubt concerning the relevancy of requested discovery, the discovery should be permitted) (other citations omitted)). In making that determination, "consideration should be given to several factors including the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1). Here, each of these factors weighs heavily in favor of allowing Plaintiffs to obtain the discovery set forth in the Subpoenas.[4]

A. **The Relationships, Activities, And Interests Of Path Holdings, The Path ESOP, And Defendant Path Medical Are Inextricably Intertwined.**

Although Path Holdings is not a defendant, its relationships, activities, and interests, as well as those of the Path Medical Center Holdings Employee Stock Ownership Plan (the "Path ESOP"), are inextricably intertwined with those of Path Medical and Lewin, and thus discoverable. *See, e.g.*, *United States v. Benavides*, 470 F. App'x 782, 787-88 (11th Cir. 2012) (concluding evidence of other fraudulent conduct

---

[4] Defendants' authority, *Polycarpe v. Seterus*, 2017 WL 2257571 (M.D. Fla. May 23, 2017), supports the discovery sought through the Subpoenas. (Mot. 10.) The *Polycarpe* plaintiff brought claims against the defendant for statutory violations during the servicing of her mortgage. *Polycarpe*, 2017 WL 2257571, *1. The court allowed the plaintiff to obtain discovery from the defendant concerning other instances in which non-parties accused it of similar violations. *Id.* at *5. While the defendant's conduct in servicing other mortgages was not a claim in the plaintiff's case, the court nonetheless permitted the discovery because it was relevant to the plaintiff's claims to show the defendant's knowledge of wrongdoing, and to determine damages. *Id.* Thus, discovery is not as limited as Defendants suggest – non-party discovery that bears upon the claims already identified in the AC is permissible. Moreover, if discovery related to the claims at issue yields new information that would support adding parties to existing counts or pleading new claims altogether, a party may seek leave to amend its pleadings. *See Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co., Inc.*, 2012 WL 13105134, *2 (M.D. Fla. Mar. 13, 2012).

was admissible because it was "inextricably intertwined with the charged offense"); *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210-11 (11th Cir. 2009) (holding a non-party's testimony regarding an interaction the non-party had with a defendant that was unrelated to the specific bribery charge at issue was nonetheless "inextricably intertwined" with the issues of the case because it "was relevant to the chain of events surrounding the charged crimes, *including context and setup*") (emphasis added); *United States v. Meester*, 762 F.2d 867, 877 (11th Cir. 1985) (admitting testimony that "served to establish a background for the later substantive acts charged in the indictment" because such testimony was "relevant to prove the existence and purpose of the ongoing conspiracies and to establish the significance of the later acts"); *State Farm v. Physiomatrix, Inc.*, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013) (permitting non-party discovery that "will help establish ownership and control over the various [defendant] entities"). In that regard, the AC includes detailed allegations about: (1) the extremely suspicious circumstances under which Path Holdings and the Path ESOP were formed in October 2016; and (2) the significant, if not complete, identity of interests and control between Path Holdings, the Path ESOP, and Path Medical, the defendant entity through which every fraudulent claim at issue in this case was submitted to Plaintiffs. (ECF 77 ¶¶ 41-48.) Consistent with these allegations and publicly available information, the following facts are indisputable:

- During the entire period of the fraud scheme at issue, Path Holdings owned 100% of the membership interests in Path Medical;
- During the entire period of the fraud scheme at issue, the Path ESOP owned 100% of the stock of Path Holdings;

- Path ESOP's sole asset is 100% of the common stock of Path Holdings;

- After selling his majority ownership interest in Path Medical to Path Holdings in October 2016 for up to $243,500,000, Lewin remained in his position as CEO and a Director of Path Medical through at least November 2018 and held the CEO and Director positions for Path Holdings during the same period;

- The individual succeeding Lewin as CEO of Path Holdings, Manuel Fernandez, assumed the role of CEO for Path Medical during the same period;

- The Chief Operating Officer, Vice President, and Chief Compliance Officer, and certain Directors of Path Holdings held the same positions with Path Medical during the same periods;

- Path Holdings and Path Medical shared the same principal business addresses;

