UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |  |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 8:20-CV-02428-VMC-TGW |
| ROBERT LEWIN, D.C., *et al.*, | ) ) | |
| Defendants. | ) | |

## DEFENDANTS ROBERT LEWIN, D.C.'S, 1-800-411-PAIN REFERRAL SERVICE, LLC'S, AND PATH MEDICAL LLC'S MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' NON-PARTY SUBPOENA TO KEVIN JOHNSON

Pursuant to Federal Rule of Civil Procedure 26(c) and the Court's inherent authority, Defendants Robert Lewin ("Lewin"), 1-800-411-PAIN Referral Service, LLC ("411-PAIN"), and Path Medical, LLC ("Path Medical") (collectively, "Path Defendants"), respectfully move for a protective order requiring Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's (collectively, "Plaintiffs" or "State Farm") to withdraw their irrelevant and overbroad subpoena *duces tecum* to non-party Kevin Johnson[1] ("Johnson Subpoena"). A true and correct copy of the Subpoena is attached as Exhibit 1 ("Subpoena").

---

[1] Johnson was a former board member of non-defendant Path Holdings, with his last term ending four years ago.

On July 15, 2021, the Path Defendants filed their Motion for a Protective Order regarding three subpoenas that Plaintiffs issued to non-parties Path Medical Center Holdings ("Path Holdings"), GreatBanc Trust Company ("GreatBanc"), and Keefe, McCullough & Co., LLP ("Keefe"). (Dkt. # 86.) The remaining Defendants filed a parallel motion the following day. (Dkt. # 87). On July 29, 2021, Plaintiffs filed their Opposition to both Motions. (Dkt. # 93.) The Court set a hearing on the Motions for August 20, 2021. (Dkt. # 94.)

The Johnson Subpoena largely tracks the subpoenas at issue in the Defendants' pending Motions for a Protective Order, and Plaintiffs' Opposition therefore addresses issues and requests at issue in this instant Motion. Plaintiffs' Opposition only underscores Plaintiffs' improper use of the subpoena power. And, despite being fully apprised that it is improper to use subpoena power to issue oppressive, annoying, irrelevant, entirely duplicative, and extremely burdensome subpoenas to third-parties—particularly, for the purpose of developing a case against a non-party—State Farm appears dead set on pushing forward without even a feigned attempt to narrow its requests or minimize burden. It is clear that, absent judicial intervention, State Farm will continue to abuse third-party discovery procedures.

Indeed, Plaintiffs' Opposition fails to defend the reasonability or relevance of any particular request. Rather, Plaintiffs merely assert that all of their requests are proper because Path Holdings' "relationships, activities, and interests . . . are inextricably intertwined with those of Path Medical and Lewin . . . ." (Dkt. # 93, PageID 1997.) Plaintiffs fail, however, to explain why discovery into that relationship

2

would assist Plaintiffs in its case against any of the existing Defendants or even what aspects of that relationship are material. It is telling, if not dispositive, that Plaintiffs' 20 page Opposition fails to cite a single element for one of their nine causes of action. To the extent Plaintiffs were able to conjure up some argument for relevance, the cited relevance is minimal and dramatically outweighed by the clear improper purpose of the subpoenas and Plaintiffs' wholesale refusal to reasonably narrow the requests.

On October 16, 2020, State Farm filed this action against dismissed party Path Holdings Medical Center Holdings, Inc. ("Path Medical"), as well as current parties Lewin, 411-PAIN, Path Medical, and nearly two-dozen individual doctors. (*See* Dkt. # 1.) On April 20, 2021, the Court entered an order granting Defendants' motion to dismiss in part, holding, among other things, that State Farm failed to adequately plead any claim against Path Holdings, Path Medical's parent company. (Dkt. # 73, pp. 16–17.) The Court held the dismissal was without prejudice as to Path Holdings and gave State Farm until May 4, 2021 to file an amended complaint seeking to re-plead claims against Path Holdings. (*Id.* at 40–41.)

On May 18, 2021, after State Farm sought and was granted a two-week extension, State Farm filed its First Amended Complaint ("FAC"). (Dkt. # 77.) Although the Court had permitted State Farm another opportunity, State Farm did ***not*** name Path Holdings as a Defendant in the FAC. It did, however, add inflammatory allegations about Path Holdings' prior financial and ownership structure that are irrelevant to the remaining allegations (unless State Farm is using this case's discovery to bring other lawsuits against other defendants). After subsequently serving three

duplicative subpoenas on non-parties Path Holdings, GreatBanc, and Keefe in furtherance of its fishing expedition, State Farm has now issued another, similarly overbroad, subpoena seeking irrelevant documents—to Kevin Johnson, an individual who has had no connection to former defendant Path Holdings since 2017. This is improper for the reasons already stated in the Path Defendant's pending Motion for a Protective Order. (*See* Dkt. # 86.) The Path Defendants incorporate the arguments made in the Motion herein by reference. (*Compare* Fed. R. Civ. P. 7(b)(2) ("The rules governing . . . matters of form in pleadings apply to motions and other papers.") *with* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").)