- An ESOP Committee appointed by the Board of Directors of Path Holdings administer the Path ESOP (*i.e.*, the Directors of Path Holdings, at least some of whom were also Directors of Path Medical, decide who the members of the ESOP Committee are, and that Committee administers the Path ESOP);

- According to annual reports filed by the Path ESOP, "[c]ertain administrative functions of [the Path ESOP] are performed by officers and directors of [Path Holdings]";

- Path Holdings pays the fees of GreatBanc, the Trustee of the Path ESOP;

- In October 2016, based upon a purportedly independent appraisal performed by an unidentified firm that was retained by GreatBanc, as the Trustee for the Path ESOP, the Path ESOP agreed to pay $243,500,000 to acquire the common stock of Path Holdings, which presumably was held and sold to the Path ESOP by Lewin; and

- Based upon valuations of the Path Holdings common stock performed for the benefit of the Path ESOP by one or more independent appraisal firms retained by GreatBanc, the value of those shares inexplicably dropped to $35.1 million as of December 31, 2016, which was less than 90 days after the Path ESOP had agreed to pay $243,500,000 for the shares, and to $5.5 million as of December 31, 2017, which was less than 12 months later.

(*Id.*) Furthermore, it appears the employees Defendants used to carry out the scheme at Path Medical were actually employees of Path Holdings. For example, annual reports filed for the Path ESOP report more than 150 employees of Path Holdings were participants in the Path ESOP. (*See, e.g.*, Ex. 1, 2016 Form 5500, Part II, Item 6.)

Because the only asset of Path Holdings was its ownership of Path Medical, the logical inference is the employees of Path Holdings were the individuals who were working for Path Medical. In fact, Path Holdings holds itself out as the employer of Path Medical's employees, provides those employees with the "Path Medical Center Holdings, Inc.'s Employee Handbook," and requires those employees to review and acknowledge their understanding of the Employee Handbook. (ECF 86-1, 23, 25-26.) The Director of Human Resources of Path Holdings appears to administer discipline for employees who provide services to Path Medical, and receives complaints filed against employees for issues associated with Path Medical's patient records and misuse of its confidential information.[5]

Based on these facts, it is obvious the relationships, activities, and interests of Path Medical, Path Holdings, and the Path ESOP are inextricably intertwined. Path Holdings and the Path ESOP were formed to enable Lewin to transfer his legal ownership of Path Medical to Path Holdings and the Path ESOP for up to $243,500,000, while at the same time maintaining absolute control over Path Medical and the ability to carry on the fraud scheme through his roles as CEO and a Director of Path Holdings. (ECF 77 ¶¶ 41-48.) After Lewin was purportedly removed from his roles with Path Medical and Path Holdings, it is currently not known to Plaintiffs what extent he continued to be involved in or benefited from their affairs. However, both

---

[5] (*See, e.g.*, ECF 86-1, at Req. Nos. 23, 25-26 (requesting Path Holdings produce a copy of the employee handbook and complaints or written notices concerning individual defendants or patients at issue that were submitted to the Director of Human Resources of Path Holdings).)

before and after Lewin was replaced in his roles with Path Medical and Path Holdings, there was a substantial, if not complete, identity of interest among the other individual directors and officers of both entities. (*Id.* ¶ 44.) In short, during the entire period of the scheme alleged in the AC, Path Holdings owned Path Medical, had the same officers and directors of Path Medical, was located at the same addresses as Path Medical, employed the people who worked at Path Medical and were used to carry out the scheme, and its financial performance was completely dependent on Path Medical. At the same time, the Path ESOP wholly owned Path Holdings and the Directors of Path Holdings determined the members of the ESOP Committee responsible for administering the Path ESOP. Based on these facts, and the highly suspicious circumstances described above, the information sought from and about Path Holdings, the Path ESOP, and the nature and extent of their involvement with Path Medical and the alleged scheme, is absolutely relevant within the meaning of Rules 26(b)(1) and 45.[6] *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare*, 2019 WL