Despite State Farm's existing claims not including any cause of action against Path Holdings or Johnson, or any assertion that Path Holdings or Johnson engaged in fraudulent billing or unlawful solicitations or referrals, Plaintiffs seek an enormous volume of documents from Johnson concerning various irrelevant topics. For example, Plaintiffs seek:

> 5. All federal tax Documents for the tax years 2016 through the present, including Form 1099s, K-1s, and Form W-2s, related to any services You provided for or on behalf of Path Medical, LLC, Path Medical Center Holdings, Inc., or [411-PAIN].

> 6. All Documents reflecting Payments You made to or You received from any Defendant, or Path Medical Center Holdings, Inc., or the owners, agents, officers, or employees of any corporate Defendant or Path Medical Center Holdings, Inc.

(Ex. 1.) There is no conceivable argument for why a non-party's tax returns or income are relevant to this case. Moreover, Request No. 6 inexplicably seeks all documents

"reflecting" payments between Johnson and Path Holdings—two non-parties. As another example, State Farm will be hard pressed to justify Request No. 21, which asks for a copy of non-party Johnson's "resume and/or curriculum vitae." (Ex. 1.)

Additionally, while the allegations in the FAC concern only no-fault claims after January 1, *2017*, Plaintiffs seek documents from Johnson starting in January 1, *2016*, specifically, all documents from a series of transactions in 2016 having nothing to do with this case. (Ex. 1, Instruction # 5.)

In addition, the Subpoena is drafted so broadly that it encompasses more than 100 requests seeking volumes of irrelevant documents, which is clearly unduly burdensome. For example, Request No. 20 asks Johnson to produce all "Communications between You and any of the Persons identified in subparagraphs (a)(1)-(8) below regarding the topics described in subparagraphs (b)(1)-(12) below," then lists compound requests for 20 categories of communications. (*See* Ex. 1, Req. No. 20.) In what it styles as a single request, State Farm seeks all documents and communications that are even tangentially related to 8 different *categories* of persons/entities and 12 different broad *categories* of information. In other words, this request effectively functions as 96 different requests, none of which is reasonably targeted at obtaining information relevant to the FAC filed against completely different persons/entities.

On the face of the Johnson Subpoena, it is clear Plaintiffs are seeking irrelevant documents in a futile attempt to resurrect their claims against Path Holdings and, *further*, seek to develop a case against Johnson without any basis to do so. To remedy

the annoying, oppressive, burdensome, and expensive subpoena, the Court should enter a protective order requiring Plaintiffs to withdraw and rescind the Johnson Subpoena. In the alternative, Plaintiffs request that the Court enter an order substantially narrowing the scope of the requests.

## ARGUMENT

### I.    Standard

"[A] court may, for good cause shown, issue an order to protect any person from annoyance, embarrassment, oppression or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).   "A party has standing to challenge a non-party subpoena if the party alleges a 'personal right or privilege' with respect to the subpoena or if a subpoena seeks irrelevant information." *McCoy v. GEICO Gen. Ins. Co.*, 2019 WL 5391104, at *2 (M.D. Fla. Aug. 14, 2019).   The Court also has the inherent authority to control discovery under Rule 26. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1310 (11th Cir. 2011).

"The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Molina v. Hunter*, 15-CV-00076, 2015 WL 13805179, *2 (W.D. Tex. Nov. 16, 2016).   "[S]peculative or attenuated connection between materials sought and claims or defenses is insufficient to establish relevance . . . ." *Lath v. Manchester Pol. Dep't*, 16-cv-534, 2017 WL 11509790, at *2 (D.N.H. Nov. 28, 2017).

## II.    The Requested Documents Are Not Relevant

### A.    State Farm issued the Johnson Subpoena for the improper purpose of developing claims against Path Holdings and Johnson.