---

[6] Defendants' authority is readily distinguishable. (Mot. 10, citing *Roberts* and *MetroPCS* decisions.) The plaintiff in *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358 (8th Cir. 2003) brought suit against a dealership and individuals in connection with a conspiracy to roll-back the odometers on two vehicles the plaintiff had purchased from the defendant dealership. *Id.* at 359. The *Roberts* court affirmed the district court's decision to quash the plaintiff's second subpoena to a non-party dealership. *Id.* at 359. The court observed the plaintiff already received much of the information in response to her first set of subpoenas to the non-party dealership and, importantly, the plaintiff conceded "neither of the vehicles at issue were sold through [the non-party]." *Id.* at 360. Thus, under the circumstances, it was clear the plaintiff was not seeking to obtain discovery related to her claims, but other possible claims against other parties. Likewise, in *MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018), the court quashed the subpoena because there was "nothing to suggest" the non-party had conspired with the defendant or had any information relevant to the claims and defenses in the pending action. *Id.* at 627. The court noted a party seeking discovery was "not required to be able to plead a claim against [the non-party] under Rule 11 standards to be able to take a deposition to explore what she knows that is relevant to the existing claims and defenses in the [] action." *Id.* However, the court concluded it would be burdensome for the non-party before it to sit for a deposition when the "only basis for

4686352, at *6 (N.D. Ala. Feb. 12, 2019) (denying the defendants' motion for protective order because they consistently shielded operations through various entities as part of a scheme to submit unlawful bills to insurance companies); *Geico v. Mayzenberg*, 2018 WL 10517074, at *3 (E.D.N.Y. June 29, 2018) (finding subpoenas seeking documents relating to the non-parties' relationships with various corporations belonging to a named defendant were proper); *Shanshan Shao v. Beta Pharma, Inc.*, 2017 WL 1752932, at *3 (D. Conn. May 4, 2017) (granting the plaintiffs' motion to enforce non-party subpoenas to the defendants' accountants because the subpoenas, which requested "complete files" regarding various non-party entities, sought records "relevant to an alter ego/corporate veil analysis, and, in particular, to whether the dominated entity observed corporate formalities"); *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 3767581, at *1 (N.D. Ohio Sept. 24, 2010) (finding subpoena sought relevant information where the discovery could show defendant made fraudulent transfers to various non-parties).

**B.    The Amount In Controversy And The Importance Of The Issues At Stake Are High.**

The amount in controversy is substantial, namely more than $17 million in damages incurred by Plaintiffs, which will be trebled to more than $51 million if Plaintiffs prevail on their RICO counts. (ECF 77 ¶¶ 184-207.) Furthermore, the Subpoenas seek critically important information. As discussed above, it is

---

insisting that she do so is a witness's testimony that she may be involved in a scheme that the witness has apparently never suggested involves the defendants in the [pending] action." *Id.* at 628.

indisputable: (1) Path Holdings wholly owned Path Medical; (2) the Path ESOP wholly owned Path Holdings; (3) Path Holdings and Path Medical shared officers, directors, employees, and addresses; and (4) the financial success of Path Holdings and the Path ESOP depended entirely on the financial success of Path Medical which, in turn, depended on the success of the fraud scheme alleged in the AC. Given these facts, the Subpoenas seek discovery to determine: (1) whether Lewin and others established Path Holdings and the Path ESOP through sham transactions for fraudulent purposes;[7] (2) whether Path Holdings and the Path ESOP followed corporate formalities and should be treated as legally distinct from Path Medical, or were corporate instrumentalities Lewin and others created to carry on the fraud;[8] and (3) the extent to which Path Holdings, the Path ESOP, and individuals associated with them participated in, benefited from, and were motivated to commit the fraud scheme alleged in the AC.[9] *See, e.g.*, *NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp.*, LLC, 2011 WL 6752488, at \*2-3 (M.D. Fla. Dec. 22, 2011) (denying motion for protective order because subpoenas to non-party entities "may lead to the discovery of admissible

---

[7] (*See, e.g.*, ECF 86-2 and 86-3, at Req. Nos. 1-10, 15-17 (requesting Path ESOP plan agreement, note agreements, stock purchase agreement, transaction documents, refinancing and renegotiation agreements, independent appraisers' valuation reports, Path ESOP Form 5500s, IRS determination letters, and communications regarding these issues); ECF 86-1 at Req. Nos. 7, 9-20, 24, 27 (similar).)