The facially irrelevant and vexatious nature of the Johnson Subpoena shows that it was served to harass, annoy, and oppress Johnson, in furtherance of a fishing expedition to identify further defendants.  Again, State Farm cannot use a subpoena to develop new claims, against new parties, not already asserted in the operative pleading. *See Polycarpe v. Seterus, Inc.,* No. 6:16–cv–1606, 2017 WL 2257571, at *4 (M.D. Fla. May 23, 2017) (parties have "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").[2]  Plaintiffs should not be permitted to use subpoena power to forage for potential new defendants.  *See Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003) (subpoena was improper where the plaintiff sought "not only information to buttress her action as it presently stands, but also additional defendants or plaintiffs to join in her suit");[3] *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (a "subpoena may only properly seek testimony and documents that are relevant to any party's claim or

---

[2] Plaintiffs argue that *Polycarpe* is favorable to Plaintiffs because the court in *Polycarpe* permitted discovery where it was relevant to "defendant's knowledge of wrongdoing, and to determine damages." (Dkt. # 93, PageID 1997 n 4.)  However, Plaintiffs' argument misses the mark.  Unlike in *Polycarpe*, Plaintiffs are seeking documents to show a *non-party's* potential knowledge of wrongdoing, which is facially irrelevant.  Additionally, Plaintiffs' damages claim in this case is based on particular and known charges. None of the requested documents would assist in the calculation of damages against the present defendants.

[3] Plaintiffs argue that *Roberts* is readily distinguishable. (Dkt. # 93, PageID 2001 n. 6.)  Incorrect. Plaintiffs acknowledge that in *Roberts*, "it was clear the plaintiff was not seeking to obtain discovery related to her claims, but other possible claims against other parties." (*Id.*)  That is exactly what is happening here.  For example, the fact that Plaintiffs are seeking Johnson's tax returns proves they are seeking to implicate Johnson as opposed to searching for evidence to support their existing case.

defense in that case. And a party may no more use third-party discovery to develop new claims or defenses that are not already identified in the pleadings than it may use discovery served on a party to find the claims themselves rather than to find support for properly pleaded claims.")[4]  For example, Request Nos. 1–4, 6, 8, 11, 14, and 17 relate to contracts and payments made between Johnson with Path Holdings, other nonparties, and Defendants from 2016 to present regardless of subject matter. These facially overbroad requests were clearly issued for the improper purpose of developing a case against Path Holdings, Johnson, and other nonparties.

In their Opposition to Defendants' other Motions for a Protective Order, Plaintiffs tellingly do not deny that the subpoenas were issued for the primary purpose of developing a case against non-parties.  Rather, Plaintiffs merely assert that they can get away with issuing a subpoena for an improper purpose if they can otherwise establish relevance.  (*See* Dkt. # 93, PageID 1997 n. 4 ("[I]f discovery related to the claims at issue yields new information that would support adding parties to existing counts or pleading new claims altogether, a party may seek leave to amend its pleadings.").)  However, Plaintiffs' argument misses the mark.  A party cannot issue a subpoena for an improper purpose and circumvent the federal rules through the guise

---

[4] Plaintiffs argue that *MetroPCS* is distinguishable because the court in *MetroPCS* concluded there was nothing to suggest that the non-party had been involved in the alleged scheme. (Dkt. # 93, PageID 2001 n. 6.)  However, just as in *MetroPCS*, there is no evidence to suggest that Johnson (or Path Holdings) was involved in any alleged scheme.  In fact, Johnson was not even mentioned in the FAC, and Plaintiffs were not able to adequately plead a claim against Path Holdings (under any theory).  If Plaintiffs had evidence that Johnson was a party to an alleged scheme, they would have named him as Defendant or presented such evidence in their Opposition.  And, if Path Holdings had any basis to show Path Holdings was involved in an alleged scheme, they would have been able to adequately plead a claim.  Plaintiffs' subpoenas are textbook fishing expeditions.

of relevance. *See* Fed. R. Civ. P. 26(g)(2)(B) (providing that an attorney's signature is a certification that the paper was "not interposed for *any* improper purpose" (emphasis added)); *cf. Bentley v. LCM Corp.*, No. 08–1017, 2009 WL 2600093, at *5 (W.D. La. Aug. 21, 2009) (sanctioning party for issuing a subpoena for improper purpose, including circumventing a court order).