[8] (*See, e.g.*, ECF 86-2 and 86-3, at Req. Nos. 6-7, 11-14, 17 (requesting meeting minutes, exercise of voting rights, contractual agreements, and communications regarding these issues); ECF 86-1 at Req. Nos. 1-3, 9-15, 27 (requesting from Path Holdings meeting minutes, tax returns, ownership/membership interests, stock ledgers, transfer of funds, and communications regarding the issues).)

[9] (*See, e.g.*, ECF 86-2 and 86-3, at Req. Nos. 4, 13-14 (documents reflecting transfer of proceeds, contractual arrangements among Defendants and non-parties); ECF 86-1 at Req. Nos. 1-8, 21-23 (requesting from Path Holdings tax returns, contractual arrangements with, and payments made to or received, from Defendants and other non-parties).)

evidence regarding whether [the defendant] used the non-party companies to dominate and control [the co-defendant entity] and/or whether [the defendant] used [the co-defendant entity] fraudulently or for an improper purpose"); *State Farm v. Fayda*, 2016 WL 4530890, at *3 (S.D.N.Y. Mar. 24, 2016) (finding the individual defendants' motives for participating in a fraudulent medical billing scheme were relevant and ordered the production of their financial records); *State Farm v. McGee*, 2012 WL 8281725, at *2-3 (E.D.N.Y. Feb. 21, 2012) (compelling the production of documents relevant to motive, profits from the scheme, financial relationships among defendants, and credibility of defendants); *Allstate Ins. Co. v. Etienne*, 2010 WL 11626966, at *3 (E.D.N.Y. Apr. 30, 2010) (finding non-party subpoenas sought relevant information that could "provide insight into the nature and extent of the relationships between the participants in the alleged scheme, the scope and nature of any conspiracy, and the extent to which defendants profited from the arrangement"). These issues are discoverable and necessary to Plaintiffs' ability to prove the structure through which the scheme was conducted, the identity, roles, and relationships of the individuals and entities through which the scheme was conducted, and the extent to which specific individuals and entities were enriched by the scheme, knowingly or not. *See, e.g.*, *State Farm v. Pointe Physical Therapy, LLC*, 2017 WL 5176403, at *2 (E.D. Mich. Nov. 3, 2017) (granting motion to compel non-party's financial records in RICO case where such records "may reveal financial inter-connectedness among defendants and third-parties, including the identity of those who profited from the fraud scheme"); *State Farm v. Warren Chiropractic & Rehab Clinic, PC*, 2015 WL 4094115, at *6 (E.D. Mich.

July 7, 2015) (permitting financial discovery in RICO case into entities owned by medical-provider defendant because such documents "may be relevant to establishing the financial relationships among [the clinic and its owner], and other individuals and/or businesses that [the defendant] owned or maintained that might have been part of the scheme"); *Sirmon v. Wyndham Vacation Resorts*, 2012 WL 4341819, at *7 (N.D. Ala. Sept. 18, 2012) (where the plaintiffs "alleged facts that could indicate a conspiracy among the various corporate entities or other third parties" and "asserted that [d]efendants' company structure is 'extremely opaque' . . . and involves a corporate structure that 'embodies dozens of interrelated subsidiaries, trusts, non-profit associations, etc.[,]' [the p]laintiffs should be allowed an opportunity to use discovery to determine the scope of the corporate relationships and to conclude whether their conspiracy claim is with or without merit"); *Wendruck v. Hartford Life*, 2005 WL 8156448, at *3 (C.D. Cal. Dec. 12, 2005) (noting the exact nature of a RICO enterprise is a matter for discovery).