Confusingly, Plaintiffs assert that the broad third-party discovery is justified because the allegations in the FAC are "consistent" with publically available information. (Dkt. # 93, PageID 1998). According to Plaintiffs, the *publically available information* "indisputably" shows:

- During the entire period of the fraud scheme at issue, Path Holdings owned 100% of the membership interests in Path Medical;

- During the entire period of the fraud scheme at issue, the Path ESOP owned 100% of the stock of Path Holdings;

- Path ESOP's sole asset is 100% of the common stock of Path Holdings;

- After selling his majority ownership interest in Path Medical to Path Holdings in October 2016 for up to $243,500,000, Lewin remained in his position as CEO and a Director of Path Medical through at least November 2018 and held the CEO and Director positions for Path Holdings during the same period;

- The individual succeeding Lewin as CEO of Path Holdings, Manuel Fernandez, assumed the role of CEO for Path Medical during the same period;

- The Chief Operating Officer, Vice President, and Chief Compliance Officer, and certain Directors of Path Holdings held the same positions with Path Medical during the same periods;

- Path Holdings and Path Medical shared the same principal business addresses;

- An ESOP Committee appointed by the Board of Directors of Path Holdings administer the Path ESOP (i.e., the Directors of Path Holdings, at least some of whom were also Directors of Path Medical, decide who the members of the ESOP Committee are, and that Committee administers the Path ESOP);

- According to annual reports filed by the Path ESOP, "[c]ertain administrative functions of [the Path ESOP] are performed by officers and directors of [Path Holdings]";

- Path Holdings pays the fees of GreatBanc, the Trustee of the Path ESOP;

- In October 2016, based upon a purportedly independent appraisal performed by an unidentified firm that was retained by GreatBanc, as the Trustee for the Path ESOP, the Path ESOP agreed to pay $243,500,000 to acquire the common stock of Path Holdings, which presumably was held and sold to the Path ESOP by Lewin; and

- Based upon valuations of the Path Holdings common stock performed for the benefit of the Path ESOP by one or more independent appraisal firms retained by GreatBanc, the value of those shares inexplicably dropped to $35.1 million as of December 31, 2016, which was less than 90 days after the Path ESOP had agreed to pay $243,500,000 for the shares, and to $5.5 million as of December 31, 2017, which was less than 12 months later.

(Dkt. # 93, PageID 1998–99.)

Plaintiffs do not explain why they need discovery on the question of ownership if "indisputable" and "publically available" information shows "[d]uring the entire period of the fraud scheme at issue, Path Holdings owned 100% of the membership interests in Path Medical" and "Path ESOP's sole asset is 100% of the common stock of Path Holdings." (*Id.*) Plaintiffs appear to have their questions about the ownership

structure answered. Nonetheless, and putting aside ownership, Plaintiffs never explain why information about the Employee Stock Ownership Plan[5] ("ESOP") is relevant to their claim that the existing Defendants implemented a predetermined protocol or unlawfully solicited patients. In particular, Plaintiffs fail to identify any reason that the ESOP's financial information would be relevant to this case.

Even assuming that Plaintiffs' allegations were true (which they are not), Path Medical and the ESOP's alleged financial gain is not probative of whether the existing Defendants committed the alleged acts, and the potential damages owed by Defendants to Plaintiffs is in no way dependent on whether a non-party parent company might have financially benefited from the alleged fraud. Even if it were relevant (which it is not), Plaintiffs' requests are not narrowly targeted to identify potential financial gain. To the contrary, Plaintiffs could make that determination simply by obtaining documents showing payments made by Defendants to Path Holdings. Instead, Plaintiffs are seeking virtually every document imaginable in the hope that they can make a case against non-parties. Indeed, Plaintiffs' Opposition does not even deny the primary purpose of their subpoenas are to search for new defendants.

**B.    The Johnson Subpoena Should Be Rescinded Because it Seeks Irrelevant and Oppressive Information Well Outside the Scope of Permissible Discovery.**

In addition to the Johnson Subpoena's impermissible purpose of searching for

---

[5] An ESOP is an employee benefit plan that makes employees, who are eligible to participate in the plan, beneficiaries under a trust that holds ownership in the subject company.

new defendants, Plaintiffs also cannot meet their burden to establish relevance. "[P]arties may not engage in a 'fishing expedition' to obtain evidence to support their claims or defenses." *Rodgers v. Herbalife Int'l of Am., Inc.*, No. 8:19-mc-115, 2020 WL 263667 at *1 (M.D. Fla. Jan. 17, 2020) (citing *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006)); *see also Fox v. Lake Erie Coll. of Osteopathic Med.*, No. 8:19-cv-2795-T-60AAS, 2020 WL 7054554, at *2 (M.D. Fla. Dec. 2, 2020). Here, the Johnson Subpoena seeks a broad range of documents that are not relevant to any claim or defense in this case.[6] Plaintiffs' requests can be categorized into five groups of irrelevant documents: (1) Johnson's personal information; (2) contracts, services, and payments relating to Path Holdings, other nonparties, and Defendants; (3) all communications with or related to services performed for Defendants; (4) documents related to Johnson's historical ownership or membership interest in Path Holdings or the entity Defendants; and (5) documents relating to Path Holding's ownership interest in Path Medical.