C.     **The Information Sought Should Be In The Exclusive Control Of The Three Non-Parties Who Have Been Subpoenaed And Cannot Be Obtained From Any Other Known Source.**

The Subpoenas were directed to: (1) Path Holdings; (2) GreatBanc, which was the Trustee for the Path ESOP and, as such, would, *inter alia*, maintain relevant records sought through the Subpoenas; and (3) Keefe, the independent auditor for the Path ESOP, which was responsible for (a) preparing and signing annual reports filed by the Path ESOP addressing the circumstances and terms of the financial transactions engaged in by the Path ESOP with Path Holdings and Lewin, including the initial

acquisition by the Path ESOP of the common stock of Path Holdings in exchange for

promissory notes totaling $243,500,000, (b) preparing the audited financial statements

upon which a purportedly independent appraisal firm relied upon in determining the

value of the common stock of Path Holdings was $243,500,00 when it was acquired

by the Path ESOP for that amount in October 2016, but had a value of only $5.5

million less than 15 months later, and (c) reviewing the documents and information

regarding these transactions and valuations, and communicating with the individuals

who were involved in them. These three entities should be in exclusive possession of

the documents sought from them by the Subpoenas by virtue of their roles and

responsibilities with respect to these transactions, and Plaintiffs are not aware of any

other source for such documents.[10]

**D.  The Non-Parties Have The Resources To Produce The Subpoenaed Documents, And Neither They Nor The Defendants Have Offered Any Specific Evidence To The Contrary.**

Although Defendants generally contend the Subpoenas are overbroad and unduly

burdensome, neither they nor, perhaps more importantly, the entities who received the

Subpoenas, have provided any specific support which would be necessary to carry their

burden. On that basis alone, the Court should conclude the Non-Parties have the

resources to produce the documents responsive to the Subpoenas and it would not be

---

[10] *See Redding v. Prosight Specialty Mgmt. Co., Inc.*, 2014 WL 12783297, at *2 (D. Mont. Feb. 3, 2014) (denying motion to quash subpoena issued to the plaintiff's counsel because the plaintiff's counsel "possesse[d] crucial information that [the d]efendants require[d] to defend the case and critical facts that [were] not available from another source"); *Halawani v. Wolfenbarger*, 2008 WL 5188813, at *5 (E.D. Mich. Dec. 10, 2008) (granting a motion to compel document production in response to subpoena because, among other things, the requested "information [was] within the exclusive possession of the [non-party] and not attainable by another source").

unduly burdensome for them to do so.[11] *See, e.g.*, *John v. Keller Williams Realty, Inc.*, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19, 2019) (observing claims of undue burden "should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome," but rejecting the challenge to non-party subpoenas because the defendant failed to establish any undue burden upon it, and the third parties have not challenged the subpoenas on the ground they impose an undue burden upon them); *Tropical Mk'tg & Consul., LLC v. Glock, Inc.*, 2012 WL 5431002, *3 (M.D. Fla. Nov. 7, 2012) (overruling objection of undue burden because movant failed to, *inter alia*, submit "affidavits or other proof to support this assertion").

Beyond that, however, the categories of documents called for by the Subpoenas are very narrowly tailored (*e.g.*, the ESOP Plan, two promissory notes, and the stock purchase agreement used by the Path ESOP to acquire the shares of Path Holdings, tax returns to show the financial relationships among and flowing through Path Medical, Path Holdings, and the Path ESOP, contracts with specific individuals and entities,[12] communications with specific individuals regarding specific topics, minutes of meetings and other corporate formalities[13]) and should be readily available to Path

---

[11] *See infra* Section II.E.

[12] For example, the Subpoenas seek contracts involving Kevin Johnson, who was a Board Member of Path Medical and appears to have entered into a contract with Defendant Roger Ramos, M.D. ("Ramos") pursuant to which Ramos performed medical director services for Path Medical. In fact, Ramos claims he "contracted for medical director services with Kevin Johnson" and Kevin Johnson paid him. (Ex. 2, Interrog. Resp. Nos. 1-2.) Because Johnson, whose only known role was as a Board Member of Path Medical, paid Ramos to perform services for Path Medical that the AC alleges were fraudulent and unlawful, Plaintiffs have sought information related to this unusual arrangement, as well as other contracts involving Johnson, Defendants, and Path Holdings.