The first category of requests—Johnson's personal information—clearly seeks irrelevant information. For example, Request Nos. 5 and 21 ask for:

> 5. All federal tax Documents for the tax years 2016 through the present, including Form 1099s, K-1s, and Form W-2s, related to any services You provided for or on behalf of Path Medical, LLC, Path Medical Center Holdings, Inc., or 1-800-411-PAIN Referral Service, LLC.

\* \* \*

---

[6] The only, remote, connection the subpoenas have to the allegations is to extraneous allegations relating to non-defendants and ancient history about the formation and business structure of Path Medical. (*See, e.g.,* Dkt. # 77, ¶¶ 18, 20, 41–48.) None of these paragraphs is germane to any of the counts State Farm has alleged, leaving one to wonder whether State Farm included these superfluous allegations to try to justify the third-party subpoenas it now has served.

21.     A copy of Your resume and/or curriculum vitae.

(Ex. 1.)     There is no conceivable argument why a non-party's tax returns and employment history is probative of Plaintiffs' (false) allegations that the named Defendants submitted insurance claims for allegedly medically unnecessary treatments and services or unlawfully solicited "patients." Indeed, Plaintiffs' Opposition fails to explain why tax returns of nonparties are relevant to the allegations relating to clinical treatments.

The second category of requests—contracts, services, and payments relating to Path Holdings, other nonparties, and Defendants—clearly seeks irrelevant information. For example, Request Nos. 1–4, 6, 8, 11, 14, and 17 ask for:

> 1.     Contracts, agreements, or arrangements between You and any Person that relate to the provision of medical, chiropractic, diagnostic imaging, medical director, billing, marketing, or any other services at Path Medical, LLC, and any Payments made pursuant to such contracts, agreements, or arrangements.
>
> 2.     Contracts, agreements, or arrangements between You and any Person to perform any service for Path Medical Center Holdings, Inc., 1-800-411-PAIN Referral Service, LLC, or the Plan, and any Payments made pursuant to such contracts, agreements, or arrangements.
>
> 3.     Contracts, agreements, or arrangements between You and Path Medical, LLC, Path Medical Center Holdings, Inc., 1-800-411-PAIN Referral Service, LLC, or the Plan, and any Payments made pursuant to such contracts, agreements, or arrangements.
>
> 4.     Documents sufficient to identify the services You provided for, or on behalf of, any Defendant, Path Medical Center Holdings, Inc., or the Plan.

13

* * *

6.　All Documents reflecting Payments You made to or You received from any Defendant, or Path Medical Center Holdings, Inc., or the owners, agents, officers, or employees of any corporate Defendant or Path Medical Center Holdings, Inc.

* * *

8.　Contracts, agreements, or arrangements You executed or signed on behalf of any Defendant.

* * *

11.　Contracts, agreements, or arrangements between Path Medical Investment Holdings, LLC and Path Medical, LLC, Path Medical Center Holdings, Inc., or the Plan, and any Payments made pursuant to such contracts, agreements, or arrangements.

* * *

14.　Contracts, agreements, or arrangements with Ramos, and any Payments made pursuant to such contracts, agreements, or arrangements.

* * *

17.　Contracts, agreements, or arrangements with Robert Lewin, D.C., Kimberly Russo, Joseph Russo, Sr., or Joseph Russo, Jr., and any Payments made pursuant to such contracts, agreements, or arrangements.

(Ex. 1.)

Non-party Johnson's years-old payments, contracts, and services with other non-parties are not probative as to whether any of the named Defendants implemented a "predetermined protocol" or unlawfully solicited "patients"—the core of Plaintiffs' allegations in this case. And, even if some of Johnson's contracts, payments, or

services arguably were relevant, Plaintiffs should have limited their requests by appropriate subject matter and to an appropriate and narrowly tailored time period.

The third category—all communications with or related to services performed for Defendants—also is not reasonably targeted. For example, Request No. 9 asks for all "[c]ommunications between You and any Person, including but not limited to emails and text messages, related to any services provided to . . . patients of Path Medical, LLC." (Ex. 1.)  This request covers *any* communications related to any service—regardless of whether these communications are even remotely related to the issues in this case. Request Nos. 12 and 13 are even broader.