[13] *See supra* n. 3-6. Moreover, to the extent the Provider Defendants argue tax returns and other financial records are not discoverable from Defendants in a complex RICO case with a Protective

Holdings, GreatBanc, as the Trustee for the Path ESOP, and Keefe, for production. *See, e.g.*, *Arthrex, Inc. v. Parcus Med., LLC*, 2012 WL 5382050, at *4 (M.D. Fla. Nov. 1, 2012) (finding document requests were "narrowly tailored" and "specifically limited" to specific contracts, and therefore the requests were not overly broad, unduly burdensome, or oppressive); *Allied Aviation, LLC v. ASIG Holdings Corp.*, 2012 WL 13137013, at *2 (M.D. Fla. May 1, 2012) (finding a "proposed subpoena [was] not unduly intrusive or burdensome because it [was] narrowly tailored to request" relevant documents); *Bujanowski v. Kocontes*, 2008 WL 11447927, at *2 (M.D. Fla. June 11, 2008) (overruling the defendant's argument a non-party subpoena was overbroad and unduly burdensome and finding the subpoena was narrowly tailored to seek relevant information). Neither Defendants nor the Non-Parties provide any specific evidence to the contrary.

**E.     The Non-Party Subpoenas Are Not Unduly Burdensome, And Any Burden And Expense Of Complying With The Subpoenas Does Not Outweigh The Benefit Of Enforcing Compliance.**

Defendants do not argue the burden and expense for the Non-Parties to comply with the Subpoenas outweighs the benefit of the discovery. Nonetheless, Defendants argue the Subpoenas are unduly burdensome because: (1) Path Holdings, GreatBanc, and Keefe are non-parties, which automatically weighs in favor of finding an undue

---

Order governing the production of confidential information, they are wrong. *See, e.g., McGee*, 2012 WL 8281725, at *2-4 (compelling physician to produce bank records, tax returns, and general ledgers for his business because such documents are relevant to motive, profits from scheme, financial relationships among defendants, and credibility of defendants); *State Farm v. CPT Med. Servs.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005) (ordering production of tax returns, general ledgers, and bank records in RICO action).

burden; (2) the requests are overbroad and seek irrelevant information Defendants themselves could supposedly produce; and (3) the Subpoenas seek information relating to the period before the fraudulent bills at issue were submitted to Plaintiffs. Defendants are wrong on all accounts.

As noted above, Defendants fail to satisfy their burden to establish with "particular and specific demonstration of fact" that compliance with the Subpoenas would result in an undue burden on the Non-Parties. *See Bernath*, 2017 WL 11025770, at *3; *Doe v. Rollins Coll.*, 2019 WL 11703980, at *1 (M.D. Fla. Feb. 27, 2019) ("The responding party 'must show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitting detailed affidavits or other evidence establishing the undue burden'"); *Eastwood Enters., LLC v. Farha*, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010) (rejecting non-parties' claims of undue burden that were not supported by affidavits or any other evidence, and were based on conclusory assertions). Defendants also overstate the significance of Path Holdings, GreatBanc, and Keefe's status as non-parties, arguing it somehow lightens Defendants' burden to establish good cause for issuing the protective order. (Mot. 17-18 (citing *Cytodyne Tech., Inc. v. Biogenic Tech., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003).) The case upon which Defendants rely involved a non-party's motion to quash the subpoena, whereas here Defendants argue the Subpoenas purportedly impose an undue burden on non-parties not present before the Court. In any event, while some courts consider the non-parties' status, that alone does not and cannot support a finding of undue burden because it would render all non-party discovery under Rule 45 impermissible.

With respect to Defendants' arguments regarding relevance and breadth, the Subpoenas seek information relevant to the claims at issue, and the requests are narrowly tailored to specific documents (*e.g.*, plan documents, agreements, meeting minutes, and communications with specific individuals regarding the same) that should be readily available to the Non-Parties, as discussed above. *See Arthrex*, 2012 WL 5382050, at *4; *Bujanowski*, 2008 WL 11447927, at *2. Defendants nonetheless argue, without any authority, the proponent of discovery must show both a "compelling need" for the requested documents and that the information is "material" for "successfully prov[ing]" the claims at issue. (Mot. 18.) But demonstrating a "compelling need" or proving materiality before discovery is conducted is not the standard that governs here. *See, e.g.*, *Myers v. Porter*, 2011 WL 13295468, at *2 (M.D. Fla. Jan. 27, 2011); *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 2007 WL 9701950, at *3-6 (S.D. Fla. Apr. 6, 2007). The Subpoenas are proper under Rule 26(b)(1) because they seek information that "reasonably could lead to" matter that bears on issues that are or may be tried in the case. *See Eres*, 2018 WL 11344801, at *1. As explained above, Plaintiffs need the discovery because it, *inter alia*, is relevant to identify, or could lead to information that bears upon, the individuals and entities who have knowledge about, participated in, or benefited from the alleged scheme, and the scope and extent of Defendants' conspiracy, among other issues.