Request No. 12 asks for all "Documents sufficient to identify the services Path Medical Investment Holdings, LLC provided for, or on behalf of, any Defendant, Path Medical Center Holdings, Inc., or the Plan."  There is no plausible argument for why services performed by non-party Path Medical Investment Holdings, LLC for nonparty Path Holdings and Path Holding's Employee Stock Ownership Plan ("ESOP") are relevant. Request No. 13 similarly requests all "[c]ommunications between You and Ramos, including but not limited to emails and text messages, relating to any service Ramos performed for or on behalf of You, Path Medical, LLC, or Path Medical Center Holdings, Inc." Indeed, there is no plausible argument as to why documents related to Ramos' services for non-party Path Holdings are relevant.[7]

---

[7] The closest Plaintiffs get to making an argument about the relevance of such requests is in a footnote, where Plaintiffs assert "[b]ecause Johnson, whose only known role was a Board Member of Path Medical, paid Ramos to perform services for Path Medical that the AC alleges were fraudulent and unlawful, Plaintiffs have sought information related to this unusual arrangement, as well as other contracts involving Johnson, Defendants, and Path Holdings." (Dkt. # 93, PageID 2007 n. 12.)

And, to the extent any services performed on behalf of Defendants arguably are relevant, Plaintiffs should have limited their requests to services by appropriate subject matter and time period instead of engaging in a broad fishing expedition.

The fourth category—documents related to Johnson's past ownership or membership interest in Path Holdings or the entity Defendants—also seeks irrelevant information. For example, Request No. 7 asks for:

> 7. All Documents evidencing Your ownership, investment, or membership interest in Path Medical, LLC, Path Medical Center Holdings, Inc., or 1-800-411-PAIN Referral Service, LLC.

(Ex. 1.) Non-party Johnson's ownership interest in non-party Path Holdings is facially irrelevant. And, Johnson's ownership interest in the entity Defendants is not probative of whether the named Defendants implemented a "predetermined protocol" or unlawfully solicited "patients."

The fifth category—documents related to Path Holding's ownership interest in Path Medical—also has no bearing on the issues State Farm itself pled in this lawsuit.

> 17. Documents reflecting the terms pursuant to which Robert Lewin, D.C. and Kimberly Russo transferred their ownership or membership interest in Path Medical, LLC to Path Medical Center Holdings, Inc.

> 18. Documents reflecting the terms pursuant to which the common stock and any other class of stock of Path Medical Center Holdings, Inc. was acquired by the Plan.

---

However, Plaintiffs fail to explain what this alleged "unusual arrangement" has to do with their claims against the existing Defendants.

(Ex. 1)  Path Holdings is not a defendant in this case, neither is Kimberly Russo.

Documents related to Path Holding's or Kimberly Russo's ownership in Path Medical,

or documents related thereto, are not relevant to whether the named Defendants

implemented a "predetermined protocol" or unlawfully solicited "patients."  This case

does not involve the ESOP, any actions relating to the ESOP, or any conduct the

ESOP took relating to State Farm (which is none).  Reading the Johnson Subpoena

and the subpoenas at issue in Path Medical's recently filed motion (DKT #86), one

would think this case is almost entirely about the ESOP or an ownership dispute.

However, the claims at issue involve (false) allegations of insurance fraud under

Florida's PIP law, which provides statutory funds to insureds' injured in automobile

accidents.  The third and fourth categories establish that the Johnson Subpoena (and

the other subpoenas seeking this same information) was issued for the improper

purpose of harassing and developing claims against Path Medical and other

nonparties.

    In their Opposition, Plaintiffs broadly assert that Path Holding's ownership

interest in Path Medical is relevant because "Path Holdings . . . relationships, activities

and interests . . . are inextricably intertwined with those of Path Medical and Lewin .

. . ." (Dkt. # 93, Page ID 1997.)  Notably, Plaintiffs rely almost entirely on criminal

cases regarding the admissibility of evidence at trial.  However, Plaintiffs fail to cite a

single case justifying such broad sweeping civil discovery on the basis that it may, in

the abstract, lead to the discovery of minimally relevant background information that

could just as easily be obtained from the parties in the case (if it is properly sought).

Moreover, the minimally relevant information Path Holdings seeks—such as who owns Path Medical—is in Plaintiffs' own words: "publicly available" and "indisputable." (Dkt. # 93, PageID 1998.) In other words, it is obvious that Plaintiffs are not truly seeking information to bolster their existing case but rather using that justification as a thinly veiled attempt to seek additional defendants.

## III. The Johnson Subpoena is Unreasonable, Oppressive, and Unduly Burdensome.

The Johnson Subpoena (as well as the other three subpoenas) violates the rational guidance proscribed by Rule 26(c), including that it is oppressive and unduly burdensome.