In addition, although Defendants contend "the majority of documents [sought by the Subpoenas] could be obtained from Defendants" (Mot. 18), they fail to explain exactly which documents could be obtained from Defendants. (Mot. 18.) Given the

paucity of information produced by Defendants to date, their vague assertions fail to make clear which specific request seeks information in Defendants' possession and what, if anything, they intend to produce. In any event, while Plaintiffs will confer in good faith with Defendants and the Non-Parties to avoid truly duplicative productions, courts have repeatedly held plaintiffs alleging fraud and RICO violations may obtain discovery from non-parties to, among other things, test the completeness of the defendants' discovery responses. *State Farm v. Elite Health Centers, Inc.*, 2019 WL 2754653, at *13 (E.D. Mich. July 2, 2019) ("parties are entitled to seek the same evidence from different sources within the same case in order to test veracity and completeness and to uncover contradictory information"), objections overruled, 2019 WL 4017163 (E.D. Mich. Aug. 26, 2019); *State Farm v. Physiomatrix, Inc.*, 2013 WL 10936871, at *11 (E.D. Mich. Nov. 26, 2013) (finding "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before . . . a non-party"); *Med. Tech., Inc. v. Breg, Inc.*, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010) (subpoena was appropriate "not only to supplement [the opposing party's] production but also to test the veracity of [the opposing party's] assertions that they have produced all the documents they are required to produce").

Last, with respect to the period covered by the Subpoena, Defendants argue because the AC seeks damages based on fraudulent bills for medically unnecessary and unlawful services submitted "from at least January 2017 through the present,"

Plaintiffs are precluded from seeking any information from non-parties that predates this period. (Mot. 4, 19.) But Defendants' own authority, *Polycarpe*, recognizes a party is permitted to seek discovery into a reasonable period before the specific matters giving rise to the claims at issue. *Polycarpe, Inc.*, 2017 WL 2257571, at *5 (concluding "the relevant period" begins a reasonable length of time before the defendant began to service the plaintiff's mortgage because it was relevant to the issue of the defendant's knowledge). Numerous other courts have reached similar conclusions. *See, e.g.*, *MedCity Rehab. v. State Farm*, 2013 WL 1898374, at *2 (E.D. Mich. May 7, 2013), *on reconsideration in part*, 2013 WL 4029052 (E.D. Mich. Aug. 7, 2013) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action").[14] In short, Defendants fail to carry their burden to show the Subpoenas impose any undue burden on the Non-Parties, and the benefit of the discovery far outweighs any of the normal burdens and expenses associated with litigation. Accordingly, in light of the strong preference for "full discovery whenever possible," *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985), Defendants' Motion should be denied.

## III.   CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion.

---

[14] *See also Physiomatrix*, 2013 WL 10572229, at *3 (allowing subpoena discovery "prior to the alleged submission of fraudulent claims" because it was "relevant to the origins of the scheme and [the d]efendants' financial condition at the time they allegedly entered into the conspiracy"); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 63 (D.N.J. 1985) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action").

Dated: July 29, 2021

Ross O. Silverman
ross.silverman@katten.com
(admitted *pro hac vice*)
Eric T. Gortner
eric.gortner@katten.com
(admitted *pro hac vice*)
John W. Reale
john.reale@katten.com
(admitted *pro hac vice*)
John T. Lepore
john.lepore@katten.com
(admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

By: */s/ David I. Spector*

David I. Spector
Fla. Bar No. 086540
david.spector@hklaw.com
Nicholas Purvis
Fla. Bar No. 054268
nicholas.purvis@hklaw.com
Matthew Detzel
Fla. Bar No. 050604
matthew.detzel@hklaw.com
Holland & Knight LLP
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2021, the foregoing document will be served on all counsel of record via CM/ECF.

By: *John T. Lepore*
*Attorney for Plaintiffs*