First, the Johnson Subpoena is oppressive. A subpoena is unreasonable and oppressive when it, as here, requests documents in a sweeping nature seeking every document touching a particular relationship. *See Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("Premium Service's requests for documents were sweeping in nature, covering every paper touching on any relationship between S&H and Walker-Scott or Scott personally."). Further, subpoenas seeking tax returns generally are considered unreasonable and oppressive as a matter of public policy unless the subpoenaing party has a compelling reason. *Id.* Here, there is no compelling reason. Further, the Johnson Subpoena requests several other categories of documents that are irrelevant and oppressive, such as Johnson's resume, all documents merely relating to the services he performed, and documents that could be obtained from parties to this case. *See Herra v. Easygates, LLC*, No. 11-cv-

2558, 2012 WL 5289663, at *3 (D. Kan. Oct. 23, 2012) (subpoena largely seeking documents that could be obtained from parties in the case was oppressive).

Second, the Johnson Subpoena is unduly burdensome. "In determining whether a subpoena is unduly burdensome, courts should consider the relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." *Friedman v. Dollar Thrifty Auto. Grp, Inc.*, No. 2:14–mc–25, 2015 WL 3484743, at *2 (M.D. Fla. June 2, 2015). And, Johnson's non-party status automatically weighs in favor of a finding of undue burden. *Cf. Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003). All factors weigh in favor of issuing a protective order.

## A. Factors 1, 2, and 5: Relevance, Need, and Nonparty Status

The relevance, need, and nonparty status factors strongly weigh in favor of issuing a protective order. First, as explained above, the documents sought are facially overbroad and irrelevant. Johnson's personal tax returns, for example, are not relevant. Second, Plaintiffs do not have a compelling need for the requested documents, as they are unnecessary to show the truth (or not) of the counts actually pled. Indeed, even if relevant (which they are not), the Subpoena seeks documents which clearly are not material. There is no plausible situation where State Farm would need documents related to Johnson's personal income or credentials to successfully prove its case about "patient" treatment against the remaining Defendants. Any documents that even approach the realm of relevance can just as easily be obtained

from the named Defendants, *e.g.* a request for communications with Johnson about topics related to the allegations. Thus, State Farm does not need to obtain those documents from a third-party. *See Davidson*, 2010 WL 11507180, at *2; *see also Audio MPEG*, 2017 WL 950847, at *4. Similarly, the final factor—nonparty status—weighs in favor of issuing a protective order. *See Cytodyne*, 216 F.R.D. at 535.

### C.     Factor 3: the Scope of the Requests

The third factor, scope of the requests, weighs in favor of issuing a protective order. Courts in this district have consistently held that "broadly worded request[s] encompass[ing] numerous documents wholly irrelevant to the lawsuit underlying th[e] case" are improper. *See Schaff v. SmithKline Beecham Corp.*, No. 3:06–CV–120, 2006 WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006); *accord Wolfe v. Glasgow*, No. 3:08–cv–813, 2009 WL 1956687, at *1 (M.D. Fla. July 7, 2009). When a subpoena contains such broad requests, a court must quash or enter a protective order as to the entirety of the subpoena even if some of the documents sought may be relevant. *See Davidson*, 2010 WL 11507180, at *2. State Farm was affirmatively obligated to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). But State Farm facially ignored this requirement by, among other things, issuing a broadly worded 96-part request, requests without subject matter limitations, requests for time periods not at issue in their own FAC allegations, requests seeking information that State Farm could obtain from parties in the case, and requests so broadly worded that Plaintiffs seek vast volumes of documents that are irrelevant and immaterial.

## D.     Factor 4: Time Period

State Farm's Johnson Subpoena also is unduly burdensome as it seeks broad categories of documents for a period exceeding 5 years and primarily seeks documents from 2016, outside of the time period of this case.  Courts have routinely held that such broad third-party requests are improper.  *See, e.g., Wolfe*, 2009 WL 1956687, at *1 (holding that requesting all documents relating to communications between the movant and defendants in past 5 years was overly burdensome).

## E.     Plaintiffs' Cited Cases are Inapposite

Plaintiffs cite several inapposite cases in support of their assertion that the amount at stake justifies the fishing expeditions.  (Dkt. # 93, PageID 2002–2003.) Notably, none of the cases cited by Plaintiffs actually hold that the amount in controversy justifies broad and minimally relevant discovery.

First, Plaintiffs cite *NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, 2011 WL 6752588 (M.D. Fla. Dec. 22, 2010).  In *NetJets*, unlike here, the plaintiffs had alleged an unjust enrichment claim based on an alter ego theory of liability.  *Id.* at *1. Thus, the Court held the information sought in discovery was relevant to plaintiffs' burden to "show alter ego liability."  *Id.*  In this case, not only have Plaintiffs not pled an alter ego theory of liability, the only claims they had related to Path Holdings were dismissed.

Second, Plaintiffs cite *State Farm v. Pointe Physical Therapy*, 2017 WL 5176403 (E.D. Mich. Nov. 3, 2017). In *Pointe Physical Therapy*, the court held the sought

discovery was relevant to establish "who actually owns MCM and purportedly works there . . . ." *Id.* at *2. Unlike in *Pointe Physical Therapy*, however, Plaintiffs assert the ownership of Path Medical is "publically available" and "indisputable." (Dkt. # 93, PageID 1998.) Additionally, none of Plaintiffs' discovery requests is reasonably targeted at determining whom works at Path Medical—as that information is known and is otherwise obtainable from parties in this case.

Third, Plaintiffs cite *State Farm v. Physiomatrix, Inc.*, 2013 WL 10936871 (E.D. Mich. Nov. 26, 2013). In *Physiomatrix*, the court acknowledged that "RICO is not a borderless statute that allows a civil litigant unfettered discovery simply because it charges a broad and complicated 'conspiracy' that may include individuals not party to the suit." *Id.* at *8. The court rejected State Farm's argument that it could seek information "necessary to allow it to determine whether it should add the firms as parties to the action." *Id.* at *10. Accordingly, the court denied State Farm's motion to compel to as to several requests. *Id.* at *12. Importantly, to the extent the court permitted discovery, the facts are readily distinguishable. In *Physiomatrix*, State Farm had alleged "[t]he success of Defendants' scheme depends heavily on the *quid pro quo* cross-referral relationships with PI Attorneys who represent patients in connection with bodily injury [] Claims and uninsured motorist [] Claims." *Id.* at *2. Thus, discovery into the relationship between the defendants and the PI attorneys made some sense. Unlike in *Physiomatrix*, none of the Plaintiffs' claims in this action requires State Farm to establish a relationship among Path Medical, Path Holdings, or Johnson.

Fourth, Plaintiffs cite *Med. Tech., Inc. v. Breg, Inc.*, 2010 WL 3734719 (E.D. Pa. Sept. 21, 2010). In *Breg*, a patent case, the court held that the sought documents "could lead to evidence of Bledsoe's indirect infringement of Breg's patents which necessarily requires evidence of direct infringement by another entity such as MedEast" and "could lead to objective evidence that Breg's patents are not invalid for obviousness and Bledsoe's patents are invalid for obviousness." *Id.* at *3. Unlike in *Breg*, however, none of the claims in this case requires Plaintiffs to show either the direct liability of a non-party or the invalidity of a patent.

Importantly, to the extent the cases cited by Plaintiffs have any applicability, none of those cases permitted the broad discovery Plaintiffs seek in this case. Indeed, there is a reason that, unlike the cases cited by Plaintiffs, Plaintiffs fail to justify the specific relevance of any particular request and rely entirely on bare assertions about general relationships and Plaintiffs' undefined suspicions.

## CONCLUSION

For the foregoing reasons, Defendants Robert Lewin, D.C., 1-800-411-PAIN Referral Service, LLC, and Path Medical, LLC respectfully request that the Court issue a protective order requiring Plaintiffs to withdraw and rescind the Johnson Subpoena and grant any other relief the Court deems just and warranted. In the alternative, the Path Defendants request that the Court order that the scope of the Johnson Subpoena be substantially and appropriately narrowed.

**Local Rule 3.01(g) Certification:** Counsel for the Path Defendants conferred with counsel for Plaintiffs by telephone on July 29, 2021, and the parties do not agree on the resolution of this motion.

Dated:  August 3, 2021

Respectfully submitted,

By:   */s/ Heather A. Lee*
_____

Lisa M. Noller (*admitted pro hac vice*)
E-mail:  lnoller@foley.com
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone:  (312) 832-4500
Facsimile:   (312) 832-4700

Michael P. Matthews (FBN 63988)
Primary Email: mmatthews@foley.com
Secondary Email: dguillen@foley.com
Heather A. Lee (FBN 1011026)
Primary Email: hlee@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL  33602-5810
Telephone:  (813) 229-2300
Facsimile:   (813) 221-4210

*Attorneys for Defendants Robert Lewin, D.C.,*
*1-800-411-PAIN Referral Service, LLC, and*
*Path Medical, LLC*